UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMES D. COHEN | : | CIVIL ACTION NO: |
| | : | 3:15-CV-01043(CSH) |
| | : | |
| V. | : | |
| | : | |
| EDWARD ROSENTHAL | : | NOVEMBER 23, 2015 |

## MOTION TO DISMISS

Defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby

move to dismiss all counts of the Complaint. Simultaneously herewith, the defendants have filed

a Memorandum of Law in support of this Motion to Dismiss.

WHEREFORE, the defendants respectfully request that the Court dismiss all counts of

the Complaint.

The Defendants

By:    _____/s/ Edward M. Rosenthal
Edward M. Rosenthal
Federal Bar No: ct12958
Rosenthal Law Firm, LLC
18 N. Main Street
West Hartford, CT 06107
T (860) 561-3100
F (860) 561-3104
Email: ed@erosenthal.org

**ORAL ARGUMENT REQUESTED**

1

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2015, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by electronic mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System

_____/s/ Edward M. Rosenthal
Edward M. Rosenthal
Federal Bar No. ct12958

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMES D. COHEN | : | CIVIL ACTION NO: |
| | : | 3:15-CV-01043(CSH) |
| | : | |
| V. | : | |
| | : | |
| EDWARD ROSENTHAL | : | NOVEMBER 23, 2015 |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Defendants hereby move to dismiss all counts in the plaintiff's Complaint, and in support thereof state as follows:

## INTRODUCTION

The within suit is a spiteful, meritless action by the plaintiff against his former attorney following the defendant's prevailing against the plaintiff at an arbitration and being awarded $92,390.80.

The plaintiff and his judgment-debtors (Roll-A-Cover, LLC (hereinafter "RAC"), and Michael Morris) (also referred to as the "judgment-debtors") have an acrimonious and litigious relationship and have sued each other many times, in many forums. *Cohen v. Roll-A-Cover*, Connecticut Superior Court, X06-UWY-CV04-4015047-S; *Cohen v. Morris*, Connecticut Superior Court, X06-UWY-CV07-5007294-S; *Roll-A-Cover v. Cohen*, United States District Court-District of Connecticut, 3:09-cv-01378-CSH; *Cohen v. Morris*, United States District Court-District of New Jersey, 2:12-cv-004312-CCC-JAD, *In re: Roll-A-Cover*, United States Bankruptcy Court, 12-30970-LMW; *Roll-A-Cover v. Cohen*, adversarial proceeding, United States Bankruptcy Court, 12-03049-LMW.

The defendant was retained by the plaintiff on December 1, 2011 (Exhibit G) after the plaintiff's former attorney refused to represent him any longer. The defendant's predecessor had obtained a judgment for the plaintiff of $575,000 against plaintiff's judgment-debtors. Defendant promptly reviewed the file (which had been litigated extensively on the Complex Litigation Docket in Waterbury Superior Court for nearly six years and appealed to the Connecticut Appellate Court), and determined that an *Offer of Judgment* had been filed but not acted upon. Defendant filed motions for *Offer of Judgment* interest and post-judgment interest pursuant to Connecticut General Statutes §37-3a as well as appellate attorney's fees. The motions were contested by the judgment-debtors, and after a hearing in Complex Litigation, the trial court granted them and plaintiff's judgment increased to $1,058,000.

The defendant then pursued the judgment-debtors through the use of bank executions, property executions, subpoenas, examination of judgment debtors, motions for installment payment orders, motions to charge the judgment-debtors' unrelated limited liability companies, etc. The defendant brought considerable pressure to bear on the judgment debtors, and the plaintiff complimented the defendant many times on his representation.

As a result of this pressure on the judgment-debtors, they retained Zeisler & Zeisler, a well-known Connecticut bankruptcy firm. After several months of negotiations, and while the defendant was pursuing the judgment-debtors through the aforementioned methods, Zeisler, on behalf of the judgment-debtors, offered the plaintiff a settlement whereby they would make monthly payments of $10,000 totaling $660,000. Plaintiff rejected this as he wanted an immediate $500,000 lump sum payment and $25,000 monthly payments for a total settlement of one million dollars. Not long thereafter, the judgment-debtor, RAC, filed for Chapter 11

bankruptcy protection after defendant's state marshal threatened to seize their inventory and manufacturing equipment through the use of a property execution.

The defendant then advised the plaintiff that if he wanted to improve on the Zeisler offer, the defendant could do that, but that if he maintained his position that he wanted an immediate half million payment and $25,000 monthly payments he should retain more experienced bankruptcy counsel. Plaintiff filed a pro se appearance in the bankruptcy case. Very quickly into the bankruptcy case, the judgment-debtors proposed a settlement to the plaintiff. The settlement was remarkably similar to the earlier Zeisler offer (54 monthly payments of $9,260 totaling $500,000) (Exhibit A). The plaintiff accepted the offer, and then unilaterally determined he owed the defendant nothing for his representation, despite the explicit terms of the parties' written retainer agreement.

Pursuant to the terms of the retainer agreement, the defendant instituted an arbitration with the Connecticut Bar Association (hereinafter "CBA") in March of 2014 (Exhibit B). The plaintiff agreed to arbitrate in July of 2014 (Exhibit C), and the arbitration was scheduled before three neutrals on December 19, 2014. At the hearing, both parties submitted exhibits, both parties testified, and both parties submitted post-hearing briefs. The panel issued an award in favor of the defendant, unanimously, on December 24, 2014 (Exhibit D). The panel awarded the defendant $92,390.80, of which the plaintiff has paid nothing as of the date of this brief.

The defendant filed an *Application to Confirm Arbitration Award* in Hartford Superior Court in January 2015 (Exhibit E) pursuant to Connecticut General Statute §52-417, and the defendant objected (Exhibit F). A hearing was held on March 17, 2015 at which the plaintiff and defendant both appeared and testified, and Judge Scholl entered judgment in favor of the defendant confirming the arbitration award (Exhibit H). The plaintiff has appealed to the

5

Connecticut Appellate Court arguing, in essence, that he did not know the arbitration hearing was going to be binding, that he was somehow coerced into participating, and that the arbitrators disregarded his evidence and arguments. That appeal is currently pending.

It is noteworthy that at no time prior to the arbitration hearing on December 19, 2014 had the plaintiff ever communicated any discontent or complaint concerning the defendant's representation, and to the contrary, throughout 2012 the plaintiff complimented the defendant many times.


**FACTS AS ALLEGED BY THE PLAINTIFF**

The defendant is an attorney practicing law in Connecticut that entered into a written agreement on December 1, 2011 with the defendant to represent him (Complaint, page 4, ¶5) in an action he had previously brought against RAC and Morris. Defendant was hired to collect the judgment that had previously entered against RAC and Morris. Defendant collected $67,605 from RAC (Complaint, page 4, ¶7) through a bank execution, and in April 2012, RAC filed for bankruptcy protection (Complaint, page 4, ¶8). At this point, the plaintiff alleges, the defendant ceased his representation of the plaintiff (Complaint, page 4, ¶10; Complaint, page 2, lines 10-11; Complaint, page 4, ¶11; Complaint, page 6, ¶21; Complaint, Count One, ¶¶3,4).

The plaintiff had obtained a judgment of $575,000 against RAC and Morris (Complaint, page 3, ¶3) in Superior Court in Connecticut which was subsequently increased to $1,058,613 (Complaint, page 4, ¶4). Plaintiff filed a pro se appearance in the bankruptcy matter (Complaint, page 2, line 3-5). The plaintiff alleges that he, acting by himself and for himself, then negotiated a global settlement of the case with RAC and Morris which provided for RAC and Morris to make monthly payments to him totaling $500,000 (Complaint, page 2, lines 7-12; Complaint,

page 5, ¶12). The defendant took no part in negotiating the plaintiff's settlement with RAC and Morris (Complaint, page 5, ¶12; Complaint, page 2, lines 10-12).

The defendant claimed an attorney's fee from the plaintiff relative to the defendant's work on the case (Complaint, page 2 line 14). Defendant then initiated an arbitration of a fee dispute through the Connecticut Bar Association's Legal Fee Resolution Board (Complaint, page 2, lines 15-22; Complaint, page 5, ¶¶ 13, 17) in March 2014 (Complaint, page 2, lines 15-16). An arbitration was held on December 19, 2014 before the CBA panel, and the panel issued an arbitration award in favor of the defendant on December 24, 2014 (Complaint, page 5, ¶17). The defendant then applied to the Hartford Superior Court to confirm the arbitration award; a judgment, bearing docket number HHD-CV-15-6056977-S, entered in favor of the defendant confirming the arbitration award on March 17, 2015 (Complaint, page 5, ¶18; Complaint, page 3, lines 1-3). The plaintiff has filed an appeal of that judgment which is pending (Complaint, page 5, ¶19; Complaint, page 3, line 3).

## ARGUMENT

### STANDARD OF REVIEW

"The purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding the substantive merits." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011).

The function of a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure "is merely to assess the legal feasibility of the complaint, not to assay the weight of evidence that might be offered in support thereof." *Ryder Energy Distrib. Corp. v. Merrill*

*Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616

F.2d 636, 639 (2d Cir. 1980)). Therefore, when considering a motion to dismiss, the Court must

accept the facts alleged in the complaint as true, draw inferences in the light most favorable to

the plaintiff and construe the complaint liberally. *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir.

2001). In ruling on a motion to dismiss, the Court may consider only "the facts as asserted within

the four corners of the complaint, the documents attached to the complaint as exhibits, and any

documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*,

482 F.3d 184, 191 (2d Cir. 2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.

Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Although detailed allegations are not required,

a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 129 S. Ct. at 1949. Conclusory allegations are not sufficient. *Id.* at 1949-50.

A Rule 12(b)(6) motion tests a complaint's legal sufficiency. To withstand such a motion,

"a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" *Id.* at 129 S. Ct. 1937.  Review under Rule 12(b)(6) occurs in two

steps. First, the court must separate the complaint's well-pleaded factual allegations from its legal

conclusions. Well-pleaded facts are accepted as true and viewed in the light most favorable to the

plaintiff. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements," must be disregarded. *Id.* Second, the court must determine whether the

well-pleaded facts in the complaint support a plausible inference that the plaintiff is entitled to

relief. Id. This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint containing facts "that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting *Twombly*, 550 U.S. at 557).

## PLAINTIFF'S CLAIMS ARE BARRED BY THE DOCTRINES OF RES JUDICATA AND/OR COLLATERAL ESTOPPEL

The plaintiff's claims against the defendant are barred by application of the doctrine of res judicata and/or collateral estoppel. Res judicata and collateral estoppel challenges may properly be raised via a Rule 12(b)(6) motion to dismiss. *Michaelesco v. Estate of Richard*, 355 F.App'x 572, 573 (2d Cir. 2009). Furthermore, both res judicata and collateral estoppel can be predicated on arbitration proceedings. *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998); *Thompson v. City of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994).

The doctrine of res judicata, or claim preclusion, holds that following entry of a valid final judgment, the parties to the suit are thereafter bound not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F. 3d 359, 365 (2d Cir. 1995). "Res judicata… applies in 'later litigation if [an] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *In re Adelphia Recovery Trust*, 634 F. 3d. 678, 694 (2d Cir. 2011). Two claims are considered to be the same cause of action if they each arise from a common

nucleus of operative fact. *Lobaito v. Chase Bank*, No. 11cv6883 (PGG), 2012 U.S. Dist. LEXIS 107344 at *2. To determine whether two actions arise from the same nucleus of operative facts, a court must consider whether the underlying facts are related in time, space, origin or motivation, whether they form a convenient trial unit, and whether their treatment as a unit confirms to the parties' expectations." *William v. Vill. Of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000). "Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." *Malcolm v. Board of Educ. Of Honeoye Falls-Lima Cent*, 506 Fed.Appx 65, 69 (2d Cir. 2012) (quoting *Berrios v. N.Y.C. Hous. Auth.*, 564 F.3d 130, 135 (2d Cir. 2009). "A party may not avoid the preclusive effect of res judicata by asserting a new theory or a different remedy." *Sure-Snap Corp. v. State St. Bank & Trust Co.*, 948 F.2d 869, 875 (2d Cir. 1991).

A motion to dismiss may properly be granted on the basis of res judicata or collateral estoppel pursuant to Rule 12(b)(6) if "it is clear from the face of the complaint, and consideration of matter which the court may take judicial notice of, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992). The court, in reviewing a motion to dismiss, is not limited to the factual allegations of the complaint, but may consider "documents attached to the complaint as exhibits or incorporated in it by reference to matters of which judicial may be taken or the documents either in plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). A court may also judicially notice prior pleadings, orders, judgments, and other items appearing in court records of prior litigation that are related to the case before the Court. *See, e.g., Ambase Corp. v. City Investing Co Liquidating Trust*, 326 F.3d 63, 72-73 (2d Cir. 2003). The documents and

other judicial records attached to the affidavit of Edward Rosenthal are referenced in the complaint and are publicly filed documents known to the plaintiff which may appropriately be considered by this Court. ***ATSI Communs, Inc. v. Shaar Fund, Ltd.***, 493 F.3d 87, 98 (2d Cir. 2007).

In the within action, the plaintiff is bringing suit against the defendant for claims that have already been litigated and decided between the two of them or are intimately related to those claims arising out of the same nucleus of operative facts. The defendant previously instituted an arbitration against the plaintiff which was heard and determined by the Connecticut Bar Association (Exhibits B, C and D) following a hearing at which the plaintiff "participated" (Complaint, page 2, line 18). Following the issuance of an award in the defendant's favor, the defendant applied to Hartford Superior Court to have the award confirmed (Exhibit E). There, the plaintiff "promptly contested the award with the Connecticut Superior Court" (Complaint, page 2, line 22) (Exhibit F) and the plaintiff lost as the Court entered judgment in favor of the defendant (Exhibit H). The defendant has already had two bites at the apple, and through this suit the plaintiff wants a third. See ***Caro v. Fidelity Brokerage Serv.***, 2015 U.S. Dist. LEXIS 57116 (D. Conn. Apr. 30, 2015) (Haight, J.), where the Court dismissed counts on the basis of res judicata and collateral estoppel where the prior litigation between the parties showed that the claims had already been heard and decided. ***Id.*** at 63-69. In the within matter, the plaintiff's arguments and claims were heard before the Connecticut Bar Association arbitration panel as well as before Judge Scholl in Hartford Superior Court. The plaintiff should not have yet another opportunity to make the same, or similar, arguments against the defendant when these claims have already been heard and decided fairly. The plaintiff's Complaint plainly shows that there were two prior proceedings between the parties at which a final judgment on the merits was

rendered; the arbitration hearing as well as the judgment in Superior Court. Both of those proceedings as well as the counts in the plaintiff's Complaint arise out of the same nucleus of operative facts- the defendant's representation of the plaintiff in the RAC/Morris matter and the defendant's claim for a fee for that representation. All of the plaintiff's claims in this Complaint arise out of those core issues.

Res judicata applies to bar further litigation between the parties given that two of the same parties have already litigated the same issues concerning the defendant's representation of the plaintiff in the RAC/Morris matter. The plaintiff's own pleading reveals that the prior case between them resulted in a final judgment being entered in Hartford Superior Court, and that judgment was confirming a binding arbitration award between the parties before the CBA.

In the arbitration between the parties, in the proceedings in Superior Court, and in the plaintiff's appeal of the Judgment from Superior Court, the plaintiff has made the same claims as to the defendant. The plaintiff has repeatedly asserted claims that the defendant has not earned the fees that the arbitration awarded him, that the defendant terminated his representation of the plaintiff before the settlement agreement was negotiated, and that the defendant somehow took advantage of the plaintiff through the arbitration and Superior Court actions. In the within action, the defendant is again accused by the plaintiff of terminating his representation of the plaintiff, and of claiming fees that he did not earn. There is no reason to litigate these issues yet again, and the law provides that the Court should not litigate again what has already been heard and decided in a competent forum. The Court must dismiss the Complaint in its entirety.

## COUNT ONE IS BARRED BY THE STATUTE OF LIMITATIONS

The plaintiff's first count is barred by the statute of limitations, Connecticut General Statute §52-577. The plaintiff has alleged that the defendant began representing him on December 1, 2011, and that by May 2012 the defendant terminated his representation of the plaintiff (Complaint, page 4, ¶11; Complaint, Count One, ¶4). Pursuant to §52-577, the plaintiff was obligated to commence suit by May 2015, and since he did not, the statute of limitations expired and the cause of action is no longer viable.

A situation similar to the within case was encountered in *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 311 Conn. 282 (2014), where a client sued her former attorney in a count sounding in breach of contract, but the Connecticut Supreme Court construed the count to really be alleging professional malpractice and subject to the three year statute of limitations of §52-577. "[O]ne cannot bring an action [under both theories, however] merely by couching a claim that one has breached a standard of care in the language of contract. . . . [T]ort claims cloaked in contractual language are, as a matter of law, not breach of contract claims. *Weiner v. Clinton*, 106 Conn. App. 379, 383 (2008). To ensure that plaintiffs do not attempt to convert negligence claims into breach of contract claims by talismanically invoking contract language in [the] complaint; *Gazo v. Stamford*, 255 Conn. 245, 262 (2001); reviewing courts may pierce the pleading veil by looking beyond the language used in the complaint to determine the true basis of the claim. *Id., 262-63*." *Meyers*, supra at 290.

"Connecticut courts have concluded that claims alleging that the defendant attorney had performed the required tasks but in a deficient manner sounded in tort rather than in contract. See, e.g., *Weiner*, supra, at 384-86 and n.5." *Meyers*, supra at 294. In the within matter, the plaintiff has alleged that "[d]efendant failed in his diligence to exercise all legal opportunities

and options for which he should have used to pursue judgment debtors' assets" (Complaint,

Count One, ¶5).  With this allegation it is clear that the plaintiff is alleging that the defendant was

deficient in his pursuit of the judgment-debtors, which is a claim of professional malpractice.

"Malpractice is commonly defined as the failure of one rendering professional services to

exercise that degree of skill and learning commonly applied under all the circumstances in the

community by the average prudent reputable member of the profession with the result of injury,

loss, or damage to the recipient of those services . . . ." *Meyers*, supra, at 291 quoting *Barnes v.*

*Schlein*, 192 Conn. 732, 735 (1984). Plaintiff's first count is a claim that defendant was not

properly diligent in representing the plaintiff's interests, and as such, it is a claim of legal

malpractice and subject to §52-577. The plaintiff waited too long to bring suit, and the Court

must grant the defendant's *Motion to Dismiss*.


## COUNT ONE DOES NOT STATE A VIALBLE CLAIM GIVEN THAT PLAINTIFF VOLUNTARILY SETTLED HIS CLAIM WITH RAC/MORRIS

The plaintiff inexplicably claims that the defendant breached their contract by not

collecting enough from RAC/Morris when the plaintiff precluded any such efforts by voluntarily

settling his case with RAC and Morris (Exhibit A). The plaintiff has alleged that he negotiated

and settled the case with RAC/Morris by himself, on his own counsel, and that the defendant was

not involved. The plaintiff cannot credibly claim that the defendant breached his contract with

the plaintiff by failing to collect more from RAC and Morris, when the plaintiff entered into a

settlement with them that precluded further collection efforts. This is the extreme example of a

client wanting to have his cake and eat it too.

14

The defendant's inability to collect more from RAC/Morris was absolutely frustrated by the plaintiff's entering into a settlement of the case with them. ***Hess v. Dumouchel Paper Co.***, 154 Conn. 343, 350 (Conn. 1966). Under these facts, the plaintiff has no cause of action against the defendant for the defendant's not collecting more when the plaintiff's action in settling the case prohibited the defendant from taking further action under the contract. ***See also Travel Ctr. of Fairfield County, Inc. v. Royal Cruise Line, Ltd.***, 154 F. Supp. 2d 281 (D. Conn. 2001) (Arterton, J.).

Just as troubling is the plaintiff's prayer for relief in which he asks for "a judgment of the uncollected civil suit judgment balance at the time defendant terminated his collection efforts of $1,020,165." The plaintiff had previously alleged that he entered into a settlement with RAC/Morris in which they would make monthly payments to him totaling $500,000 (Complaint, page 2, line 9). . When the plaintiff entered into the settlement with the judgment-debtors, he voluntarily gave up his rights to the balance of the judgment owed to him. He cannot now look to the defendant and inexplicably claim that 'even though I settled with RAC/Morris and agreed to give up those claims, you are responsible for the balance.' So, despite the defendant being the one who got the judgment doubled from $575,000 to $1,058,000, despite the plaintiff settling with the judgment-debtors and getting $500,000, the defendant inexplicably wants the defendant to make up the difference between what he settled for and the full amount of his judgment. This shows the extreme unreasonableness of the plaintiff's thinking.

## COUNT TWO DOES NOT STATE A CLAIM UPON WHICH
## RELIEF COULD BE GRANTED

Count Two, attempting to allege a cause of action for breach of implied covenant of good faith and fair dealing, is insufficiently pled and the Court must grant the defendant's motion and dismiss the count.

A plaintiff asserting a claim for breach of the implied covenant of good faith and fair dealing must allege three essential elements: "first, that the plaintiff and the defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits; second, that the defendant engaged in conduct that injured the plaintiff's right to receive some or all of those benefits; and third, that when committing the acts by which it injured the plaintiff's right to receive benefits it reasonably expected to receive under the contract, the defendant was acting in bad faith." *Pine Creek v. Seaman*, 2000 Conn. Super. LEXIS 3589 at *7, Superior Court, judicial district of Bridgeport (Dec. 20, 2000)(Skolnick, J) quoting *ShareAmerica Inc. v. Ernst & Young*, 1999 Conn. Super. LEXIS 1910, Superior Court, judicial district of Waterbury, Docket No. 150132 (July 2, 1999) (Sheldon, J.).  *See also Van Dorsten v. Provident Life and Acc. Ins. Co.*, 554 F. Supp. 2d 285, 287 (D. Conn. 2008) where the Court noted that an element of the cause of action is that the benefit <u>was denied or obstructed</u> by the defendant's party's actions.

In the plaintiff's Complaint, he has not alleged that the defendant acted in bad faith in engaging in conduct that injured his right to receive any benefits under the retainer agreement, and thus has not met either the second or third prong of the test. On the contrary, the plaintiff has alleged that he was able to settle the case with his judgment-debtors for $500,000. The plaintiff was neither denied nor obstructed in obtaining any benefit under the contract. There is no allegation that the defendant did anything to injure the plaintiff's right to receive benefits under

16

the retainer agreement. There is no allegation that the settlement was somehow insufficient (nor

would there be given that the plaintiff has alleged that he negotiated the settlement by himself

and without assistance from the defendant). There is simply no allegation of "bad faith" in the

Complaint, nor could there be given the legal definition of bad faith: the Connecticut Supreme

Court has defined "bad faith" in this context as follows:

> "Bad faith is defined as the opposite of faith, generally implying a design to mislead or to
> deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation
> not prompted by an honest mistake as to one's rights or duties . . . . *[B]ad faith is not
> simply bad judgment or negligence*, but rather it implies the conscious doing of a wrong
> because of dishonest purpose or moral obliquity . . . it contemplates a state of mind
> affirmatively operating with furtive design or ill will."

*Buckman v. People Express, Inc.*, 205 Conn. 166, 171 (1987).

When examined, the plaintiff's complaints seem to revolve around the conduct of the

arbitrators/Connecticut Bar Association in the manner in which they conducted the arbitration

hearing- in not providing him with the rules, in not considering his evidence, in siding with the

defendant (Complaint, page 2, lines 16-22). There is no real complaint about conduct of the

defendant in the Complaint other than that he sought a fee which the plaintiff didn't pay him and

then he instituted proceedings to be paid. The defendant's actions in bringing an arbitration

proceeding, and later having it confirmed in Superior Court cannot be the basis for a claim that

the defendant injured the plaintiff given that the arbitration award and Superior Court proceeding

resulted in favorable outcomes to the defendant. The defendant only brought these actions

sixteen months after the plaintiff settled his claims with his judgment-debtors. By the time the

defendant brought the arbitration, the plaintiff's had long since settled his case with the

judgment-debtors. Furthermore, the defendant bringing an arbitration to vindicate his rights

under the parties' contract cannot be said to be acting in bad faith, especially when the arbitrators agreed with the defendant.

In ***Miller Auto. Corp. v. Jaguar Land Rover N. Am., L.L.C.***, 2010 U.S. Dist. LEXIS 87594 at \*11 (D. Conn. Aug. 24, 2010) (Burns, J.) the Court dismissed the plaintiff's claim for breach of implied covenant of good faith and fair dealing for the failure to allege that the defendant acted in bad faith – with a  "dishonest purpose or moral obliquity." ***Id***. at \*13.  See also ***Bacarella Transp. Servs. v. Rightway Logistics, LLC***, 2009 U.S. Dist. LEXIS 9758 at \*12-13 (February 10, 2009) (Dorsey, J.).

It is clear that the plaintiff's second count is a tag-along count thrown into an already specious complaint designed to harass and annoy the defendant who recovered a judgment against the plaintiff that the plaintiff does not want to pay.


## COUNT THREE IS BARRED BY
## THE STATUTE OF LIMITATIONS

The plaintiff's third count is a claim for misrepresentation in which he alleges that the defendant misrepresented his experience and ability to handle the representation of the plaintiff in the RAC/Morris suit. The plaintiff has alleged that he retained the defendant on December 1, 2011. The statute of limitations for such a claim is either two years based on Connecticut General Statutes §52-577 or three years based on Connecticut General Statutes §52-584, and in either case the statute has run and the plaintiff's claim is no longer viable.

Connecticut General Statutes § 52-577 provides:  "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

A cause of action sounding in intentional misrepresentation…is subject to a three-year statute of limitations pursuant to General Statutes §52-577. See ***Krondes v. Norwalk Savings Society***, 53 Conn.App. 102, 113 (1999). The statute begins to run when the misrepresentation is made. "In construing our general tort statute of limitations. . . we have concluded that the history of that legislative choice of language precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred . . . The date of the act or omission complained of is the date when the . . . conduct of the defendant occurs." ***Watts v. Chittenden***, 301 Conn. 575, 583 (2011). ***See also Lake Rd. Trust v. ABB, Inc.,*** 2012 Conn. Super. LEXIS 1648 at *33-37 (Conn. Super. Ct. June 25, 2012) (Bright, J.). The statute of limitation in the within matter would have run on December 1, 2014, which is some eight months before suit in the within matter commenced.

Section 52-577 is a statute of repose that sets a fixed limit after which the tortfeasor will not be held liable . . . ." ***Pagan v. Gonzalez***, 113 Conn. App. 135, 139 (2009). "The three year limitation period of § 52-577, therefore, begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury. . . The relevant date of the act or omission complained of, as that phrase is used in § 52-577, is the date when the negligent conduct of the defendant occurs and not the date when the plaintiffs first sustain damage. . . . Ignorance of his rights on the part of the person against whom the statute has begun to run, will not suspend its operation." ***Piteo v. Gottier***, 112 Conn. App. 441, 445-46 (2009). "When conducting an analysis under § 52-577, the only facts material to the trial court's decision on a motion for summary judgment are the date of the wrongful conduct alleged in the complaint and the date the action was filed." ***Pagan v. Gonzalez***, supra, 139.

From reading the plaintiff's inartfully drafted Complaint, it appears that the plaintiff complains of a misrepresentation associated with the time that the defendant was retained-December 1, 2011. Even if the Complaint is construed so that there was some misrepresentation throughout the representation, until May 2012, when the plaintiff alleges that the defendant terminated the representation, the statute would still have run before the plaintiff commenced suit.

Because the plaintiff didn't bring suit against the plaintiff until August of 2014, any cause of action which the plaintiff might have had against the defendant for misrepresentation expired, and the Court should grant the defendant's *Motion to Dismiss*.

## PLAINTIFF HAS FAILED TO STATE A VIABLE CAUSE OF ACTION IN COUNT THREE

The Court should dismiss Count Three for failure to state a claim upon which relief may be granted in his count for misrepresentation. What the plaintiff has alleged in Count Three is that the defendant pursued the judgment-debtors, RAC and Morris, and seized funds from RAC pursuant to a bank execution in March 2012 (Complaint, page 4, §7) and then stopped representing him after RAC filed for bankruptcy protection (Complaint, page 4, §10-11). The defendant then advised the plaintiff to obtain alternate counsel for representation in bankruptcy court which the plaintiff elected not to do. The plaintiff did represent himself pro se, and he alleges that he entered into a settlement agreement with RAC and Morris in which he settled all claims between them. There is nothing about this scenario that would sustain a cause of action against the defendant for misrepresentation.

"To assert a claim for intentional misrepresentation. . . the buyers must prove that (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury." ***Biro v. Matz***, 132 Conn.App. 272, 288 (2011). At no point in the Complaint has the plaintiff alleged that the defendant made a false representation that was untrue and known to be untrue or that the plaintiff acted on it and sustained injuries. To the contrary, the plaintiff has alleged that the defendant successfully seized funds from RAC's accounts, and that the plaintiff was subsequently able to settle his case with RAC/Morris.  There is nothing in this scenario, in the Complaint, which alleges that as a result of a misrepresentation by the defendant that the plaintiff was harmed. There is no allegation of what monetary damages the plaintiff has suffered.

Count Three is pled entirely in legal conclusions without any factual allegations to support those conclusions. The plaintiff has failed to allege that there was any representation that was untrue and known to be untrue, that the plaintiff relied on, or that the plaintiff suffered damages as a result of that misrepresentation. The plaintiff has pled an injury in only the most cursory of ways, and has not pled what type of injury or how he has suffered damages as a result of the supposed misrepresentation. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," must be disregarded." ***Iqbal***, 129 S.Ct at 1937.

As such, the Court must dismiss the count.

## COUNT FOUR FAILS TO STATE A CLAIM UPON WHICH RELIEF COULD BE GRANTED

Unjust enrichment is a cause of action which provides a remedy based on the equitable principle that "it is contrary to equity and good conscience for one to retain a benefit which has

Case 3:15-cv-01043-CSH   Document 20   Filed 11/23/15   Page 22 of 26

come to him at the expense of another." ***Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co., 231 Conn. 276, 282 (1994)***. A plaintiff seeking recovery for unjust enrichment must establish that "(1) the defendant was benefited, (2) the defendant unjustly failed to pay the plaintiff for the benefits, and (3) the failure of the payment was to the plaintiff's detriment." ***Id***. at 283. The plaintiff's unjust enrichment claim must fail because nowhere in the *Complaint* does the plaintiff allege that the defendant was benefitted. The plaintiff has alleged that the defendant received an arbitration award in his favor and that the defendant recovered a judgment against the plaintiff, but the plaintiff has not alleged that he has paid the defendant anything towards the arbitration award and/or the judgment. Merely obtaining a judgment or arbitration award in his favor does not 'benefit' the defendant in a way that would give viability to a cause of action for unjust enrichment by the plaintiff. Furthermore, being successful at an arbitration or in obtaining a court judgment cannot be the basis for a defendant 'benefitting' or 'unjustly failing to pay the plaintiff for the benefits.' There is no allegation that the defendant was paid anything that was improper or unjust or unearned[1].

The plaintiff's fourth count is also not viable due to the existence of an enforceable contract between the parties. Unjust enrichment is a legal doctrine to be applied when no remedy is available pursuant to a contract. ***Burns v. Koellmer***, 11 Conn. App. 375, 385 (1987). ***See also*** 5 S. Williston, Contracts (Rev. Ed.) § 1479. In the within matter, the plaintiff has pled that there was a written contract between them (Complaint, page 4, ¶5).

---

[1] Aside from the fact that the plaintiff hasn't paid anything towards the arbitration award/judgment- the unjust enrichment claim must fail because an arbitration panel as well as a Superior Court judge have already ruled on the propriety of the fee at issue- they have approved it and sanctioned it. As such, it cannot be deemed "unjust".

"[P]arties who have entered into controlling express contracts are bound by such contracts to the exclusion of inconsistent implied contract obligations . . . Proof of a contract enforceable at law precludes the equitable remedy of unjust enrichment . . . at least in the absence of a breach of the contract by the defendant . . . a nonwillful breach by the plaintiff . . . or a mutual rescission of the contract." *Polverari v. Peatt*, 29 Conn.App. 191, 199 (1992); *Hart v. World Wrestling Entm't, Inc.*, 2012 U.S. Dist. LEXIS 43184 at *13-14 (D. Conn. Mar. 28, 2012) (Underhill, J.) where the court dismissed a count for unjust enrichment based on the existence of a viable contract between the parties; *Alstom Power, Inc. v. Schwing America, Inc.* 2006 U.S. Dist. LEXIS 65970 at *5 (D.Conn. Sept. 14, 2006) (Arterton, J.) claim for unjust enrichment allows plaintiff to "recover the benefit conferred on a defendant in situations where no express contract has been entered into by the parties".

Because the plaintiff has not alleged that the defendant has received any benefit, and because there is a controlling written contract between the parties, the plaintiff's unjust enrichment claim must fail, and the Court must dismiss the count.

## PLAINTIFF'S PRAYER FOR RELIEF IS IMPROPER AND SHOULD BE DISMISSED
### PARAGRAPH ONE

With respect to paragraph one of the prayer for relief, the defendant objects to the plaintiff's seeking "a judgment of the uncollected civil suit judgment balance at the time the defendant terminated his collection efforts of $1,020,165, plus reasonable litigation costs." First, the plaintiff cannot settle his case with RAC and Morris for $500,000 and then turn around and seek more than a million dollars from the defendant. The plaintiff settled his case with RAC and Morris. He cannot complain afterward for more. Second, this type of relief would result in a

windfall to the plaintiff in that he would get $1,520,165, when his judgment against RAC and Morris was only $1,058,000 (and originally only $575,000 but later increased due to the defendant's efforts). Second, to the extent that the plaintiff is seeking attorney's fees when he requests "reasonable litigation costs", the defendant objects and moves to dismiss that claim in that there is no legal basis for the assessment of attorney's fees against the defendant.

## PARAGRAPHS TWO AND THREE

With respect to paragraphs two and three in the prayer for relief, the defendant objects to the plaintiff's seeking punitive damages and the defendant moves the Court to dismiss that claim. None of the theories pled by the plaintiff are susceptible to an award of punitive damages. ***Esposito v. Buonome***, 647 F. Supp. 580, 582 (D. Conn. 1986) (Blumenfeld, J.) Federal law is similar to Connecticut law in that punitive damages are on proof of "evil motive or intent" or "reckless or callous indifference" to another's rights, but federal law requires that the right violated be one "*federally* protected." ***Smith v. Wade***, 461 U.S. 30, 56, 75 L. Ed. 2d 632, 103 S. Ct. 1625 (1982) . Thus, for an award of federal punitive damages there must be a predicate finding that a federal right was violated, and a finding of evil intent or callous disregard in the violation of *that right*.

## PARAGRAPH FOUR

With respect to paragraph four in the prayer for relief, the defendant objects to the plaintiff's seeking monetary damages of $130,000 based on a prejudgment remedy ("PJR") the

plaintiff is seeking in state court, punitive damages, "reasonable litigation costs", and disbarment, and the defendant moves the Court to dismiss that claim.

As to the PJR, the defendant sought a PJR in state court following the entry of judgment after the plaintiff filed his appeal to the Appellate Court. Such a procedure is allowed and has long been the practice in Connecticut. *Gagne v. Vaccaro*, 80 Conn. App. 436, 452-54 (2003). See also, *Doctor's Assocs., Inc. v. Windham*, 2013 Conn. Super. LEXIS 23 (judicial district of Ansonia-Milford at Derby)   (Jan. 3, 2013, Matasavage, J) where the Court granted a prejudgment remedy after confirming an arbitration award while the case was on appeal. Given the foregoing, there was nothing tortious about this, and there is no basis to award damages for it. Additionally, the Superior Court has not issued a ruling on the matter, so the plaintiff has suffered no damages (and even if the Superior Court grants it there is still no basis for damages by the plaintiff).

The plaintiff's requested remedy of disbarment, aside for there being absolutely no basis in the Complaint for such an action, is not a remedy that this Court can grant. The plaintiff is no doubt aware that he can file a complaint with the grievance committee, and that is the forum to litigate any complaints of ethical violations that the plaintiff may have.

As far as the sought after remedies of "punitive damages" and "reasonable litigation costs", the defendant repeats and relies on his arguments supra.

The Defendant

By:      /s/ Edward M. Rosenthal
         Edward M. Rosenthal
         Federal Bar No: ct12958
         Rosenthal Law Firm, LLC
         18 N. Main Street
         West Hartford, CT 06107
         T (860) 561-3100
         F (860) 561-3104
         Email: ed@erosenthal.org

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2015, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by electronic mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System

        /s/ Edward M. Rosenthal
        Edward M. Rosenthal