UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMES D. COHEN | : | CIVIL ACTION NO: |
| | : | 3:15-CV-01043(CSH) |
| | : | |
| V. | : | |
| | : | |
| EDWARD ROSENTHAL | : | NOVEMBER 25, 2015 |

**DECLARATION OF EDWARD ROSENTHAL**
**RE: DEFAULT**

I, Edward Rosenthal, declare as follows pursuant to 28 U.S.C. §1746:

1.       I am attorney admitted in the State of Connecticut as well as the United States

District Court for the District of Connecticut.

**Background**

2.       Commencing on December 1, 2011, I represented the plaintiff herein in *Cohen v.*

*Roll-A-Cover, et al*, in Superior Court, Complex Litigation Docket at Waterbury, X06-UWY-

CV04-4015047-S. In this case, the plaintiff herein had received a judgment against a company

and its CEO, and I was hired to represent the plaintiff in enforcing the judgment. The judgment

was in the amount of $575,000.

3.       From reviewing the file, I discovered that an *Offer of Judgment* had been filed and

not acted on in the intervening 18 months since the entry of judgment. I filed a motion for *Offer*

*of Judgment* interest and post-judgment interest and appellate attorneys fees and was able to get

the plaintiff's judgment nearly doubled to $1,058,000 despite opposition from Roll-A-Cover's

attorneys.

4.       I pursued the plaintiff's judgment-debtors aggressively, and this resulted in their attorneys offering to settle the case with payments of $10,000 a month totaling $660,000 over five years. The plaintiff rejected this offer, but just a short while later the plaintiff accepted a very similar offer. The plaintiff settled his case with his judgment-debtors. The plaintiff unilaterally determined I was due no legal fee despite the written contract between us.

5.       Pursuant to the written retainer agreement, I instituted an arbitration with the Connecticut Bar Association. After a full evidentiary hearing with both parties submitting exhibits, testifying, and providing post-hearing briefs, the arbitrators, unanimously, issued an award in my firm's favor in the amount of $92,390.80.   I filed an *Application to Confirm the Arbitration Award* in Hartford Superior Court (docket number HHD-CV15-6056977-S). Plaintiff contested it. The Court entered judgment in my firm's favor, confirming the arbitration award. The plaintiff appealed to the Connecticut Appellate Court where that matter is currently pending (A.C. # 37830).


**The Defendant Has Not Defaulted Willfully**

6.       From the time that I received the summons in this matter, I was discussing whether to have my professional liability carrier represent me in this matter. I ultimately decided to represent myself as I viewed the plaintiff's allegations to be a reiteration of claims he had previously made at the arbitration hearing and in Superior Court.

7.       In addition to the plaintiff bringing suit against me in this matter, the plaintiff also filed a grievance against me with the Connecticut Grievance Committee. Additionally, the plaintiff appealed the Superior Court judgment to the Appellate Court. The response to the grievance complaint was filed on November 12, 2015, and my brief to the Appellate Court was

filed on October 28, 2015. While I had counsel represent me before the Grievance Committee, this still required a fair amount of my time to bring counsel up to speed on the background of the matter (as well as sorting through and reviewing the plethora of exhibits that existed), and assisting with the drafting of the response and approving it. The brief to the Appellate Court required a substantial commitment of my time. Attached hereto as Exhibit C is a copy of the brief that was filed.

8.      I never intentionally defaulted, and I did not and do not want a default to enter in this matter. I take this matter seriously, as can be judged from the *Motion to Dismiss* that I filed. I did file a *Motion for Extension of Time* on September 18, 2015, and again on October 21, 2015. There was no ruling on the second motion, and it was unclear to me the status of the second motion, so I just tried to work diligently on completing my *Motion to Dismiss* as quickly as I could within the context of finishing the appellate brief and the other deadlines I had for my clients. The *Motion to Dismiss* was 26 pages and contained multiple bases for the Court to dismiss the Complaint in its entirety or the individual counts. The motion took a substantial amount of time to research and draft.

**Defendant's Defense to the Action**

9.      A meritorious defense exists to the plaintiff's action, and it is a complete defense to the action. I have detailed that defense in the *Motion to Dismiss* that I filed on November 23, 2015.

10.     The defense to the plaintiff's action is as follows:

     a.  The plaintiff's action is barred by the doctrine of res judicata and/or collateral estoppel. As to the claims the plaintiff is making against me, he has already made these same claims, or similar claims arising out of the same transaction

and events, in the arbitration before the Connecticut Bar Association and at Hartford Superior Court. Both the CBA and Superior Court have heard his arguments and claims and rejected them. Attached hereto as Exhibit A, and incorporated by reference, is a copy of the arbitration award and the Superior Court Judgment.

b.  The plaintiff's breach of contract and misrepresentation counts are barred by the statute of limitations, Connecticut General Statutes §52-577.

c.  The plaintiff's breach of implied covenant and unjust enrichment counts are not viable given that they have not been sufficiently pled.

d.  To the extent that the plaintiff alleges in his Complaint that I have been awarded an improper fee, it has been approved and sanctioned by the CBA arbitration panel and Hartford Superior Court. Furthermore, the plaintiff has not paid me <u>any</u> of the fee that was awarded by the arbitrators; I have not been unjustly enriched as I have not received any of the arbitration award.

e.  I have not breached any implied covenant of good faith and fair dealing with the plaintiff as everything I have done has been in accordance with the written retainer agreement with the plaintiff, and/or approved by the arbitration panel or the Superior Court.

f.  To the extent that the plaintiff alleges that I somehow failed in my duty to collect sufficient funds for him from the judgment-debtors, I was precluded from collecting more by the plaintiff's agreement with the judgment-debtors to settle the case for monthly payments of $9,260 towards a total payment of $500,000. The Settlement Agreement entered in the bankruptcy court ended

4

the case, and prohibited further action on my part against either of his judgment-debtors. Attached hereto as Exhibit B, and incorporated by reference is a copy of the Settlement Agreement.

11.    I refer the Court to the *Motion to Dismiss* and the accompanying memorandum of law with the exhibits that I filed with the Court for a further elaboration on my defenses in this matter.

**There Is No Prejudice to the Plaintiff**

12.    There is no prejudice to the plaintiff as a result of my not filing a responsive pleading sooner than I did. This case is still a very new case. I will work hard to ensure that no deadline is missed in the future. I apologize to the Court and to the plaintiff if my not filing a responsive pleading sooner was somehow seen as a disregard for the rules or disrespect to the Court or the plaintiff in any way- it wasn't intended that way.

13.    I take seriously my obligations in this case, and I worked diligently to file a responsive pleading as quickly as I could. My ability to do so was slowed by the fact that within the several weeks before I filed the *Motion to Dismiss*, I also had to file the appellate brief and assist with the grievance response. All my other work for my clients is in addition to these activities.

14.    I declare under penalty of perjury that the foregoing is true and correct.


Dated: West Hartford, Connecticut
           November 25, 2015                                      Respectfully submitted,


                                                                 By: _____
                                                                      Edward Rosenthal

# EXHIBIT A

**Findings and Award of Arbitrators**

**Connecticut Bar Association, December 24, 2014**

**Judgment, Hartford Superior Court, HHD-CV15-6056977-S**

STATE OF CONNECTICUT

HHD CV 15-6056977-S

Rosenthal Law Firm, LLC
18 North Main Street
West Hartford, CT  06107

Superior Court

Hartford Judicial District

Vs.

James Cohen
3111 Warrens Way
Wanaque, NJ 07465

March 17, 2015

Present:      Hon. Jane Scholl, Judge

### JUDGMENT

This action, by way of an application to confirm an arbitration award, came to this Court
on January 26, 2015, and thence to February 2, 2015, when the defendant appeared.
Thereafter, the action continued to later dates when the parties appeared and were at issue
to the Court, as on file.

The Court, having heard the parties, finds the issues for the plaintiff, grants the
application to confirm the arbitration award.

Whereupon it is adjudged that judgment enters for the plaintiff.

By the Court,

Assistant Clerk

COPY CERTIFIED

2015 JUN 12  P 3: 25

123

ORDER    419022

DOCKET NO: HHDCV156056977S

ROSENTHAL LAW FIRM, LLC
    V.
COHEN, JAMES

SUPERIOR COURT

JUDICIAL DISTRICT OF HARTFORD
   AT HARTFORD

3/17/2015

## ORDER

ORDER REGARDING:
03/13/2015 107.00 MEMORANDUM IN SUPPORT OF MOTION

The foregoing, having been considered by the Court, is hereby:

ORDER: GRANTED

Application to confirm arbitration award is granted per orders stated on the record on March 17, 2015.

Judicial Notice (JDNO) was sent regarding this order.

419022
_____

Judge: JANE S SCHOLL
Processed by: Michelle Santos

Page 1 of 1


EXHIBIT
C

In Proceedings Before
THE LEGAL FEE RESOLUTION BOARD
of the
CONNECTICUT BAR ASSOCIATION

Rosenthal Law Firm, LLC, Petitioner                    File number 14-12

v.

James Cohen, Respondent                                December 24, 2014

### FINDINGS AND AWARD OF ARBITRATORS

In this matter, the undersigned arbitrators hereby find:

1. The Petitioner has proven his contractual entitlement to attorney's fees on all sums collected by the Respondent from Michael Morris/Roll-A-Cover, LLC.
2. Under the terms of the contract between the Parties dated December 1, 2011, the Petitioner is entitled to fees on the amounts so collected or to be collected as set forth on the attached Fee Calculation and as hereinafter described:
    a. Prior to the settlement between Respondent and Morris/Roll-A-Cover, the Respondent collected the sum of $57,464.00 from Morris/Roll-A-Cover and the Petitioner has already been paid a fee on this recovery in the amount of $17,239.20.
    b. Under the terms of a settlement agreement between the Respondent and Morris/Roll-A-Cover, the Respondent is currently collecting the additional sum of $500,000.00 in 54 installments of $9,259.26. The Respondent has collected 24 payments to date totaling $222,222.24 (in addition to the $57,464.00 already collected). The Respondent presently owes fees to the Petitioner on these 24 payments in the amounts stated in the Fee Calculation, which total Fifty-Three Thousand, Six Hundred Ninety-Eight and 05/100 ($53,698.05) Dollars, and which shall be paid by February 1, 2015.
    c. The Petitioner is entitled to fees on the future 30 payments yet to be collected by the Respondent in the amounts and at the times set forth on the attached Fee Calculation.
3. The amount stated by the Petitioner in the submission as being "in dispute," i.e., $85,400.00, was the result of a miscalculation; the amount in dispute is $92,443.80.
4. The total fees owed to the Petitioner are thus:
    a. $17,239.20 (already paid to the Petitioner)
    b. $53,698.05 (due by February 1, 2015)
    c. $38,745.75 (payable in future installments per Fee Calculation)
    d. TOTAL: $109,683.00.

Eugene A. Cooney, Esq., Chairman

Joshua Hawks-Ladds, Esq.

Lindsley Wellman

(W0451927.1)

File number 14-12
Rosenthal Law Firm, LLC,
Petitioner
v.
James Cohen, Respondent

In Proceedings Before
THE LEGAL FEE RESOLUTION BOARD
of the
CONNECTICUT BAR ASSOCIATION
*Fee Calculation*

| Monthly Payments | | Sums Collected: | $557,464.00 | Fee | Due Date |
|---|---|---|---|---|---|
| | | | | $17,239.20 | Paid |
| Prior | $57,464.00 | Balance | $500,000.00 | $2,777.78 | 2/1/2015 |
| 1 | $9,259.26 | Balance | $490,740.74 | $2,777.78 | 2/1/2015 |
| 2 | $9,259.26 | Balance | $481,481.48 | $2,777.78 | 2/1/2015 |
| 3 | $9,259.26 | Balance | $472,222.22 | $2,777.78 | 2/1/2015 |
| 4 | $9,259.26 | Balance | $462,962.96 | $2,589.76 | 2/1/2015 |
| 5 | $9,259.26 | Balance | $453,703.70 | $2,314.82 | 2/1/2015 |
| 6 | $9,259.26 | Balance | $444,444.44 | $2,314.82 | 2/1/2015 |
| 7 | $9,259.26 | Balance | $435,185.18 | $2,314.82 | 2/1/2015 |
| 8 | $9,259.26 | Balance | $425,925.92 | $2,314.82 | 2/1/2015 |
| 9 | $9,259.26 | Balance | $416,666.66 | $2,314.82 | 2/1/2015 |
| 10 | $9,259.26 | Balance | $407,407.40 | $2,314.82 | 2/1/2015 |
| 11 | $9,259.26 | Balance | $398,148.14 | $2,314.82 | 2/1/2015 |
| 12 | $9,259.26 | Balance | $388,888.88 | $2,314.82 | 2/1/2015 |
| 13 | $9,259.26 | Balance | $379,629.62 | $2,314.82 | 2/1/2015 |
| 14 | $9,259.26 | Balance | $370,370.36 | $2,314.82 | 2/1/2015 |
| 15 | $9,259.26 | Balance | $361,111.10 | $2,314.82 | 2/1/2015 |
| 16 | $9,259.26 | Balance | $351,851.84 | $2,034.21 | 2/1/2015 |
| 17 | $9,259.26 | Balance | $342,592.58 | $1,851.85 | 2/1/2015 |
| 18 | $9,259.26 | Balance | $333,333.32 | $1,851.85 | 2/1/2015 |
| 19 | $9,259.26 | Balance | $324,074.06 | $1,851.85 | 2/1/2015 |
| 20 | $9,259.26 | Balance | $314,814.80 | $1,851.85 | 2/1/2015 |
| 21 | $9,259.26 | Balance | $305,555.54 | $1,851.85 | 2/1/2015 |
| 22 | $9,259.26 | Balance | $296,296.28 | $1,851.85 | 2/1/2015 |
| 23 | $9,259.26 | Balance | $287,037.02 | $1,851.85 | 2/1/2015 |
| 24 | $9,259.26 | Balance | $277,777.76 | $1,851.85 | 2/1/2015 |
| SUBTOTAL | | | | $53,698.05 | 2/1/2015 |
| 25 | $9,259.26 | Balance | $268,518.50 | $1,851.85 | 3/1/2015 |
| 26 | $9,259.26 | Balance | $259,259.24 | $1,851.85 | 4/1/2015 |
| 27 | $9,259.26 | Balance | $249,999.98 | $1,478.65 | 5/1/2015 |
| 28 | $9,259.26 | Balance | $240,740.72 | $1,388.89 | 6/1/2015 |
| 29 | $9,259.26 | Balance | $231,481.46 | $1,388.89 | 7/1/2015 |
| 30 | $9,259.26 | Balance | $222,222.20 | $1,388.89 | 8/1/2015 |
| 31 | $9,259.26 | Balance | $212,962.94 | $1,388.89 | 9/1/2015 |
| 32 | $9,259.26 | Balance | $203,703.68 | $1,388.89 | 10/1/2015 |
| 33 | $9,259.26 | Balance | $194,444.42 | $1,388.89 | 11/1/2015 |
| 34 | $9,259.26 | Balance | $185,185.16 | $1,388.89 | 12/1/2015 |
| 35 | $9,259.26 | Balance | $175,925.90 | $1,388.89 | 1/1/2016 |
| 36 | $9,259.26 | Balance | $166,666.64 | $1,388.89 | 2/1/2016 |
| 37 | $9,259.26 | Balance | $157,407.38 | $1,387.47 | 3/1/2016 |

File number 14-12
Rosenthal Law Firm, LLC,
Petitioner
V.
James Cohen, Respondent

In Proceedings Before
THE LEGAL FEE RESOLUTION BOARD
of the
CONNECTICUT BAR ASSOCIATION
*Fee Calculation*

| | | | | | |
|---|---|---|---|---|---|
| 38 | $9,259.26 | Balance | $148,148.12 | $1,157.41 | 4/1/2016 |
| 39 | $9,259.26 | Balance | $138,888.86 | $1,157.41 | 5/1/2016 |
| 40 | $9,259.26 | Balance | $129,629.60 | $1,157.41 | 6/1/2016 |
| 41 | $9,259.26 | Balance | $120,370.34 | $1,157.41 | 7/1/2016 |
| 42 | $9,259.26 | Balance | $111,111.08 | $1,157.41 | 8/1/2016 |
| 43 | $9,259.26 | Balance | $101,851.82 | $1,157.41 | 9/1/2016 |
| 44 | $9,259.26 | Balance | $92,592.56 | $1,157.41 | 10/1/2016 |
| 45 | $9,259.26 | Balance | $83,333.30 | $1,157.41 | 11/1/2016 |
| 46 | $9,259.26 | Balance | $74,074.04 | $1,157.41 | 12/1/2016 |
| 47 | $9,259.26 | Balance | $64,814.78 | $1,157.41 | 1/1/2017 |
| 48 | $9,259.26 | Balance | $55,555.52 | $1,157.41 | 2/1/2017 |
| 49 | $9,259.26 | Balance | $46,296.26 | $1,157.41 | 3/1/2017 |
| 50 | $9,259.26 | Balance | $37,037.00 | $1,157.41 | 4/1/2017 |
| 51 | $9,259.26 | Balance | $27,777.74 | $1,157.41 | 5/1/2017 |
| 52 | $9,259.26 | Balance | $18,518.48 | $1,157.41 | 6/1/2017 |
| 53 | $9,259.26 | Balance | $9,259.22 | $1,157.41 | 7/1/2017 |
| 54 | $9,259.22 | | $0.00 | $1,157.40 | 8/1/2017 |
| SUBTOTAL | | | | $38,745.75 | |

| | | | |
|---|---|---|---|
| Total | $557,464.00 | $109,683.00 | |
| Paid | | -$17,239.20 | |
| Due | | $92,443.80 | |

# EXHIBIT B

Settlement Agreement

In Re Roll-A-Cover, LLC

United States Bankruptcy Court, District of Connecticut, Docket N: 12-30970, Pleading #84

settlement:

PROLOGUE   12-30970

The parties to this settlement are Roll-A-Cover, LLC, debtor-in-possession (Debtor), and Michael Morris, (Morris) and James D. Cohen (Cohen) Roll-A-Cover of New Jersey, LLC (RACNJ).

<u>The Litigations:</u>

1. Debtor filed the instant Chapter 11 proceeding, in which Cohen and RACNJ claim priority over certain Proofs of Claims that have security interests that predate Cohen and RACNJ's security interests in Debtor's property an in which Cohen has made a motion to dismiss the proceeding;

2. Debtor brought an Adversary Proceeding in this Honorable Court against Cohen, Adversary Proceeding 12-03049-LMW seeking recovery of a preferential payment (the "Adversary Proceeding");

3. Debtor brought a suit in Federal Court against Cohen, RACNJ and others entitled <u>Roll-A-Cover, LLC v James D. Cohen et al.</u>, United States District Court of Connecticut, 3:09-cv-01378-CSH, which suit is still pending(the RAC RICO Litigation").

4. Cohen and RACNJ brought suit in state court Debtor and Morris in an action entitled <u>James D. Cohen et al v Roll-A-Cover, LLC et al.</u>, Superior Court , Complex litigation Docket, Waterbury, X06-UWY-CV04-4015047-S, which case resulted in a joint judgment against Debtor and Morris (the Cohen BOIA Litigation), which judgment was filed in the Connecticut Secretary of the State's office and domesticated in Florida;

5. Prior to the trial in the Cohen Connecticut Litigation, Cohen and RACNJ brought suit in state court against Morris, Dena Napoli Morris and 36 Sargent Drive, LLC claiming a fraudulent transfer entitled, <u>James D. Cohen et al. v. Michael Morris et al.,</u> Superior Court , Complex litigation Docket, Waterbury, X06-UWY-CV07-5007294-S ( the "Cohen UFTA Litigation"), which case was withdrawn by Cohen and RACNJ at the commencement of the trial of the Cohen BOIA Litigation; and

6. Cohen brought suit in Federal Court against Debtor and Morris and Dena Napoli Morris, entitled <u>Cohen v. Morris et al.,</u> United States District Court, District of New Jersey, 2:12-cv-004312-CCC-JAD (the "Cohen Federal Litigation"), seeking to foreclose on property in Florida, which case Cohen had voluntarily dismissed after Defendants filed a motion to dismiss for lack of subject matter jurisdiction;

7. Cohen has threatened a lawsuit in Florida against Morris and Dena Napoli Morris seeking to overturn their homestead exemptions (the Cohen Florida Litigation").



### Settlement Rationale

The Debtor and Morris and the Cohen and RACNJ wish to resolve the various litigations and threatened litigation among them without further time, expense and attorneys' fees and to resolve the issues among them in a manner that will permit a fixed schedule of payments to be made by Debtor to Cohen/RACNJ while permitting Debtor to maintain its business so as to make money with which to make the payments hereunder. Towards that end the parties seek to end the litigations between them and to exchange mutual release from all parties to the Litigations (including those parties who are not a party to this Agreement) and to agree to the substitution of new obligations for the old obligations with new security interests being given to secure such rights.

A significant purpose of the settlement is to cause the withdrawal of the bankruptcy petition as it affects Cohen, RACNJ and the other creditors of Debtor in this bankruptcy proceeding as well as the ability of Debtor to continue operations, particularly since the expansion of creditors in the proceeding now includes all former purchasers of the Debtor's products for whom the warranty period has not expired. Under this settlement, all creditors will have a significantly improved position if the petition is withdrawn and the amount to be paid and the schedule of payments to James D Cohen and RACNJ are established and fixed.

### Proposed Settlement

One. Debtor shall withdraw its Adversary Proceeding with prejudice and without costs.

Two. Debtor will withdraw the RAC RICO Lawsuit with prejudice and without costs.

Three. Debtor, Morris, Dena Napoli Morris and 36 Sargent Drive, LLC shall execute and deliver general releases to Cohen and RACNJ and all other parties to the RAC RICO Litigation on all litigations.

Four. James D. Cohen and RACNJ shall execute and deliver general releases to Debtor (excepting only the new obligations hereunder), to Morris and to Dena Napoli Morris and to 36 Sargent Drive, LLC and shall secure and deliver general releases from all other parties sued by Debtor in the RAC RICO Litigation.

Five. Cohen and RACNJ will release the judgment filing in the Connecticut Secretary of the State's office and the domesticated judgment filing in Florida in favor of the financing statement to be filed in Connecticut (the state in which Roll-A-Cover, LLC is organized).

Five. Debtor agrees the amount to be paid to Cohen/ RACNJ is a total of $500,000 without interest to be payable over 54 months in equal payments of $9260.00 for 53





months and a final payment of $9220.00 in the 54th month starting on December 1, 2012. Payments are due on the 1st of each month with a 20 day grace period. Failure to make a payment by the 20th of any month shall constitute a default and will result in immediate acceleration of the entire unpaid amounts, which will bear interest at 7.5% per annum. Cost of collection and reasonable attorney's fees are collectible. There will be no prepayment penalty.

The obligation will be evidenced by a promissory note including the above terms and a waiver of jury and a waiver of prejudgment remedy (thereby permitting the attorney for the holder of the note to issue a prejudgment remedy of attachment, replevin and/ or garnishment without a court order, subject the other procedures set forth in Connecticut General Statute 52–278 et seq. for a post issuance notice of the availability of a hearing and right to post a bond.

The promissory note will provide that Cohen / RACNJ establish a separate account in Bank of America, Wells Fargo or JP Morgan Chase Banks having a branch all located within a reasonable distance of the home office of Roll-A-Cover, LLC into which the payments on the note will be deposited.  The note will also require Roll-A-Cover, LLC to establish an account solely for such payments separate from the Roll-A-Cover, LLC other accounts from which the payments to Cohen / RACNJ will be drawn so as to assure that the payments are being made with good funds.  The Roll-A-Cover, LLC separate account can be, but will not be required to be, at the same bank as the Cohen / RACNJ payments will be deposited.

The collateral for the obligation will be  a second security interest in all the assets of Roll-A-Cover, LLC, subordinate only to the existing Line of Credit security interest given to Leed-Himmel in the amount of $100,000. The security agreement (which can, but need not be, separate from the promissory note) will require that Roll-A-Cover, LLC to secure and deliver subordination of the security interests of Dena Napoli Morris (except for the interest in certain vehicles), Morris, Dennis Martens and Keron Taylor to the security interest being given to Cohen / RACNJ hereunder.

Six. Cohen and RACNJ may agree that all payments under the promissory note shall be made to and remain the sole property of Cohen, provided the general releases to Roll-A-Cover, LLC, Morris, Dena Napoli Morris and 36 Sargent Drive, LLC must be execute by RACNJ as well as Cohen.

Seven. In consideration of the foregoing and once the settlement is approved by this Honorable Court and the respective documents executed, delivered and recorded/filed as appropriate, Debtor will withdraw its objection to Cohen's motion to dismiss the proceeding so long as the motion is granted without prejudice or will move for voluntary dismissal without prejudice of the bankruptcy petition in this case as this Honorable

Court may direct and in exchange James D. Cohen and RACNJ will file a satisfaction of judgment in the Cohen BOIA Litigation as the promissory note and collateral therefor shall constitute a new obligation with new consideration of resolution of all claims among the parties.

Additional Terms which prevail over
a conflict with the Proposed Settlement

(1) M P Morris Guarantee

    A. Non compete in retractable enclosures

    until final payment

    B. No dilution of Morris ownership

    w/o Cohen approval.

    C Morris will grant a security agreement and sign UCC(s)
    in favor of Cohen, enforceable on default

(2) Security Agreement will include

right of replevy w/thout bond

(3) First payment January 1, 2012 with

15 days grace unless 15th day is

a Saturday, Sunday or Holiday, then the

next business day in of Chas a

J P Morgan Chase, Bank of America

or Wells Fargo.

(4) J. Cohen *and Allan Cohen* and entities owned in a wholly or in part by Cohen *and/or Allan Cohen* will not compete in retractable enclosures until final payment made or 3 years whichever is longer and proprietary is parts or designs cannot be used.

(5) Non disclosure of settlement

(6) Non disparagement, enforceable by injunction only.

(7) RAC to provide quarterly quickbooks or equivalent profit & loss statement and balance sheet.

(8) Cohen will release all judgment liens against RAC & Morris

9

Agreed to this 15th of November, 2012

James P. Oten

Roll-A-Cover, LLC

by _____
Michael P. Morris
Managing member

MICHAEL P. MORRIS

# EXHIBIT C

**Defendant/Appelle's Brief**

**Rosenthal Law Firm, LLC vs. James Cohen**

**Connecticut Appellate Court, A.C. #37830**

# APPELLATE COURT

# OF THE

# STATE OF CONNECTICUT

## A.C. NO. 37830

## ROSENTHAL LAW FIRM, LLC

## VS.

## JAMES COHEN

## BRIEF OF THE PLAINTIFF-APPELLEE

## WITH APPENDIX

FOR THE DEFENDANT-APPELLEE
EDWARD ROSENTHAL, ESQ.
ROSENTHAL LAW FIRM, LLC
18 NORTH MAIN STREET
WEST HARTFORD, CT 06107
TEL: (860) 561-3100
EMAIL: ED@EROSENTHAL.ORG
JURIS NO. 408225

TO BE ARGUED BY:

EDWARD ROSENTHAL, ESQ.

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ……………………………………………………….   i

TABLE OF AUTHORITIES CITED ………………………………………….   ii

STATEMENT OF ISSUES ……………………………………………….   iv

PRELIMINARY STATEMENT…………………………………………….   1

COUNTER-STATEMENT OF FACTS AND NATURE OF PROCEEDINGS ……….   3

ARGUMENT ……………………………………………………………….   9

Defendant Failed To Request To Vacate The Arbitration Award Within The Time Allowed by Statute, And The Trial Court Was Bound To Confirm The Plaintiff's Application …………………………………………………………………   9

    A.  Standard Of Review ……………………………………………...   9

    B.  The Trial Court Properly Confirmed The Arbitration Award …………….....   10

    C.  The Defendant Did Not File A Motion To Vacate The Arbitration Award Within The Time Allowed By §52-420(b) …………………………………   12

    D.  Defendant Provided No Evidence To The Trial Court To Substantiate Any Of His Claims …………………………………………………….   13

    E.  Defendant Failed To Provide This Court With An Adequate Record To Review  …………………………………………………….   15

    F.  Defendant agreed to arbitrate ……………………………………….   16

    G.  There were no irregularities in the arbitration, and defendant was afforded every opportunity to present any argument and evidence he may have wanted ……………………………………………….   17

        1.  The defendant was provided with the arbitration rules …………...   17

        2.  Defendant Chose Not To Engage Counsel …………………………...   18

        3.  The Defendant Misrepresents Facts To The Court Concerning Plaintiff's Efforts On His Behalf ……………………………………   19

CONCLUSION AND STATEMENT OF RELIEF REQUESTED …………………...   23

# TABLE OF AUTHORITIES CITED

## Cases

*AFSCME, Council 4, Local 2663 v. Dep't of Children & Families*
317 Conn. 238, 117 A.3d 470 (2015) ……………………………………….   10

*Alix v. Leech*
45 Conn. App. 1, 692 A.2d 1309 (1997) ………………………………….   15

*Amalgamated Transit Union Local 1588 v. Laidlaw Transit, Inc.*
33 Conn. App. 1, 632 A.2d 713 (1993)…………………………………....   11

*Board of Education v. Bridgeport Education Assn.*
173 Conn. 287, 377 A.2d 323 (1977) ………………………………………   9

*Bridgeport v. Kasper Group, Inc.*
278 Conn. 466, 899 A.2d 523 (2006) ………………………………………   14

*Comprehensive Orthopaedics & Musculoskeletal Care, LLC v. Axtmayer*
293 Conn. 748, 980 A.2d 297 (2009) ……………………………………..   22

*Crelan v. Crelan*
124 Conn. App. 567, 5 A.3d 572 (2010) …………………………………..   16

*Disciplinary Counsel v. Villeneuve*
 126 Conn. App. 692, 14 A.3d 358 (2011) ………………………………..   16

*Harty v. Cantor Fitzgerald & Co.*
275 Conn. 72, 881 A.2d 139 (2005) ……………………………………….   9

*State v. AFSCME, Council 4, Local 387, AFL-CIO*
 252 Conn. 467, 747 A.2d 480 (2000) ……………………………………..   21

*Statewide Grievance Committee v. Clarke*
 48 Conn. App. 545, 711 A.2d 746 (1998) ………………………………..   15

*Stratek Plastics, Ltd. v. Ibar*
120 Conn.App. 90, 991 A.2d 577 (2010) …………………………………...   11

*Tonghini v. Tonghini*
 152 Conn. App. 231, 98 A.3d 93 (2014) ………………………………….   15

*Town of Bloomfield v. United Electrical*
 285 Conn. 278, 939 A.2d 561 (2008)……………………………..……………..   10

*Travelers Home & Marine Ins. Co. v. Kravitz*

129 Conn. App. 166, 19 A.3d 249 (2011)………………………………….    11

*Wu v. Chang*
264 Conn. 307, 823 A.2d 1197 (2003)…………………………………..    10, 11

## Statutes and Practice Book

Connecticut General Statues §52-417 ………………………………….    10, 13

Connecticut General Statues §52-418 …………………………………..    10, 11

Connecticut General Statutes §52-419 …………………………………...    10, 11

Connecticut General Statutes §52-420…………………………………….    10-13, 18

Practice Book §61-10 ……………………………………………………...    15

## **STATEMENT OF ISSUES**

Was the trial court correct in confirming the arbitration award to the plaintiff where the defendant had failed to file a motion to vacate, correct, or modify the arbitration award within 30 days of its issuance?

pp. 9-22

## PRELIMINARY STATEMENT

The within action is a fee dispute between an attorney and client. The written retainer agreement between the parties contains a provision mandating that any dispute between the two be resolved through arbitration.

The defendant had obtained a judgment against a company and its CEO, and the plaintiff was hired to collect that judgment. The plaintiff began by filling motions with the trial court for interest and attorney's fees. The court granted these motions, following an objection and a hearing, and they increased the defendant's judgment from $575,000 to $1,058,000.  The plaintiff pursued the judgment-debtors zealously and in time obtained an offer from the judgment-debtors to settle the case by way of monthly payments of $10,000 totaling $660,000 over five years.  The defendant rejected this offer yet just several months later the defendant agreed to accept a settlement of $500,000 in monthly payments of $9,259.   Despite all the work that the plaintiff had done on behalf of the defendant, the defendant refused to pay any fee to the plaintiff.

Pursuant to the terms of the parties' agreement, the plaintiff instituted an arbitration proceeding with the Connecticut Bar Association. The defendant agreed to participate, and did fully participate. An arbitration was held on December 19, 2014; both parties submitted exhibits in advance of the proceeding, both parties testified at the hearing, the arbitration panel asked questions of both parties at the hearing, and finally, both parties submitted post-hearing briefs. The panel of two attorneys and one layperson decided in favor of the plaintiff, unanimously.

Thereafter, the plaintiff filed an application to confirm the arbitration award. The defendant failed to file a motion to vacate, modify, or correct the award within the time provided by the statute. The trial court (Scholl, J.) held a hearing on the plaintiff's application at which both parties appeared and presented argument. Judge Scholl issued a ruling from the bench confirming the arbitration award. This appeal followed.

## COUNTER-STATEMENT OF FACTS AND NATURE OF PROCEEDINGS

The defendant had been involved in litigation with Michael Morris and Roll-A-Cover, LLC (hereinafter the "judgment-debtors") since 2004. By December of 2011, the defendant had obtained a judgment, and that judgment had been affirmed on appeal. *Cohen v. Roll-A-Cover, LLC,* 131 Conn. App. 443 (2011). Defendant's counsel at that time, Michael Bologna, terminated his representation of the defendant and would not assist the defendant with collecting the judgment. The defendant then hired the plaintiff to represent him.

The plaintiff and the defendant negotiated a written retainer agreement that provided that any dispute between the parties "shall be submitted for binding arbitration to the Connecticut Bar Association." (Emphasis added)  A11, ¶11.

Plaintiff commenced representing the defendant, and began reviewing the extensive file and the many pleadings that had been filed during the seven years of litigation. Plaintiff discovered that an offer of judgment had been filed, and although the matter went to judgment on June 23, 2010, some eighteen months previous, nothing had ever been done about seeing that offer of judgment interest was added to the judgment. Plaintiff filed a motion for interest seeking offer of judgment interest and post-judgment interest. A18. The motion was contested, A25, and argued before Judge Agati in Waterbury Complex Litigation. The Court granted the plaintiff's motion and awarded the defendant interest (and appellate attorney's fees) that brought the defendant's judgment from $575,000 to $1,058,000. This immediately changed the complexion of the case and the defendant's prospects.

3

Plaintiff then went about zealously pursuing the two judgment-debtors. Plaintiff sought and obtained bank executions, property executions, subpoenas for examination of judgment debtors (EJDs), a charging order, and installment payment orders. Plaintiff obtained $57,464 from the judgment-debtors through the use of a bank execution.

The judgment-debtor Roll-A-Cover was a small manufacturer of commercial awnings. Michael Morris was the majority owner and CEO of the company as well as being a judgment-debtor himself, jointly and severally liable for the judgment. Plaintiff was able to obtain the tax returns for Roll-A-Cover and this established that while it was a profitable small business, it did not have the assets or ability to pay a million dollar judgment in a lump sum. It was questionable as to whether it had the ability to pay it over some substantial number of years, and it was not unreasonable to think that a bankruptcy court could grant relief to it. Mr. Morris had threatened to close the business and move to Florida where he owned a home. There was no insurance applicable to pay the judgment that entered against the judgment-debtors.

In response to the plaintiff's aggressive pursuit of the judgment-debtors, they obtained representation from Zeisler & Zeisler, a well-known bankruptcy firm.  While the plaintiff was still pursuing the judgment-debtors, negotiations for a settlement began. These negotiations culminated in an offer from the judgment debtors to resolve the case via a graduated payment schedule to wit, $660,000 payable in monthly installments of $10,000 over four years. A35.  Considering that the defendant's initial judgment was $575,000 and that the judgment-debtors were not awash in cash, the plaintiff advised the defendant that this was an offer that he

should seriously consider. The defendant instead demanded that the judgment-debtors pay him $500,000 in a lump sum payment and $25,000 a month for another $500,000.  A37-38. Although negotiations were continuing, Roll-A-Cover filed a bankruptcy petition seeking Chapter 11 protection when the plaintiff's state marshal went to its factory with a signed property execution and demanded its inventory and assets. Judgment-debtor Michael Morris did not file for bankruptcy protection, and collection efforts continued as to him.

Negotiations continued with the judgment-debtors. The plaintiff spoke to the defendant on numerous occasions. The defendant was willing to lower his demand from $1 million to $750,000, but he still was demanding a $500,000 lump sum payment paid immediately.  The plaintiff advised the defendant that it was unlikely the judgment-debtors would ever agree to that. The plaintiff advised the defendant that if he wanted to improve on the Zeisler & Zeisler offer the plaintiff could try to do that so long as it was something in that ballpark but if the defendant wanted a recovery of $750,000 or more (and such a large lump sum payment) then the defendant would have to get an attorney more knowledgeable about Chapter 11 bankruptcy work. The defendant rejected the Zeisler offer.

While the bankruptcy matter proceeded, the plaintiff continued his collection efforts against judgment-debtor Michael Morris. These efforts included subpoenas for Mr. Morris for examinations of judgment debtors (EJD), a motion for an installment payment order, a charging order against Michael Morris' other limited liability companies, bank executions, and property executions. These efforts continued unabated throughout the summer and early fall of 2012.

While the plaintiff did not file an appearance in the bankruptcy matter, the plaintiff was giving advice to defendant and coordinating with the defendant who had filed a pro se appearance.  For example, another creditor of the judgment-debtor Roll-A-Cover scheduled a Rule 2004 examination, and the plaintiff had a state marshal go to the examination with a signed property execution to seize Mr. Morris' car with a property execution. A50.  Additionally, the plaintiff was speaking with the defendant frequently and advising him on the bankruptcy proceedings. A39, A40, A51, A53, A54. The defendant sought the plaintiff's advice on numerous occasions regarding basic bankruptcy procedure and sharing the results of hearings and court filings. Very quickly into the bankruptcy process, Roll-A-Cover approached the defendant with a settlement offer. This offer was very similar to the Zeisler & Zeisler offer, although not as generous. The defendant asked the plaintiff to review the offer and the plaintiff and defendant conferred on it on several occasions. A39 ("When I receive the draft of this agreement, I will send it to you for your (please) review"). The defendant decided to accept the offer. A41. The defendant then informed the plaintiff that its services were not required any longer, and further that he decided that no fee was due the plaintiff despite all the work the plaintiff put into the case and the clear provisions of the parties' written retainer agreement.

Pursuant to the parties' retainer agreement, the plaintiff filed a petition with the Connecticut Bar Association's ("CBA") Legal Fee Resolution Board. A7. The CBA's fee dispute program is entirely <u>voluntary</u>. The defendant agreed to participate. The defendant returned his *Respondent's Agreement* on July 23, 2014. A13. The *Respondent's Agreement* that the defendant signed indicated:

"4. I do hereby agree to participate in dispute resolution according to the method selected by the Petitioner…

8. I have the right to be represented at my own expense by an attorney at law at the hearing or at any stage of the mediation and/or arbitration…

11. Any arbitration award shall be final and binding upon the Petitioner and Respondent."

The hearing took a number of months to schedule, but by December 1, 2014, the panel was selected (entirely and solely by the CBA) and the hearing date was scheduled for December 19, 2014. The defendant requested that instead of travelling from New Jersey that he be allowed to attend the hearing via video conference through the Skype website/program. A55.  Defendant's request was approved, and the defendant worked out the logistics in advance with arbitration panelist Attorney Joshua Hawks-Ladds from Pullman & Comley since the arbitration was taking place at his office in Hartford.

In its petition, the plaintiff had initially requested that the fee dispute with the defendant be resolved through "mediation followed by binding arbitration of all issues not resolved through mediation" in the hope that the matter could be resolved amicably. Prior to the hearing the plaintiff inquired of the defendant and found out that the defendant was not willing to compromise whatsoever. Based on that it was clear that mediation would not resolve the matter. When the hearing began, the panelists inquired whether the parties wanted to mediate and both the plaintiff and defendant indicated they did not given the earlier discussion. The panelists stated since no issues were resolved that an arbitration would commence and asked both parties to state in writing that we were waiving mediation. The defendant sent an

7

email at a break in the hearing stating he waived mediation of the dispute. A42. The defendant never objected to participating in the arbitration nor did the defendant ever request a continuance or adjournment of the arbitration.

     The arbitration lasted from 2:00 p.m. to after 5:00 p.m. on December 19, 2015. Both the plaintiff and defendant had submitted exhibits in advance of the hearing. The plaintiff and defendant both testified at the hearing. After the hearing, the panel requested a post-hearing brief, which both parties submitted on December 22, 2014. On December 24, 2014 the panel issued the award to both the plaintiff and the defendant. A45. The same day, the defendant sent an email to the arbitration panel indicating he was going to appeal and asked for advice on how to do that. A45. The panel's chairman, attorney Eugene Cooney, informed the defendant that he should consult with an attorney and advised him to review Connecticut General Statutes §§52-418 to 52-420. A47.

     The plaintiff filed an application to confirm the arbitration award on January 26, 2015.  A1. The case printed on the court's calendar for April 17, 2015, and a hearing was had before Judge Scholl in Hartford Superior Court where both parties appeared, and presented argument. Judge Scholl, in an oral ruling, entered judgment from the bench. As the defendant had not filed a motion to vacate, modify, or correct the arbitration award within thirty days of the issuance of the award, Judge Scholl granted the application and entered judgment in favor of the plaintiff. This appeal followed.

**ARGUMENT**

**Defendant Failed To Request To Vacate The Arbitration Award Within The Time Allowed by Statute, And The Trial Court Was Bound To Confirm The Plaintiff's Application**

### A.  Standard Of Review

"Judicial review of arbitral decisions is narrowly confined… Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution." *Harty v. Cantor Fitzgerald & Co.*, 275 Conn. 72, 80 (2005). "When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement." *Id*.

"Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. . . . In other words, [u]nder an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact." *Id.*; see also *Board of Education v. Bridgeport Education Assn.*, 173 Conn. 287, 294 (1977) ("[b]y agreeing to the unlimited submission in this case, the [parties]

authorized the arbitrator to exercise his own judgment and discretion and to render an appropriate award"). *AFSCME, Council 4, Local 2663 v. Dep't of Children & Families*, 317 Conn. 238, 250 (2015).

### B.  The Trial Court Properly Confirmed The Arbitration Award

The Connecticut General Statutes provide that unless an arbitration award is vacated, modified, or corrected, that the award **shall** be confirmed upon the filing of an application to confirm it.  Connecticut General Statues §52-417. The trial court here was correct in confirming the arbitration award where the defendant failed to request that the award be vacated, corrected, or modified within thirty days of its issuance. The defendant's 'appeal' was not timely filed as prescribed in Connecticut General Statutes §52-420(b). Section 52-417 provides: "The court or judge **shall** grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in section §§52-418 and 52-419."  (Emphasis added)  The statute thus provides that the Court had no discretion to not grant the plaintiff's *Application*.

General Statutes §52-420(b) provides: "No motion to vacate, modify, or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion." It is well established that §52-420(b) is a rigid statute of limitation.  The Supreme Court has provided: "if the motion is not filed within the thirty day time limit, the trial court does not have subject matter jurisdiction over the motion..." *Wu v. Chang*, 264 Conn. 307, 312 (2003). See also *Town of Bloomfield v. United Electrical*, 285 Conn. 278, 291-93 (2008). "If a

motion to vacate, modify or correct is not made within the thirty day time limit specified in General Statutes §52-420, the award may not thereafter be attacked on any of the grounds specified in §§52-418 and 52-419." *Stratek Plastics, Ltd. v. Ibar*, 120 Conn.App. 90, 91 (2010) quoting *Amalgamated Transit Union Local 1588 v. Laidlaw Transit, Inc.*, 33 Conn. App. 1, 3-4 (1993). The defendant's appeal in this case squarely falls into the grounds specified in §52-418 insofar as the defendant argues that the arbitrators were partial, and that they failed to consider his evidence. The defendant's ability to vacate the award on these grounds depends on application of §52-418. However, because the defendant did not file a motion in time, the trial court was deprived of subject matter jurisdiction to hear any objection based on those grounds. In *Wu*, the Supreme Court upheld the trial court finding that even claims of fraud must be filed within the thirty day time limit of §52-420(b). *Wu* at 313-314.

The Defendant has not complied with §52-420(b). The Defendant obtained notice of the Award on December 24, 2014. Consequently, the Defendant's ability to file an application to challenge the Award expired on January 23, 2015. Because the defendant did not file any application to modify, correct, or vacate the Award by January 23, 2015, the defendant lost the ability to do so by operation of law.  The defendant's 'Appeal' (docket # 102.00) was filed on February 2, 2015, more than thirty days after the defendant's notification of the Award. Because the defendant's 'Appeal' was filed after thirty days, the Superior Court was without jurisdiction to hear the defendant's objection. *Travelers Home & Marine Ins. Co. v. Kravitz*, 129 Conn. App. 166, 169 (2011).

Because the defendant filed nothing previously, as of the date of the filing of the *Application to Confirm Arbitration Award* on January 26, 2015, the arbitration award was not susceptible to being corrected, modified or vacated, and thus, the Court properly granted the plaintiff's application to confirm the Award.

### C. The Defendant Did Not File A Motion To Vacate The Arbitration Award Within The Time Allowed By §52-420(b)

The defendant erroneously argues that his filing of the 'Appeal' properly preserved his right to contest the arbitration award.  As already mentioned, the defendant's deadline to contest the arbitration award was January 23, 2015, 30 days after the defendant was notified of the arbitration award. The defendant cannot rely on the filing of the 'Appeal' as a properly filed motion to vacate.  First, the document was not stamped filed until January 26, 2015, a date beyond the 30 day deadline, and even then it was rejected by the clerk as there was no action pending in New Britain Superior Court. Second, the defendant didn't actually file it until February 2, 2015, also beyond the deadline. Third, the defendant never paid an entry fee.

The defendant, in his brief, has admitted that he didn't file his 'Appeal' in a timely fashion (Appellant's Brief at 8). The defendant having not filed a request to vacate, modify, or correct the arbitration award within thirty days of its issuance, the trial court was correct in confirming the arbitration award, and in fact the trial court had no choice but to confirm the award.

The defendant heaps criticism on the New Britain Superior Court clerk's office for not forwarding his 'appeal' to the Hartford Superior Court but it was the defendant's responsibility to file the proper document with the proper court. It was

not the responsibility of the court clerk in New Britain to either call the defendant and notify him that he filed the paperwork in the wrong court, or to forward the paperwork to Hartford Superior Court[1].

The defendant has argued in his brief that he filed his 'Appeal' on January 20, 2015, but there is no evidence of that. The defendant's own exhibits (including the clerk's "Return of Papers") in his appendix indicate that the document was not "filed" but rather rejected by the clerk and date-stamped "January 26, 2015- a date beyond the deadline mandated by §52-420. There was no proof offered at the trial court that he filed ***any*** document by January 23, 2015, and the defendant has no proof of that even today. Baring evidence that a motion to vacate was filed within thirty days the trial court was bound to confirm that application the plaintiff filed, §52-417.

### D. Defendant Provided No Evidence To The Trial Court To Substantiate Any Of His Claims

At the hearing to confirm the arbitration award, the defendant offered no evidence to substantiate any of his claims that he raises on appeal. The record below is devoid of evidence to substantiate his claim. To the extent that the defendant claims that he was "forced to arbitrate" against his will, that there was no evidence to support the plaintiff's claims underlying the arbitration, that his evidence

---

[1] This still would have resulted in the document being rejected as the defendant never paid an entry fee. Prior to the plaintiff's institution of the within action on January 26, 2015 (33 days from the date of notice of the Award), there was no action pending in any courthouse, and the defendant would have had to pay an entry fee to initiate an action.

13

wasn't considered by the arbitration panel, or that he was not given the opportunity to consult with an attorney prior to or at the arbitration, the defendant has waived these claims by not presenting them to the trial court[2]. The defendant is asking this Court to reverse the judgment of the trial court and send the case back to the Superior Court for another hearing- a second bite at the apple. The defendant already had an opportunity to present his evidence and arguments to the trial court and he failed to provide the Court with any evidence to substantiate any of his claims.

"Our Supreme Court has "for many years wholeheartedly endorsed arbitration as an effective alternative method of settling disputes intended to avoid the formalities, delay, expense and vexation of ordinary litigation . . . When arbitration is created by contract, [our courts] recognize that its autonomy can only be preserved by minimal judicial intervention . . . Because the parties themselves, by virtue of the submission, frame the issues to be resolved and define the scope of the arbitrator's powers, the parties are generally bound by the resulting award . . . Since the parties consent to arbitration, and have full control over the issues to be arbitrated, a court will make every reasonable presumption in favor of the arbitration award and the arbitrator's acts and proceedings . . . The party challenging the award bears the burden of producing evidence sufficient to invalidate or avoid it . . ." **Bridgeport v. Kasper Group, Inc.**, 278 Conn. 466, 473-74 (2006). The defendant has failed to

---

[2] Defendant's exhibits in his appendix at A-2, A-2a, A-3 to A-3j, A-13, A-14, A-14a, A-15, A-15a, A-16, and A-16a were not part of the record and were neither introduced nor admitted into evidence in the trial court and thus are not properly before the Appellate Court in this appeal.

show in his papers how he was deprived of an opportunity to present evidence to the trial court.  In fact, the defendant presented no evidence at the trial court to substantiate any of his claims. The defendant cannot overcome the presumption in favor of sustaining the arbitration award.

### E.  Defendant Failed To Provide This Court With An Adequate Record To Review

Although the defendant provided the court with no evidence to substantiate any of his claims, the Appellate Court has the impossible task of reviewing this matter with an inadequate record. It is the responsibility of the appellant to provide an adequate record for review. Practice Book §61-10. In this appeal, the defendant has failed to provide the Court with an adequate record of the proceedings below, including a copy of the decision he appeals from. Additionally, the defendant has included portions of the trial court proceedings in his appendix, but not all operative pleadings, and indeed not a copy of the *Application to Confirm the Arbitration Award*.

This Court has stated that "[t]he duty to provide this court with a record adequate for review rests with the appellant." *Statewide Grievance Committee* v. *Clarke*, 48 Conn. App. 545, 547 (1998); *Tonghini v. Tonghini*, 152 Conn. App. 231, 238 (2014). See *Alix v. Leech*, 45 Conn. App. 1,5 (1997) where the court affirmed a judgment because the record was inadequate to review and the court stated "we are . . . left to surmise or speculate as to the existence of a factual predicate for the trial court's rulings. Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . Without the necessary factual and legal conclusions furnished by the trial court . . .

any decision made by us respecting [the defendant's claims] would be entirely speculative." See also *Disciplinary Counsel v. Villeneuve*, 126 Conn. App. 692, 700 (2011); *Crelan v. Crelan*, 124 Conn. App. 567, 571-572 (2010).

In the within case, the Appellate Court is left to guess and speculate in order to review any of the defendant's claimed defects in the proceedings below. The defendant has not met the standard set forth in the Practice Book in providing the court with an adequate record to review. This Court should decline to review the claims made in the defendant's appeal, and affirm the judgment of the trial court.

### F.  Defendant agreed to arbitrate

The thrust of the defendant's entire appeal is that he was somehow forced into an arbitration hearing he didn't agree to. Nothing could be further from the truth. The record is devoid of any evidence that shows that the defendant had any objection to arbitrating the dispute. To the contrary, the defendant consented to arbitrate on multiple occasions and never once expressed any reluctance to do so. The defendant agreed to arbitrate: (1) when he signed the retainer agreement which contained a mandatory arbitration provision, (2) when he signed the CBA's *Respondent's Agreement* on July 23, 2014, (3) when he waived the mediation on December 19, 2014 by sending an email message to the arbitrators, the CBA, and the plaintiff, and (4) when he appeared through Skype/video conference call and verbally agreed to waive mediation, proceed straight to arbitration, and then did participate in the arbitration. The plaintiff filed the proceeding with the CBA in March of 2014, and the defendant had 9 months of notice that the plaintiff was requesting

arbitration should mediation not resolve the issues. Having waived mediation, agreed to arbitrate, and then actually arbitrating the case, the defendant cannot credibly claim now that he didn't agree to arbitrate or that he was somehow forced to arbitrate[3].

### g.    There were no irregularities in the arbitration, and defendant was afforded every opportunity to present any argument and evidence he may have wanted

The defendant has blamed everyone but himself for the outcome of both the arbitration and the Judgment confirming the arbitration award. The defendant has blamed the CBA, the arbitrators, the plaintiff, and the court clerks. The fact is that at each stage, the defendant was afforded every opportunity to present any evidence and argument that he wanted.

#### 1.  The defendant was provided with the arbitration rules

The defendant complains that he was not provided with the rules for the CBA arbitration program even though he signed the *Respondent's Agreement* on July 23, 2014 and the hearing was not held until five months later on December 19, 2014. When the defendant was sent the *Respondent's Agreement* by the CBA he was provided with the CBA arbitration brochure which included the rules. Additionally, in November and December 2014, both the plaintiff and defendant were in contact with the CBA multiple times (concerning scheduling of the hearing) and the defendant

---

[3] The plaintiff could have compelled the defendant to arbitrate pursuant to C.G.S. §52-410 as the written retainer agreement provided for arbitration. Given the defendant's agreement to arbitrate and participation in the arbitration it was not necessary for the plaintiff to employ §52-410.

had multiple chances to ask for a copy of the rules, assuming he had misplaced it from July.

It is difficult to believe that the defendant did not get a copy of the arbitration rules at the time he received the *Respondent's Agreement* form. In completing that form he indicated in response to section 2 and 3 that he had not received the rules or the petition. However, had he not received the plaintiff's petition, how would the defendant have been able to draft a response to the petition which he clearly did in Section 7.  The defendant's response in paragraph 7 could only be made in response to his review of the plaintiff's petition. If the defendant received the plaintiff's petition, he also received the arbitration rules.

## 2.  Defendant Chose Not To Engage Counsel

The defendant argues in his brief, in essence, that had he known the hearing was a binding arbitration that he would not have appeared pro se. That claim is specious given that he represented himself pro se in Superior Court in this matter as well as in this appeal. Additionally, this was an argument that was not raised in the trial court at the hearing to confirm the arbitration award. Even had it been so raised at that point in time, the defendant would have been deemed to have waived the argument given that he failed to move to correct, modify, or vacate the arbitration award pursuant to 52-420.

Defendant's claim that he was not provided an opportunity to retain counsel is disingenuous. It should be noted that the plaintiff was his third attorney on the Roll-A-Cover case, and that the defendant's daughter is a practicing attorney (Appellant's

brief at p. 10, FN1). The defendant knows how to obtain counsel, and with the $9,259 payments he has been receiving every month from the settlement of the Roll-A-Cover case, the defendant had the ability to obtain counsel if he wanted. With the 5 months of notice from his agreement to participate in the arbitration to the actual hearing, the defendant had ample time to retain counsel. Furthermore, the *Respondent's Agreement* that the defendant signed on July 23, 2014 expressly advised the defendant that "I have the right to be represented at my own expense by an attorney at law at the hearing or at any stage of mediation and/or arbitration" (§8). It is quite clear from the manner in which the defendant completed the *Respondent's Agreement* that he went through the form carefully and read the entire form given that he crossed out certain words and added in certain verbiage. Clearly the defendant was on notice as of July 23, 2014 that he had the right to counsel, and that an arbitration award would be final and binding (§11).

### 3. The Defendant Misrepresents Facts To The Court Concerning Plaintiff's Efforts On His Behalf

The defendant repeatedly states that the plaintiff did nothing to try and collect funds from his judgment-debtor, Michael Morris, after the bankruptcy petition was filed or that the settlement was solely the result of the defendant's negotiation. This is absolutely untrue. While Roll-A-Cover filed for bankruptcy protection, Mr. Morris did not. Plaintiff's efforts against Morris continued after Roll-A-Cover filed for bankruptcy protection.  The plaintiff's efforts only ceased when the defendant advised the plaintiff to stop as "there won't be any more collections." There is a long paper trail of emails between the plaintiff and defendant, subpoenas, and court

executions that substantiate the plaintiff's efforts[4]. While the defendant's brief is replete with criticism of the plaintiff's efforts, the defendant never made any criticism prior to the institution of the arbitration herein. In 2012 the defendant was very pleased with the plaintiff's efforts and complimented him on many occasions.

The arbitration panel was entitled to conclude that it was the plaintiff's efforts which brought about the settlement between the defendant and his judgment debtors. First, the plaintiff's efforts are solely responsible for doubling the defendant's judgment from $575,000 to $1,058,000.  The judgment debtors only settled at $500,000 because the sword hanging over their head was over a million dollars. Had the judgment not been doubled, the defendant would not have obtained such a generous settlement. Second, the plaintiff brought the defendants to the negotiating table. The plaintiff had obtained a bank execution of nearly $70,000 and a property execution that threatened to take the judgment debtor's inventory and manufacturing equipment. Third, the plaintiff obtained charging orders against Michael Morris' interests in three unrelated limited liability companies that he owned. Fourth, the plaintiff had state marshals with property executions looking to seize Michael Morris' vehicles, and he knew if he parked them at his office or in his driveway they would be seized. Fifth, the plaintiff had subpoenas for examination of judgment debtors to serve on the Michael Morris. Six, the plaintiff had negotiated with the judgment-debtors' attorney at the Zeisler firm and produced a comparable

---

[4] At the arbitration hearing, the plaintiff entered 216 pages of exhibits, including subpoenas, marshal returns, correspondence, and pleadings into evidence. The plaintiff has provided the Court with some of these exhibits in Appendix II although the vast majority were not introduced in the trial court.

offer (which was even better, although not if the defendant had to actually pay his attorney).

It is important to note that all of the defendant's arguments herein concerning the plaintiff's efforts and the settlement of the underlying case were made by the defendant at the arbitration hearing. The defendant was fully and fairly heard on this issue through his introduction of exhibits, his testimony, and his post-arbitration brief. The arbitration panel did not believe him, which was their prerogative. The panel had plenary authority to decide that it was the plaintiff's efforts which lead to the settlement of the defendant's case against his judgment debtors.  "The well-established policy of the State of Connecticut is that "arbitration is the favored means of settling differences . . ." *State v. AFSCME, Council 4, Local 387, AFL-CIO* , 252 Conn. 467, 473 (2000). In the within matter, the parties entered into an agreement that provided for mandatory arbitration of disputes, including disputes about attorney's fees. The plaintiff commenced an arbitration with the CBA, and the defendant agreed to participate. The CBA arbitration panel had full authority to decide this dispute, and the defendant cannot undo the Award on the basis that he doesn't like the decision that the panel reached. "In determining whether an arbitrator has exceeded the authority granted under the contract, a court cannot base the decision on whether the court would have ordered the same relief, or whether or not the arbitrator correctly interpreted the contract. The court must instead focus on whether the [arbitrator] had authority to reach a certain issue, not whether that issue was correctly decided. Consequently, as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of

authority, the award must be enforced. The arbitrator's decision cannot be overturned even if the court is convinced that the arbitrator committed serious error. *Comprehensive Orthopaedics & Musculoskeletal Care, LLC v. Axtmayer*, 293 Conn. 748, 755 (2009).

## CONCLUSION AND STATEMENT OF RELIEF REQUESTED

Pursuant to the parties' contract, the dispute between the plaintiff and the defendant was fully and fairly heard by a neutral arbitration panel where both parties had every opportunity to present any evidence or argument that they wanted. The panel decided in favor of the plaintiff, unanimously. The Court should affirm the judgment of the trial court confirming the arbitration award.

RESPECTFULLY SUBMITTED,

PLAINTIFF-APPELLEE
Rosenthal Law Firm, LLC

By: _____
Edward M. Rosenthal
Rosenthal Law Firm, LLC
18 North Main Street
West Hartford, CT 06106
Tel: (860) 561-3100
Fax: (860) 561-3104
Email: ed@erosenthal.org
Juris No: 408225

## CERTIFICATIONS

This brief complies with all the provisions of the rules in 67-2.

This brief and appendix are true copies of the brief and appendix submitted electronically.

This brief and appendix do not contain any names or other personal identifying information that is prohibited from disclosure by rule, statute, court order or case law.

The electronically submitted brief and appendix have been delivered electronically to the last known email address of each counsel of record for whom an email address has been provided and has been mailed on October 28, 2015 by first class mail to:

James Cohen
3111 Warren's Way
Wanaque, NJ 07465
Email: jamesdcohen@aol.com

Honorable Jane Scholl
Hartford Superior Court
95 Washington Street
Hartford, CT 06106

_____
Edward M. Rosenthal

# APPELLATE COURT

# OF THE

# STATE OF CONNECTICUT

---

## A.C. 37830

## ROSENTHAL LAW FIRM, LLC

## VS.

## JAMES COHEN

---

## APPENDIX TO

## THE BRIEF OF THE PLAINTIFF-APPELLEE

# TABLE OF CONTENTS

**APPENDIX PART I**

Application to Confirm Arbitration Award ……………………………………   A1


APPENDIX PART II

Motion for Post-Judgment Interest ………………………………………...   A18

Objection to Motion for Post-Judgment Interest ………………………....   A25

Court Ruling on Motion for Post-Judgment Interest …………………….   A33

Email from defendant 2/28/2012 …………………………………………..   A34

Settlement offer from Zeisler & Zeisler …………………………………..   A35

Email from defendant 3/6/2012 …………………………………………….   A37

Email from defendant 4/9/2012 …………………………………………….   A38

Email from defendant 10/18/2012 ………………………………………….   A39

Email from defendant 10/22/2012 ………………………………………….   A40

Email from defendant 11/16/2012 ………………………………………….   A41

Email from defendant waiving mediation 12/19/2014 ………………………   A42

Email from defendant 12/24/2014 ………………………………………….   A45

Email from arbitrators 12/24/2014 ………………………………………..   A47

Email from defendant 4/19/2012 …………………………………………..   A49

Email from defendant 7/22/2012 …………………………………………..   A50

Email from defendant 8/1/2012 …………………………………………….   A51

Email from defendant 8/6/2012 …………………………………………….   A52

Email from defendant 8/28/2012 …………………………………………..   A53

Email from defendant 9/21/2012 …………………………………………..   A54

Email from arbitrators 12/8/2014 …………………………………………..   A55

| DOCKET NO: | : | SUPERIOR COURT |
| --- | --- | --- |
| ROSENTHAL LAW FIRM, LLC | : | J.D. OF HARTFORD |
| VS. | : | AT HARTFORD |
| JAMES COHEN | : | JANUARY 25, 2015 |

## APPLICATION TO CONFIRM ARBITRATION AWARD

To the Superior Court within and for the Judicial District of Hartford at Hartford, now in session, pursuant to C.G.S. §52-417 and Connecticut Practice Book §23-1, comes Rosenthal Law Firm, LLC, the plaintiff, seeking an order confirming a certain arbitration award involving matters between the Plaintiff and James Cohen, the defendant, and complains and says:

1.  On or about December 1, 2011, the plaintiff and the defendant entered into an Agreement for Legal Services (the "agreement") concerning the plaintiff's representation of the defendant involving a legal dispute the defendant had with Michael Morris and Roll-A-Cover, LLC. In the agreement, the parties agreed that any dispute concerning attorney's fees shall be submitted to binding arbitration to the Connecticut Bar Association. A copy of the agreement is annexed hereto as Exhibit "A" and its terms are incorporated by reference herein.

A 1

2.    The defendant failed and refused to pay fees to the plaintiff from his settlement of the legal dispute with Michael Morris and Roll-A-Cover, LLC.

3.    The plaintiff filed a *Petition for Resolution of Fee Dispute* with the Connecticut Bar Association's Legal Fee Resolution Board. The defendant agreed to arbitrate the dispute and submitted a *Respondent's Agreement* agreeing to arbitrate before the Connecticut Bar Association. A copy of the *Petition for Resolution of Fee Dispute* and the *Respondent's Agreement* is attached hereto as Exhibit "B" and its terms are incorporated by reference herein.

4.    An arbitration hearing was held at which both parties appeared and presented evidence, and the arbitrators made an award. A copy of the award is attached hereto as Exhibit "C" and its terms are incorporated by reference herein.

5.    On or about December 24, 2014, the defendant was duly notified of the arbitration award.

6.    The defendant has failed to pay the plaintiff any portion of the award.

A2

WHEREFORE, plaintiff prays:

1.    That the arbitration award be confirmed and judgment entered on behalf of the Plaintiff against the Defendant in conformance with the award; and

2.    That an order be issued directing the Defendant to appear on a day certain to show cause, if any, why this application should not be granted.

Dated at West Hartford, Connecticut on January 26, 2015.

PLAINTIFF,

By:

Edward M. Rosenthal
Rosenthal Law Firm, LLC
18 North Main Street
West Hartford, CT 06107
Telephone (860) 561-3100
Juris No: 408225

A3



**Agreement for Legal Services - December 1, 2011**

1.   *Client.* The client is James **D.** Cohen and Roll-A-Cover of New Jersey, LLC.

2.   *Attorney.* Client retains Rosenthal Law Firm, LLC (RLF) to represent client in collecting a judgment against Roll-A-Cover, LLC and Michael Morris.

3.   *Authorization.* Client authorizes RLF, its agents, and employees to take all appropriate steps to represent client in this matter.

4.   *Attorney's Fees.* Client shall pay RLF an attorney fee contingent on the amount of any gross recovery obtained in consideration for any time spent by RLF in representing client. The contingent fee shall be as follows:

| Amount Collected | Fee Percentage |
| --- | --- |
| $1- $100,000 | 30% |
| $100,001- $200,000 | 25% |
| $200,001- $300,000 | 20% |
| $300,001- $400,000 | 15% |
| $400,001 and above | 12.5% |

Gross recovery includes all money obtained by way of settlement, judgment, execution, garnishment, or otherwise for any claim *before* any expenses, debts, or liens are paid. If no gross recovery is obtained, client shall pay no attorney's fees.

Attorney's fees are due and payable upon receipt of any gross recovery.

5.   *Expenses.* Expenses are separate from and in addition to attorney's fees. Client authorizes RLF, its agents, or employees to incur expenses in representing client and to pay from any recovery obtained on client's behalf all such expenses incurred. RLF does not need client's approval before incurring expenses for any single item of expense under $650.00. At the discretion of RLF, client shall reimburse attorney for any expense incurred within thirty (30) days or advance payment on any expense necessary for the case.

Expenses shall include, but not be limited to, marshal fees, deposition fees, court fees, expert witness fees, copying charges at $0.10 per page, postage, parking charges, and mileage fees for any travel outside Hartford County (at the IRS designated rate).

A 4

6.  *No Guarantees.* RLF has made no guarantees pertaining to RLF's representation of client or pertaining to client's claim.

7.  *Binding Effect.* This agreement is binding on the respective heirs, executors, legal representatives, and successors of RLF and client.

8.  *Commencement of Representation and Withdrawal of Representation.* RLF has no obligation to represent client until client returns a signed original of this agreement. RLF's right to withdraw from representation of client shall be governed by Rule 1.16 of the *Rules of Professional Conduct.*

9.  *Scope of Agreement and Representation.* RLF is obligated to represent client only in those matter(s) listed in paragraph 2. RLF is not obligated to represent client in: a retrial after mistrial or a reversal by an appellate court; an appeal; or any other proceedings or matters of any type. Representation in any proceeding or matter not covered by this agreement requires a new agreement in writing signed by both RLF and client.

10. *Governing Law.* This agreement shall be governed by the laws of Connecticut.

11. *Arbitration.* All disputes involving attorney's fees, expenses, this agreement, or any aspect of RLF's representation of client shall be submitted for binding arbitration to the Connecticut Bar Association. Any costs related to any arbitration shall be split between RLF and Client.

12. *Attorney's Fees and Interest.* In the event that client does not pay RLF its attorney's fees or expenses in this matter as indicated herein, client agrees to pay all costs related to a collection action including RLF's attorney's fees and interest at the annual rate of ten percent (10%). RLF shall have a lien on any recovery obtained.

13. *Entire Agreement.* This agreement represents the entire and integrated agreement between RLF and client regarding RLF's representation of client, attorney's fees, and expenses and replaces all other representations or agreements, if any, either written or oral. This agreement can be modified only by written instrument signed by both RLF and client.

Client and RLF have read and understand this *Agreement for Legal Services* dated December 1, 2011 and agree to be obligated by its terms and have signed below as a free act and deed.

A5

Agreement for Legal Services – December 1, 2011 – Page 3 of 3

James D. Cohen

Rosenthal Law Firm, LLC (RLF)

James D. Cohen, authorized on behalf of
Roll-A-Cover of New Jersey, LLC.

A 6

EXHIBIT

B

Exhibit


Connecticut
Bar Association

(For office use)
Petition for Resolution of Fee Dispute Number _____

_____ vs.
Petitioner

_____
Respondent

In Proceedings Before
THE LEGAL FEE RESOLUTION BOARD
of the
CONNECTICUT BAR ASSOCIATION

## PETITION FOR RESOLUTION OF FEE DISPUTE

(PLEASE TYPE OR PRINT CLEARLY
DO NOT AMMEND THIS FORM)

1. I, _____Rosenthal Law Firm, LLC_____, whose address is
　　　　　　　　　　　(Name)

___18 North Main Street_____
　　　　　　　　　(Street Address)

___West Hartford, CT 06107_____(860) 561-3100_____,
(City)　　(State)　　(Zip Code)　　(Telephone) (Work/Home)

request resolution of the fee dispute between myself

and ____James Cohen_____, Respondent, whose
　　　　　　(Name)

address is ___305 Newtown Road_____
　　　　　　　　　　(Street Address)

__Wyckoff, NJ 07481_____(201)447-1749_____
(City)　　(State)　　(Zip Code)　　(Telephone) (Work/Home)

through the process of:
(choose one)

　　　□　mediation only

　　　□　binding arbitration only

　　　☒　mediation followed by binding arbitration of all issues not
　　　　　resolved through mediation

A7

2.  a. The total amount of legal fees charged was  $ __102,466_____.

    b. What portion of the legal fees charged is in dispute?  $ __85,400_____.

    c. A statement of the facts giving rise to the claim follows on this, or an attached page.
    **(Please attach all relevant documents.)**

Respondent hired petitioner to represent his interests in collecting a judgment that had entered in his favor against an individual and a corporate debtor.

Petitioner filed and argued motions for interest and attorney's fees that increased respondent's judgment from $575,000 to $1,058,480. Debtors did not voluntarily settle or pay the judgment. Petitioner obtained $57,464 through the use of a bank garnishment. Petitioner then negotiated a resolution of the case wherein the debtors agreed to pay $535,000 over 48 months at the rate of $10,000 per month. The respondent refused this offer.

Respondent later negotiated his own deal wherein he agreed to accept $500,000 over 54 months at the rate of $9,260 per month. Respondent accepted this offer, and debtor has been paying on this. Respondent refuses to pay petitioner his attorney's fees.

A8

3. It is represented that the Petitioner has made a good faith effort to resolve the dispute with the Respondent before filing the Petition.

4. It is represented that the dispute is not the present subject of legal action nor has the matter been finally adjudicated (settled) by a Court.

5. By filing this Petition, I acknowledge my right to be represented at my own expense by an attorney at law at the hearing or at any stage of mediation and/or arbitration.

6. a. It is agreed that said fee dispute arbitration shall be heard and decided by an arbitration panel appointed by the Legal Fee Resolution Board of the Connecticut Bar Association in accordance with its rules.
   OR
   b. It is agreed that said fee dispute shall be mediated by a mediator appointed by the Legal Fee Resolution Board of the Connecticut Bar Association in accordance with its rules.

7. It is further agreed pursuant to Connecticut General Statutes 52-414 that the requirement of a sworn oath of the arbitrator is hereby waived.

8. It is further agreed that any Arbitration Award shall be final and binding upon the Petitioner and Respondent.

9. The Petitioner acknowledges and agrees that the Petitioner or the Respondent may deposit funds in escrow with the Board.  The Petitioner also acknowledges and agrees that if such funds are deposited in escrow with the Board, the Board shall distribute these funds, together with any interest thereon, in accordance with their decision in this matter.

| | |
|---|---|
| Signature of Petitioner | If Petitioner is to be represented by Counsel please indicate below: |
| **Edward Rosenthal, Esq.** | **Edward Rosenthal, Esq.** |
| (Please print name) | Name of Counsel |
| **March 3, 2014** | **18 North Main Street** |
| Date | Street Address |
| | **West Hartford, CT 06107** |
| (If more than one Petitioner:) | City          State          Zip |
| | **(860) 561-3100** |
| Signature of second petitioner | Telephone |
| (Please print name) | |
| Date | |

A9

## Agreement for Legal Services - December 1, 2011

1.  *Client.* The client is James D. Cohen and Roll-A-Cover of New Jersey, LLC.

2.  *Attorney.* Client retains Rosenthal Law Firm, LLC (RLF) to represent client in collecting a judgment against Roll-A-Cover, LLC and Michael Morris.

3.  *Authorization.* Client authorizes RLF, its agents, and employees to take all appropriate steps to represent client in this matter.

4.  *Attorney's Fees.* Client shall pay RLF an attorney fee contingent on the amount of any gross recovery obtained in consideration for any time spent by RLF in representing client. The contingent fee shall be as follows:

| Amount Collected | Fee Percentage |
|---|---|
| $1- $100,000 | 30% |
| $100,001- $200,000 | 25% |
| $200,001- $300,000 | 20% |
| $300,001- $400,000 | 15% |
| $400,001 and above | 12.5% |

Gross recovery includes all money obtained by way of settlement, judgment, execution, garnishment, or otherwise for any claim *before* any expenses, debts, or liens are paid. If no gross recovery is obtained, client shall pay no attorney's fees.

Attorney's fees are due and payable upon receipt of any gross recovery.

5.  *Expenses.* Expenses are separate from and in addition to attorney's fees. Client authorizes RLF, its agents, or employees to incur expenses in representing client and to pay from any recovery obtained on client's behalf all such expenses incurred. RLF does not need client's approval before incurring expenses for any single item of expense under $650.00. At the discretion of RLF, client shall reimburse attorney for any expense incurred within thirty (30) days or advance payment on any expense necessary for the case.

Expenses shall include, but not be limited to, marshal fees, deposition fees, court fees, expert witness fees, copying charges at $0.10 per page, postage, parking charges, and mileage fees for any travel outside Hartford County (at the IRS designated rate).

A 10

6.      *No Guarantees.* RLF has made no guarantees pertaining to RLF's representation of client or pertaining to client's claim.

7.      *Binding Effect.* This agreement is binding on the respective heirs, executors, legal representatives, and successors of RLF and client.

8.      *Commencement of Representation and Withdrawal of Representation.* RLF has no obligation to represent client until client returns a signed original of this agreement. RLF's right to withdraw from representation of client shall be governed by Rule 1.16 of the *Rules of Professional Conduct.*

9.      *Scope of Agreement and Representation.* RLF is obligated to represent client only in those matter(s) listed in paragraph 2. RLF is not obligated to represent client in: a retrial after mistrial or a reversal by an appellate court; an appeal; or any other proceedings or matters of any type. Representation in any proceeding or matter not covered by this agreement requires a new agreement in writing signed by both RLF and client.

10.     *Governing Law.* This agreement shall be governed by the laws of Connecticut.

11.     *Arbitration.* All disputes involving attorney's fees, expenses, this agreement, or any aspect of RLF's representation of client shall be submitted for binding arbitration to the Connecticut Bar Association. Any costs related to any arbitration shall be split between RLF and Client.

12.     *Attorney's Fees and Interest.* In the event that client does not pay RLF its attorney's fees or expenses in this matter as indicated herein, client agrees to pay all costs related to a collection action including RLF's attorney's fees and interest at the annual rate of ten percent (10%). RLF shall have a lien on any recovery obtained.

13.     *Entire Agreement.* This agreement represents the entire and integrated agreement between RLF and client regarding RLF's representation of client, attorney's fees, and expenses and replaces all other representations or agreements, if any, either written or oral. This agreement can be modified only by written instrument signed by both RLF and client.

Client and RLF have read and understand this *Agreement for Legal Services* dated December 1, 2011 and agree to be obligated by its terms and have signed below as a free act and deed.

A 11

Agreement for Legal Services – December 1, 2011 – Page 3 of 3

James D. Cohen

Rosenthal Law Firm, LLC (RLF)

James D. Cohen, authorized on behalf of
Roll-A-Cover of New Jersey, LLC.

A 12

File Number 14-12



**In Proceedings Before**
**THE LEGAL FEE RESOLUTION BOARD**
**of the**
**CONNECTICUT BAR ASSOCIATION**

**RESPONDENT'S AGREEMENT**
**(PLEASE TYPE OR PRINT CLEARLY)**

Petitioner(s): Rosenthal Law Firm, LLC
v.
Respondent(s): James Cohen

I, _JAMES COHEN_ , whose address is
(Respondent's Name)

_305 NEWTOWN RD, WYCKOFF NJ 07481_
(Street Address)            (City)    (State) (Zip Code)

_201-403-4461_                  _jamesdcohen@aol.com_
(Telephone)         (Facsimile)         (E-Mail)

agree as follows:

1. The undersigned is the Respondent in the above-captioned Petition for Resolution of Fee Dispute.

2. The Respondent has ~~received~~ *NOT* a copy of the Petition for Resolution of Fee Dispute.

3. The Respondent has ~~received~~ *NOT* a copy of the *Rules For Resolution of Legal Fee Disputes* of the Connecticut Bar Association.

4. I do hereby agree to participate in dispute resolution according to the method selected by the Petitioner in the Petition for Resolution of Fee Dispute (either mediation only, binding arbitration only, or mediation followed by binding arbitration of all issues not resolved through mediation).

5. The dispute is not the present subject of legal action nor has the matter been finally adjudicated (settled) by a Court.

6. a. The total amount of legal fees charged was   $ _NONE - NO INVOICE PRESENTED_
   b. What portion of the legal fees charged is in dispute?   $ _??_ .

Page   1

A 13

File Number 14-12

**7. A statement of the facts in defense follows on this or an attached page.**

MR. ROSENTHAL REFUSED TO REPRESENT ME WHEN THE JUDGEMENT DEBTOR FILED FOR BANKRUPTCY. HE IS NOW TRYING TO COLLECT A FEE FOR A SETTLEMENT I NEGOTIATED PRO SE IN THE BANKRUPTCY COURT.

**8.** I have the right to be represented at my own expense by an attorney at law at the hearing or at any stage of mediation and/or arbitration.

**9. a.** It is agreed that, if arbitration was selected, said fee dispute arbitration shall be heard and decided by an arbitration panel appointed by the Legal Fee Resolution Board of the Connecticut Bar Association in accordance with its rules. (PLEASE, BY PHONE OR AT A N.J. LOCATION).

**b.** It is agreed that, if mediation was selected, said fee dispute shall be mediated by a mediator appointed by the Legal Fee Resolution Board of the Connecticut Bar Association in accordance with its rules.

**10.** Pursuant to Connecticut General Statutes 52-414, the requirement of a sworn oath of the arbitrator is hereby waived.

**11.** Any arbitration award shall be final and binding upon the Petitioner and Respondent.

**12.** The Petitioner acknowledges and agrees that the Petitioner or the Respondent may deposit funds in escrow with the Board. The Petitioner also acknowledges and agrees that if such funds are deposited in escrow with the Board, the Board shall distribute these funds, together with any interest thereon, in accordance with their decision in this matter.

_____
Signature of Respondent

JAMES D. COTTER
(Please print name)

2/23/2014
Date

If Respondent is to be represented by Counsel please indicate below:

_____
Name of Counsel

_____
Street Address

_____
City          State          Zip

_____
Telephone          Facsimile

_____
E-Mail

Page 2

A14



EXHIBIT

C

In Proceedings Before
**THE LEGAL FEE RESOLUTION BOARD**
of the
**CONNECTICUT BAR ASSOCIATION**

Rosenthal Law Firm, LLC, Petitioner                          File number 14-12

V.

James Cohen, Respondent                                     December 24, 2014

### FINDINGS AND AWARD OF ARBITRATORS

In this matter, the undersigned arbitrators hereby find:

1. The Petitioner has proven his contractual entitlement to attorney's fees on all sums collected by the Respondent from Michael Morris/Roll-A-Cover, LLC.
2. Under the terms of the contract between the Parties dated December 1, 2011, the Petitioner is entitled to fees on the amounts so collected or to be collected as set forth on the attached Fee Calculation and as hereinafter described:
   a. Prior to the settlement between Respondent and Morris/Roll-A-Cover, the Respondent collected the sum of $57,464.00 from Morris/Roll-A-Cover and the Petitioner has already been paid a fee on this recovery in the amount of $17,239.20.
   b. Under the terms of a settlement agreement between the Respondent and Morris/Roll-A-Cover, the Respondent is currently collecting the additional sum of $500,000.00 in 54 installments of $9,259.26. The Respondent has collected 24 payments to date totaling $222,222.24 (in addition to the $57,464.00 already collected). The Respondent presently owes fees to the Petitioner on these 24 payments in the amounts stated in the Fee Calculation, which total Fifty-Three Thousand, Six Hundred Ninety-Eight and 05/100 ($53,698.05) Dollars, and which shall be paid by February 1, 2015.
   c. The Petitioner is entitled to fees on the future 30 payments yet to be collected by the Respondent in the amounts and at the times set forth on the attached Fee Calculation.
3. The amount stated by the Petitioner in the submission as being "In dispute," i.e., $85,400.00, was the result of a miscalculation; the amount in dispute is $92,443.80.
4. The total fees owed to the Petitioner are thus:
   a. $17,239.20 (already paid to the Petitioner)
   b. $53,698.05 (due by February 1, 2015)
   c. $38,745.75 (payable in future installments per Fee Calculation)
   d. TOTAL: $109,683.00.

Eugene A. Cooney, Esq., Chairman

Joshua Hawks-Ladds, Esq.

Lindsley Wellman

{W0413327.1}

A15

File number 14-12
Rosenthal Law Firm, LLC,
Petitioner
v.
James Cohen, Respondent

**In Proceedings Before**
**THE LEGAL FEE RESOLUTION BOARD**
**of the**
**CONNECTICUT BAR ASSOCIATION**
*Fee Calculation*

| Monthly Payments | | Sums Collected: | $557,464.00 | Fee | Due Date |
|---|---|---|---|---|---|
| Prior | $57,464.00 | Balance | $500,000.00 | $17,239.20 | Paid |
| 1 | $9,259.26 | Balance | $490,740.74 | $2,777.78 | 2/1/2015 |
| 2 | $9,259.26 | Balance | $481,481.48 | $2,777.78 | 2/1/2015 |
| 3 | $9,259.26 | Balance | $472,222.22 | $2,777.78 | 2/1/2015 |
| 4 | $9,259.26 | Balance | $462,962.96 | $2,777.78 | 2/1/2015 |
| 5 | $9,259.26 | Balance | $453,703.70 | $2,589.76 | 2/1/2015 |
| 6 | $9,259.26 | Balance | $444,444.44 | $2,314.82 | 2/1/2015 |
| 7 | $9,259.26 | Balance | $435,185.18 | $2,314.82 | 2/1/2015 |
| 8 | $9,259.26 | Balance | $425,925.92 | $2,314.82 | 2/1/2015 |
| 9 | $9,259.26 | Balance | $416,666.66 | $2,314.82 | 2/1/2015 |
| 10 | $9,259.26 | Balance | $407,407.40 | $2,314.82 | 2/1/2015 |
| 11 | $9,259.26 | Balance | $398,148.14 | $2,314.82 | 2/1/2015 |
| 12 | $9,259.26 | Balance | $388,888.88 | $2,314.82 | 2/1/2015 |
| 13 | $9,259.26 | Balance | $379,629.62 | $2,314.82 | 2/1/2015 |
| 14 | $9,259.26 | Balance | $370,370.36 | $2,314.82 | 2/1/2015 |
| 15 | $9,259.26 | Balance | $361,111.10 | $2,314.82 | 2/1/2015 |
| 16 | $9,259.26 | Balance | $351,851.84 | $2,034.21 | 2/1/2015 |
| 17 | $9,259.26 | Balance | $342,592.58 | $1,851.85 | 2/1/2015 |
| 18 | $9,259.26 | Balance | $333,333.32 | $1,851.85 | 2/1/2015 |
| 19 | $9,259.26 | Balance | $324,074.06 | $1,851.85 | 2/1/2015 |
| 20 | $9,259.26 | Balance | $314,814.80 | $1,851.85 | 2/1/2015 |
| 21 | $9,259.26 | Balance | $305,555.54 | $1,851.85 | 2/1/2015 |
| 22 | $9,259.26 | Balance | $296,296.28 | $1,851.85 | 2/1/2015 |
| 23 | $9,259.26 | Balance | $287,037.02 | $1,851.85 | 2/1/2015 |
| 24 | $9,259.26 | Balance | $277,777.76 | $1,851.85 | 2/1/2015 |
| SUBTOTAL | | | | $53,698.05 | 2/1/2015 |
| 25 | $9,259.26 | Balance | $268,518.50 | $1,851.85 | 3/1/2015 |
| 26 | $9,259.26 | Balance | $259,259.24 | $1,851.85 | 4/1/2015 |
| 27 | $9,259.26 | Balance | $249,999.98 | $1,478.65 | 5/1/2015 |
| 28 | $9,259.26 | Balance | $240,740.72 | $1,388.89 | 6/1/2015 |
| 29 | $9,259.26 | Balance | $231,481.46 | $1,388.89 | 7/1/2015 |
| 30 | $9,259.26 | Balance | $222,222.20 | $1,388.89 | 8/1/2015 |
| 31 | $9,259.26 | Balance | $212,962.94 | $1,388.89 | 9/1/2015 |
| 32 | $9,259.26 | Balance | $203,703.68 | $1,388.89 | 10/1/2015 |
| 33 | $9,259.26 | Balance | $194,444.42 | $1,388.89 | 11/1/2015 |
| 34 | $9,259.26 | Balance | $185,185.16 | $1,388.89 | 12/1/2015 |
| 35 | $9,259.26 | Balance | $175,925.90 | $1,388.89 | 1/1/2016 |
| 36 | $9,259.26 | Balance | $166,666.64 | $1,388.89 | 2/1/2016 |
| 37 | $9,259.26 | Balance | $157,407.38 | $1,387.47 | 3/1/2016 |

A 16

File number 14-12  
Rosenthal Law Firm, LLC,  
Petitioner  
V.  
James Cohen, Respondent

**In Proceedings Before**  
**THE LEGAL FEE RESOLUTION BOARD**  
of the  
**CONNECTICUT BAR ASSOCIATION**  
*Fee Calculation*

| | | | | | |
|---|---|---|---|---|---|
| 38 | $9,259.26 | Balance | $148,148.12 | $1,157.41 | 4/1/2016 |
| 39 | $9,259.26 | Balance | $138,888.86 | $1,157.41 | 5/1/2016 |
| 40 | $9,259.26 | Balance | $129,629.60 | $1,157.41 | 6/1/2016 |
| 41 | $9,259.26 | Balance | $120,370.34 | $1,157.41 | 7/1/2016 |
| 42 | $9,259.26 | Balance | $111,111.08 | $1,157.41 | 8/1/2016 |
| 43 | $9,259.26 | Balance | $101,851.82 | $1,157.41 | 9/1/2016 |
| 44 | $9,259.26 | Balance | $92,592.56 | $1,157.41 | 10/1/2016 |
| 45 | $9,259.26 | Balance | $83,333.30 | $1,157.41 | 11/1/2016 |
| 46 | $9,259.26 | Balance | $74,074.04 | $1,157.41 | 12/1/2016 |
| 47 | $9,259.26 | Balance | $64,814.78 | $1,157.41 | 1/1/2017 |
| 48 | $9,259.26 | Balance | $55,555.52 | $1,157.41 | 2/1/2017 |
| 49 | $9,259.26 | Balance | $46,296.26 | $1,157.41 | 3/1/2017 |
| 50 | $9,259.26 | Balance | $37,037.00 | $1,157.41 | 4/1/2017 |
| 51 | $9,259.26 | Balance | $27,777.74 | $1,157.41 | 5/1/2017 |
| 52 | $9,259.26 | Balance | $18,518.48 | $1,157.41 | 6/1/2017 |
| 53 | $9,259.26 | Balance | $9,259.22 | $1,157.41 | 7/1/2017 |
| 54 | $9,259.22 | | $0.00 | $1,157.40 | 8/1/2017 |
| | **SUBTOTAL** | | | **$38,745.75** | |

| | | | |
|---|---|---|---|
| **Total** | $557,464.00 | $109,683.00 | |
| **Paid** | | -$17,239.20 | |
| **Due** | | $92,443.80 | |

A 17

DOCKET NO: CV X06 04 4015047      :      SUPERIOR COURT

JAMES D. COHEN AND
ROLL-A-COVER OF NEW JERSEY, LLC      :      COMPLEX LITIGATION
                                    AT WATERBURY

VS.      :

ROLL-A-COVER LLC, AND
MICHAEL MORRIS      :      JANUARY 20, 2012

## MOTION FOR POST-JUDGMENT INTEREST

The plaintiffs move the Court for an award of interest pursuant to Conn. Gen. Stat. §52-192a(c), and Conn. Gen. Stat. §37-3a. The plaintiffs prevailed in their action against the defendants on all counts- counts based on Connecticut Business Opportunity Investment Act ("CBOIA") (Conn. Gen. Stat. §36b-60), fraud, and violation of the Connecticut Unfair Trade Practice Act (Conn. Gen. Stat. §42-110a). The Court (Stevens, J.) entered judgment in favor of the plaintiffs and against the defendants on all counts, and awarded damages of $575,000 on June 23, 2010. An appeal was filed by the defendants, but the judgment was affirmed in all respects. See *Cohen v. Roll-A-Cover, LLC*, 131 Conn.App. 443 (2011). Since that time, the defendants have paid nothing towards the judgment that entered against them and the plaintiffs have suffered as a result of the defendants' failure to pay those sums that the Court determined was owed to the plaintiffs.

The plaintiffs respectfully ask the Court for the award of interest based on both §52-192a(c), and §37-3a. Interest awarded under §52-192a(c) is mandatory, while interest awarded under §37-3a is awarded within the discretion of the Court.

**ORAL ARGUMENT REQUESTED**
**TESTIMONY NOT REQUIRED**

*Rosenthal Law Firm, LLC · 18 North Main St. · West Hartford, CT 06107· (860) 561-3100· Juris: 408225*

A18

## Interest Pursuant to Conn. Gen. Stat. §52-192a(c) For An Unaccepted Offer of Judgment

The plaintiffs moves the Court for the addition of interest to the damages awarded the plaintiffs pursuant to an *Offer of Judgment* that was not accepted by the defendants. On May 20, 2005 (pleading # 112.00), the plaintiffs filed an *Offer of Judgment* in the amount of $375,000. The defendants did not accept said *Offer of Judgment*. The Court having found for the plaintiff and determined its damages to be $575,000, which exceeded the *Offer of Judgment*, the plaintiff is entitled to *Offer of Judgment* interest, and attorney's fees in the amount of $350.00 based on Conn. Gen. Stat. §52-192a(c). The award of interest based on an offer of judgment is mandatory. *DiLieto v. County Obstetrics & Gynecology Group, P.C.*, 297 Conn. 105, 152 (2010).

.The plaintiffs are entitled to 12% interest[1] on $575,000 from December 6, 2004 (date of filing) to June 23, 2010 (date of judgment) in addition to attorney's fees of $350.00. Interest is computed to be $382,808.22. The calculation of the offer of judgment interest is based on 12% interest, and the plaintiff's calculation is attached hereto and incorporated by reference as Exhibit A.

## Interest Pursuant to Conn. Gen. Stat. §37-3a

Connecticut courts have determined that an award of post-judgment interest is authorized by Conn. Gen. Stat. §37-3a. See *Aubin v. Miller*, 64 Conn.App. 781, 801 (2001); *Foley v. Huntington*

---

[1] Conn. Gen. Stat. §52-192a(c) was amended by Public Act 05-275 which decreased the rate of interest from 12% to 8% but the amendment is only applicable to actions accruing after October 1, 2005. The within action was filed on December 6, 2004 (and accrued prior to that) so the amendment does not apply and accordingly the appropriate rate of interest is 12%. *C.R. Klewin Northeast v. Bridgeport*, 282 Conn. 54, 58 n.5 (2007). *Schumann v. Dianon Systems, Inc.*, 2009 Conn. Super. LEXIS 2851 (judicial district of Fairfield at Bridgeport) ( October 16, 2009, Frankel, J.); *Hamilton v. Thorson*, 2008 Conn. Super. LEXIS 1538 at *2 n.5 (judicial district of Danbury) (Shaban, J., June 12, 2008).

*Co.,* 42 Conn.App. 712, 741 (1996). This statute has been construed "to make the allowance of interest depend upon whether the detention of the money is or is not wrongful under the circumstances... The allowance of interest as an element of damages is, thus, primarily an equitable determination and a matter lying within the discretion of the trial court...." *Sosin v. Sosin,* 109 Conn.App. 691, 703 (2008); *McCullough v. Waterside Associates,* 102 Conn.App. 23, 33 (2007).

The law is established that the entry of a monetary judgment makes money payable within the meaning of §37-3a(a). *Ulbrich v. Groth,* 2011 Conn. Super. LEXIS 1946 (judicial district of Waterbury) (July 26, 2011, Stevens, J.). Defendants' failure to pay the judgment pending the appeal allows the court, in the reasonable exercise of its equitable discretion, to impose interest on this amount from the date of the judgment. *Id.* at *3. See also *TDS Painting & Restoration v. Copper Beech Farm,* 73 Conn.App. 492, 512 (2002). The recovery of postjudgment interest is appropriate under the circumstances of this case to ensure that the money judgment is worth the same when it is actually received as when it was awarded. *Ulbrich* at *11.

Conn. Gen. Stat. §37-3a(a) allows interest of 10% to be imposed by the Court. The 10% interest rate expressed in §37-3a is not the required rate, but rather is the maximum rate of interest that a trial court, in its discretion, can award. See *Sears, Roebuck & Co. v. Board of Tax Review, 241* Conn. 765(1997); *Ulbrich* at *11.

In the within matter, the defendants filed an appeal which they lost in all respects. The defendants then filed a petition for certification to the Supreme Court, which was denied. The defendants have delayed paying the plaintiffs for more than eighteen months since this Court entered judgment against them. The plaintiffs have been deprived of this money, and the judgment that entered against the plaintiffs is not worth the same in early 2012 as it was in June

2010 when the judgment entered. The defendants not paying the judgment operated to the great benefit the defendants and severely impacted and harmed the plaintiffs. Accordingly, the Court should award the plaintiffs interest pursuant to §37-3a(a) from the date of the judgment until the date the defendants pay the plaintiff the full amount that is due the plaintiffs.

## Conclusion

The Court must award the plaintiffs interest under the former offer of judgment statute in the amount of $382,808.22 (representing 12% interest from the date the case was filed to the date of judgment). Additionally, the Court should exercise its discretion to award the plaintiffs interest under §37-3a(a) from the date of the entry of the judgment until the date the defendants pay the plaintiff.

Plaintiffs,

By: _____
Edward M. Rosenthal
Rosenthal Law Firm, LLC

## ORDER

The foregoing motion having come before the Court, it is hereby ORDERED:

GRANTED                    /                 DENIED


BY THE COURT


_____
Judge


## CERTIFICATION

This is to certify that a copy of the foregoing was mailed or delivered in court to all

counsel of record according to the rules of practice/procedure this 20TH day of January 2012 as

follows:

James Cohen
305 Newtown Road
Wyckoff, NJ 07481

Fitzpatrick Fray & Bologna
1150 Post Road
Fairfield, CT 06824

Joseph Rini, Esq.
51 Elm Street, Suite 420
New Haven, CT 06510

Michael Morris
874 Amity Road
Bethany, CT 06524

_____
Edward M. Rosenthal

*Rosenthal Law Firm, LLC ·18 North Main St.· West Hartford, CT 06107· (860) 561-3100· Juris: 408225*

A22

## Offer of Judgment Interest Calculation



From: December 6, 2004
To: June 23, 2010
Interest Rate: 12%

| Date | Days | Basis | Monthly Interest | Aggregate Interest |
|------|------|-------|------------------|--------------------|
| 12/6/2004 | | 575,000.00 | | |
| 12/31/2004 | 25 | 575,000.00 | 4,726.03 | 4,726.03 |
| 1/31/2005 | 31 | 575,000.00 | 5,860.27 | 10,586.30 |
| 2/28/2005 | 28 | 575,000.00 | 5,293.15 | 15,879.45 |
| 3/31/2005 | 31 | 575,000.00 | 5,860.27 | 21,739.72 |
| 4/30/2005 | 30 | 575,000.00 | 5,671.23 | 27,410.95 |
| 5/31/2005 | 31 | 575,000.00 | 5,860.27 | 33,271.22 |
| 6/30/2005 | 30 | 575,000.00 | 5,671.23 | 38,942.45 |
| 7/31/2005 | 31 | 575,000.00 | 5,860.27 | 44,802.72 |
| 8/31/2005 | 31 | 575,000.00 | 5,860.27 | 50,662.99 |
| 9/30/2005 | 30 | 575,000.00 | 5,671.23 | 56,334.22 |
| 10/31/2005 | 31 | 575,000.00 | 5,860.27 | 62,194.49 |
| 11/30/2005 | 30 | 575,000.00 | 5,671.23 | 67,865.72 |
| 12/31/2005 | 31 | 575,000.00 | 5,860.27 | 73,725.99 |
| 1/31/2006 | 31 | 575,000.00 | 5,860.27 | 79,586.26 |
| 2/28/2006 | 28 | 575,000.00 | 5,293.15 | 84,879.41 |
| 3/31/2006 | 31 | 575,000.00 | 5,860.27 | 90,739.68 |
| 4/30/2006 | 30 | 575,000.00 | 5,671.23 | 96,410.91 |
| 5/31/2006 | 31 | 575,000.00 | 5,860.27 | 102,271.18 |
| 6/30/2006 | 30 | 575,000.00 | 5,671.23 | 107,942.41 |
| 7/31/2006 | 31 | 575,000.00 | 5,860.27 | 113,802.68 |
| 8/31/2006 | 31 | 575,000.00 | 5,860.27 | 119,662.95 |
| 9/30/2006 | 30 | 575,000.00 | 5,671.23 | 125,334.18 |
| 10/31/2006 | 31 | 575,000.00 | 5,860.27 | 131,194.45 |
| 11/30/2006 | 30 | 575,000.00 | 5,671.23 | 136,865.68 |
| 12/31/2006 | 31 | 575,000.00 | 5,860.27 | 142,725.95 |
| 1/31/2007 | 31 | 575,000.00 | 5,860.27 | 148,586.22 |
| 2/28/2007 | 28 | 575,000.00 | 5,293.15 | 153,879.37 |
| 3/31/2007 | 31 | 575,000.00 | 5,860.27 | 159,739.64 |
| 4/30/2007 | 30 | 575,000.00 | 5,671.23 | 165,410.87 |
| 5/31/2007 | 31 | 575,000.00 | 5,860.27 | 171,271.14 |
| 6/30/2007 | 30 | 575,000.00 | 5,671.23 | 176,942.37 |
| 7/31/2007 | 31 | 575,000.00 | 5,860.27 | 182,802.64 |
| 8/31/2007 | 31 | 575,000.00 | 5,860.27 | 188,662.91 |
| 9/30/2007 | 30 | 575,000.00 | 5,671.23 | 194,334.14 |
| 10/31/2007 | 31 | 575,000.00 | 5,860.27 | 200,194.41 |

A 23

| Date | Days | Principal | Interest | Balance |
|---|---|---|---|---|
| 11/30/2007 | 30 | 575,000.00 | 5,671.23 | 205,865.64 |
| 12/31/2007 | 31 | 575,000.00 | 5,860.27 | 211,725.91 |
| 1/31/2008 | 31 | 575,000.00 | 5,860.27 | 217,586.18 |
| 2/29/2008 | 29 | 575,000.00 | 5,482.19 | 223,068.37 |
| 3/31/2008 | 31 | 575,000.00 | 5,860.27 | 228,928.64 |
| 4/30/2008 | 30 | 575,000.00 | 5,671.23 | 234,599.87 |
| 5/31/2008 | 31 | 575,000.00 | 5,860.27 | 240,460.14 |
| 6/30/2008 | 30 | 575,000.00 | 5,671.23 | 246,131.37 |
| 7/31/2008 | 31 | 575,000.00 | 5,860.27 | 251,991.64 |
| 8/31/2008 | 31 | 575,000.00 | 5,860.27 | 257,851.91 |
| 9/30/2008 | 30 | 575,000.00 | 5,671.23 | 263,523.14 |
| 10/31/2008 | 31 | 575,000.00 | 5,860.27 | 269,383.41 |
| 11/30/2008 | 30 | 575,000.00 | 5,671.23 | 275,054.64 |
| 12/31/2008 | 31 | 575,000.00 | 5,860.27 | 280,914.91 |
| 1/31/2009 | 31 | 575,000.00 | 5,860.27 | 286,775.18 |
| 2/28/2009 | 28 | 575,000.00 | 5,293.15 | 292,068.33 |
| 3/31/2009 | 31 | 575,000.00 | 5,860.27 | 297,928.60 |
| 4/30/2009 | 30 | 575,000.00 | 5,671.23 | 303,599.83 |
| 5/31/2009 | 31 | 575,000.00 | 5,860.27 | 309,460.10 |
| 6/30/2009 | 30 | 575,000.00 | 5,671.23 | 315,131.33 |
| 7/31/2009 | 31 | 575,000.00 | 5,860.27 | 320,991.60 |
| 8/31/2009 | 31 | 575,000.00 | 5,860.27 | 326,851.87 |
| 9/30/2009 | 30 | 575,000.00 | 5,671.23 | 332,523.10 |
| 10/31/2009 | 31 | 575,000.00 | 5,860.27 | 338,383.37 |
| 11/30/2009 | 30 | 575,000.00 | 5,671.23 | 344,054.60 |
| 12/31/2009 | 31 | 575,000.00 | 5,860.27 | 349,914.87 |
| 1/31/2010 | 31 | 575,000.00 | 5,860.27 | 355,775.14 |
| 2/28/2010 | 28 | 575,000.00 | 5,293.15 | 361,068.29 |
| 3/31/2010 | 31 | 575,000.00 | 5,860.27 | 366,928.56 |
| 4/30/2010 | 30 | 575,000.00 | 5,671.23 | 372,599.79 |
| 5/31/2010 | 31 | 575,000.00 | 5,860.27 | 378,460.06 |
| 6/23/2010 | 23 | 575,000.00 | 4,347.95 | $ 382,808.01 |

A24

ROM : MAGIC SUNROOMS                    FAX NO. : 000000000000          Feb. 27 2012 01:35PM  P1

DOCKET NO. X06-UWY-CV-04-4015047-S          SUPERIOR COURT

JAMES D. COHEN and ROLL-A-COVER OF
NEW JERSEY, LLC

    vs.                            COMPLEX LITIGATION DOCKET
                AT WATERBURY

ROLL-A-COVER, LLC and
MICHAEL P. MORRIS                           February 15, 2012

## DEFENDANT ROLL-A-COVER AND MICHAEL P. MORRIS' OBJECTION
## TO PLAINTIFFS' MOTION FOR POST TRIAL INTEREST

  Defendant Roll-A-Cover, LLC and Michael P. Morris hereby object to Plaintiffs'

Motion for Post Trial Interest under Conn. Gen. Stat. §§52-192a and 37-3a on the

following basis:

FACTUAL BACKGROUND:

  This case was brought December of 2004 alleging violations of the Connecticut

Business Opportunity Investment Act (CBOIA), fraudulent and negligent

misrepresentations and violation of the Connecticut Unfair Trade Practice Act (CUTPA).

The complaint was twice amended. On May 20, 2005, Plaintiffs made an offer of

judgment under Conn. Gen. Stat. 52-192a (as it existed at the time) in the amount of

$375,000. The offer was not accepted by the Defendants. The trial was bifurcated

between liability and damages by the Trial Court (Stevens, J.). Liability was determined

in a memoranda decision dated August 6, 2009. Thereafter additional proceedings were

1

A25

FROM : MAGIC SUNROOMS          FAX NO. : 000000000000          Feb. 27 2012 01:35PM  P2

held on the measure of damages. Both sides submitted the calculation of damages and the Plaintiffs submitted the affidavits of attorneys' fees for both trial counsel and predecessor trial counsel that totaled substantially more than $350,000. Defendants objected to the claim and sought an evidentiary hearing to be held thereon. Prior to the hearing, counsels to the Plaintiffs and the Defendants stipulated to the amount of $350,000 for the attorneys' fees. On June 23, 2010, the Trial Court issued its memorandum of decision awarding $75,000 in compensatory damages, $150,000 in punitive damages under CUTPA and the stipulated attorneys' fees of $350,000.

ARGUMENT:

<u>Pre Judgment Interest:</u>

1.    Under Conn. Gen. Stat. §§ 37 – 3a and 52 – 192a, any such interest should have been awarded at the time of the judgment on June 23, 2010. Since more than four months has elapsed since that time without the request for additional interest to be added, the judgment cannot be opened to permit the award of pretrial interest. *Conn. Gen. Stat. § 52-212a.*

Plaintiffs' motion to award interest on Plaintiff's offer of judgment is untimely and barred by the 4 month limitation on opening or modifying judgments pursuant to Conn. Gen. Stat. § 52-212a. On June 23, 2010, the Trial Court filed its Memorandum of Decision on Damages, entering a judgment against the Defendants for $575,000, $75,000 for compensatory damages, $150,000 for punitive damages under CUTPA, and $350,000 in attorney's fees (stipulated amount) under CUTPA. The Plaintiffs did

2

A26

not file their motion to award Conn. Gen. Stat. § 52-192a interest until more than a year and a half later, well beyond the 4 months required by § 52-212a.

Section 52-192a(b) (2005) provides that "[a]fter trial the court shall examine the record to determine whether the plaintiff made an offer of judgment which the defendant failed to accept." If the court ascertains that the plaintiff has recovered an amount equal to or greater than the sum specified, "the court shall add to the amount so recovered twelve percent annual interest on said amount...." Id. The Court may also award reasonable attorney's fee in an amount not to exceed three hundred and fifty dollars, "and shall render judgment accordingly." Id. Thus, it is clear from the statute that, procedurally, offer of judgment interest should be included at the time of the entry of the original judgment. The court adds the offer of judgment interest to the amount recovered at trial and then enters judgment. It is, quite literally, "prejudgment" interest. Gionfriddo v. Avis Rent A Car Sys., 192 Conn. 301, 308 (1984) ("the rules of § 52-192a determine prejudgment interest, while the rules of § 37-3a determine postjudgment interest"). See, e.g. Peterson v. Woldeyohannes, CV040834966S, 2009 Conn. Super. LEXIS 3083(Nov. 13, 2009) (Domnarski, J.).

If such interest is not awarded at the time of the original judgment, the successful party needs to move to modify the original judgment pursuant to §52-212a to add offer of judgment interest. See, e.g., Crowther v. Gerber Garmet Technology, Inc., 8 Conn. App. 254, 261 (1986) (motion to modify filed timely making explicit reference to the 4 month requirement set forth in § 52-212a); CVS Pharmacy, Inc. v. Data Capture

3

A27

Solutions-Repair & Remarking, Inc., CV 07 5010603, 2010 Conn. Super LEXIS 1691

(July 7, 2010) (Aurigemma, J.). [1]

On July 8, 2010, Defendants appealed the judgment. Plaintiff did not file any

cross appeals, although Plaintiff James D. Cohen continued to claim that the

compensatory damages should have been higher. At no time prior to the conclusion of

the appeal did Plaintiffs file a motion in the Trial Court to modify the judgment. See RAL

Management, Inc. v. Valle View Associates, 278 Conn. 672, 682 (2006) ("[i]t is well

established that a trial court properly may open a judgment while an appeal is pending

even to address the issue raised on appeal"). The Plaintiffs had the ability post-

judgment to modify the original judgment entered by this Court to include Conn. Gen.

Stat. § 52-192a (2005) interest. Since they failed to do so within the 4 month limitation

set by § 52-212a, the Court should deny their motion.

---

[1] Some Appellate Courts, in completely distinguishable circumstances, have gone so far as to hold that offer of judgment interest may only be awarded after the trial court has rendered a "final judgment." Tureck v. George, 44 Conn. App. 154, 160-61 (1997); Paine Webber Jackson & Curtis, Inc. v. Winters, 26 Conn. App. 322, 326-28 (1991), aff'd 225 Conn. 146 (1993) (on other grounds); Paine Webber Jackson & Curtis, Inc. v. Winters, 22 Conn. App. 640, 653 (1990). This conclusion flies in the face of the unambiguous language of § 52-212a and the widely accepted practice of the Superior Courts to add offer of judgment interest to the awarded recovery and include it in the original final judgment. These Appellate Courts also cite to Supreme Court decisions that in no way support the conclusion they draw. See Civiello v. Owens-Corning Fiberglass Corp., 208 Conn. 82, 90-93 (1988) (referring loosely to the "judgment" in terms of the aggregate amount of the recovery, not requiring the entry of a "final judgment" before awarding offer of judgment interest); Gionfriddo v. Avis Rent a Car System, Inc., 192 Conn. 301, 304-07 & 309- 10 (1984) (focusing on the entire recovery after trial by the plaintiff, not the actual entry of a final judgment as a prerequisite to the award of offer of judgment interest).

4

A28

FROM : MAGIC SUNROOMS          FAX NO. : 000000000000        Feb. 27 2012 01:36PM P5

2. Pretrial interest under Conn. Gen. Stat. §37 – 3a would only be applicable to the base amount of $75,000 awarded as compensatory damages as punitive damages and attorney's fees computed under the Connecticut Unfair Trade Practice Act are not money that was detained from the time of the commencement the suit as punitive damages and attorneys' fees awarded by statute are only earned during or at the conclusion of the suit. Westport Taxi Service, Inc. v. Westport Transit District, 235 Conn. 1, 41 (1995).

3. The award of attorneys' fees was by stipulation accepted by the Trial Court. The Trial Court cannot now alter the agreement. Audubon Parking Associates Limited Partnership v. Barclay and Stubbs, Inc., et al, 225 Conn. 804 (1993).

Post-Judgment Interest:

1.      Under Conn. Gen. Stat. §37-3a, the award of and amount of the interest under the statute is discretionary with the Trial Court. Aubin v. Miller, 64 Conn. App. 781 (2001); Sears, Roebuck & Co. v. Board of Tax Review, 241 Conn. 295 (1972).

> "The decision to deny or grant post-judgment interest is primarily
> an equitable determination and a matter lying within the discretion
> of the trial court." (Internal quotation marks omitted.) Bower v.
> D'Onfro, 45 Conn.App. 543, 550, 696 A.2d 1285 (1997), citing
> O'Hara v. State, 218 Conn. 628, 643, 590 A.2d 948 (1991); see
> also Maluszewski v. Allstate Ins. Co., 34 Conn.App. 27, 38, 640
> A.2d 129 (decision to grant interest, in general, is equitable
> determination), cert. denied, 229 Conn. 921, 642 A.2d 1214 (1994).
> "The determination of whether interest pursuant to § 37-3a should
> be awarded is a question for the trier of fact." TDS Painting &
> Restoration v. Copper Beech Farm, supra, 73 Conn.App. 512;
> Foley v. Huntington Co., supra, 42 Conn. App. 738.

A29

FROM : MAGIC SUNROOMS          FAX NO. : 000000000000       Feb. 27 2012 01:37PM  P6

Carrano v Yale-New Haven Hosp., CV94131207S, J.D.
Fairfield at Bridgeport, 2007 Conn. Super. LEXIS 1345, May
24, 2007

The Trial Court should consider whether there are equitable concerns that

mitigate against the imposition of post judgment interest or of the interest rate to

be charged.

2.    The 10% set forth in the statute is a maximum that can be modified by

market conditions. New Haven Trust Co., Receiver v. Doherty, 74 Conn. 488 (1902) —

the court may take judicial notice of currently known rates of interest. The current Wall

Street Journal Prime Rate is 3.25% over the last year. See Exhibit 1. Since the

economy has been sluggish for more than a year, the imposition of 10% has been found

by the courts to be excessive given the market and the rate should be 7.5% has been

awarded.  Stuart v. Stuart, 112 Conn. App. 160, 181 (2009) — 7.5% is sufficient to

accomplish compensatory purposes and is within the discretion of the court to award.

CONCLUSION:

Based on the foregoing, the Court should deny the motion as to pre-judgment

interest and should determine whether post-judgment interest should be awarded and if

so reduce the amount of interest to 7.5% based on market conditions and should not

apply to the attorneys' fees as they were stipulated.

A30

## ORDER

The foregoing Objection having been presented it is hereby ORDERED:

Sustained

     Or

Sustained in part and an evidentiary hearing is hereby ordered for _____

     Or

Overruled

Dated:                                      THE COURT

 

 

_____

                     Judge/Clerk

A31

## CERTIFICATION

I certify that a copy of the fore going was sent first class mail postage prepaid to the following on this the 15th day of January 2012.

Edward M. Rosenthal, Esq.
18 North Main Street
West Hartford, CT 06107

Michael T. Bologna, Esq.
Fitzpatrick, Fray & Bologna
1150 Post Road
Fairfield, CT  06824

Michael P. Morris
698 Amity Rd.
Bethany, CT  06524

James D. Cohen
305 Newtown Road
Wyckoff, NJ 07481

Joseph L. Rini

A32

COHEN, JAMES D                          VS.

ROLL-A-COVER LLC                        UWY-CV-04-4015047S(X06)

THE FOLLOWING MOTIONS WERE HEARD AND DECIDED

ON 2/28/12:

MOTION FOR APPELLATE ATTORNEY FEES IS

GRANTED IN THE AMOUNT OF $23,472.80 (#365),

7.5 % INTEREST IS AWARDED FROM THE DATE

JUDGMENT ENTERED AND 7.5 % INTEREST IS AWARDED

ON THE APPELLATE ATTORNEY FEES AWARDED TODAY

(#366), AND

INTEREST IS AWARDED UNDER GENERAL STATUTES

SEC. 52-192A(C) AS CALCULATED IN THE MOTION

(#366) IN THE AMOUNT OF $382,808.01.

AGATI, J.

2/28/2012

TRANSCRIBED BY COURT MONITOR ANGELA LEROY

SUPERIOR COURT                          EDWARD MARTIN ROSENTHAL

300 GRAND STREET                        18 NORTH MAIN STREET

WATERBURY, CONNECTICUT   06702   WEST HARTFORD   CT 06107

DATED: FEB 28, 2012

UMY

A33

## Edward Rosenthal

| | |
|---|---|
| **From:** | jamesdcohen@aol.com |
| **Sent:** | Tuesday, February 28, 2012 4:12 PM |
| **To:** | ed@erosenthal.org |
| **Subject:** | Re: Steve Kindseth |
| **Attachments:** | Hearing_Feb_28.pdf |

Hi,

First.  THANK YOU FOR A JOB WELL DONE TODAY.

I just finished the calculation - see attached.  Morris and RAC owe us $1,058,619 as of tomorrow, Feb 29th (and will owe us $1,062,924 a month later if he doesn't pay in Feb).

As long as Morris continues to hide himself and his assets and cowers behind ridiculous settlement offers, I would not entertain anything less then the full amount of what's owed to us.  I still believe Morris has the net worth to make a better offer or why would he be reorganizing the equity in his LLCs and not going for bankruptcy?  If Morris would give us full financial exposure, we could determine if his offer is real, and that it places distress on his family's financial life equally to what he's placed on my family.

We should not wait 'till Morris tanks RAC.  I still think we should take Morris' LLCs from him <u>now</u> and deal with the net asset values in the process.  I think we're talking about an aggregate value of net assets of all of the LLCs totaling much less than $500,000 (with all his debt).  His CPA can provide a pretty good value of the net asset based on the info he gets to prepare the tax returns.  I'll be happy to engage my own CPA to validate Morris' CPA's values.

Again, thanks for today.

Jimmy

·

-----Original Message-----
From: Edward Rosenthal <ed@erosenthal.org>
To: jamesdcohen <jamesdcohen@aol.com>
Sent: Tue, Feb 28, 2012 2:54 pm
Subject: Steve Kindseth

Hi jimmy

So steve Kindseth called me a little while ago. We spoke for a while.  He took a pessimistic attitude about whether its possible to work something out amicably.  He rarely mentioned bankruptcy during our discussion. He kept saying that "maybe I should advise my client to close roll a cover and just get a job in florida and allow you to get a wage garnishment on his wages and that's all youll ever get." He said that about 4x. I told him that while I'm not clairvoyant, I doubt morris is going to close shop and make himself (at age 50+/-) get a new job along with his wife and daughters).

I invited him to make a proposal to settle the thing and to get back to me. He told me that 750k is way too much, especially over 2 years. I told him 550k was a non-starter. I told him he should incentivize you to settle. I told him you do need legitimate security so that we don't have to go chasing him 6 months or a year from now.

If I hear anything further I'll let you know.

You'll get me over a calculation of the total as it now stands?

1



**Edward Rosenthal**

| | |
|---|---|
| **From:** | Stephen Kindseth <SKindseth@zeislaw.com> |
| **Sent:** | Tuesday, March 06, 2012 5:45 PM |
| **To:** | Edward Rosenthal |

Ed, this is my client's offer:

1) Forbearance agreement by Cohen, with satisfaction of judgment and release of judgment liens upon Cohen's receipt of the following payments:
   a. Cohen retains seized bank account proceeds (approx. $65,000);
   b. $10,000 a month monthly payments until judgment satisfied;
   c. Judgment will be satisfied upon Cohen's receipt of the following:
      i. $450,000 (less credit for payments made to date) if paid within 1 year of the date of the forbearance agreement;
      ii. $495,000 (less credit for payments made to date) if paid within 2 years;
      iii. $545,000 (less credit for payments made to date) if paid within 3 years;
      iv. $600,000 (less credit for payments made to date) if paid within 4 years; and
      v. $660,000 (less credit for payments made to date) if paid within 5 years.
   d. If not satisfied within 5 years of the date of the forbearance agreement, the full amount of judgment (less credit against full judgment amount for payments made) becomes immediately enforceable;
2) 15 day grace period for monthly payments, with 30 day notice and cure period;
3) If default in monthly payments, the full amount of balance of judgment shall become immediately due and payable plus post-judgment interest in accordance with state law; and
4) Insiders shall subordinate to Cohen's judgment lien against Roll-A-Cover.

Please advise if this is acceptable.

Steve

Stephen M. Kindseth, Esq.
Zeisler & Zeisler, P.C.
558 Clinton Avenue
Bridgeport, CT 06525
Tel: 203-368-4234
Fax: 203-549-0903
Email: skindseth@zeislaw.com
Website: www.zeislaw.com

This message, together with its attachments, if any, may contain information that is legally privileged and/or confidential, and is intended only for the use of the individual or entity to which it is addressed. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message, or of its contents, or any attachments, is strictly prohibited. If you have received this message in error, please notify the original sender immediately by return e-mail or by telephone and delete the message, along with any attachments thereto, from your computer. Thank you.

A35

3) If default in monthly payments, the full amount of balance of judgment shall become immediately due and payable plus post-judgment interest in accordance with state law; and

4) Insiders shall subordinate to Cohen's judgment lien against Roll-A-Cover.

Please advise if this is acceptable.

Steve

Stephen M. Kindseth, Esq.
Zeisler & Zeisler, P.C.
558 Clinton Avenue
Bridgeport, CT 06525
Tel: 203-368-4234
Fax: 203-549-0903
Email: skindseth@zeislaw.com
Website: www.zeislaw.com

This message, together with its attachments, if any, may contain information that is legally privileged and/or confidential, and is intended only for the use of the individual or entity to which it is addressed. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message, or of its contents, or any attachments, is strictly prohibited. If you have received this message in error, please notify the original sender immediately by return e-mail or by telephone and delete the message, along with any attachments thereto, from your computer. Thank you.

2

A36

**Edward Rosenthal**

| | |
|---|---|
| **From:** | jamesdcohen@aol.com |
| **Sent:** | Tuesday, March 06, 2012 7:11 PM |
| **To:** | ed@erosenthal.org |
| **Subject:** | Re: |

Hi,

I'm not impressed with this offer. At a minimum, I hope to get 50% of the (new) judgment amount as a down payment and I may accept a monthly payment over a set period of time. The monthly amount will be based on the term, and visa versa. With a higher monthly payment, the term would be shorter and the total amount of "the deal" would be less then the full new judgment. With a low monthly payment (like $10,000) paid out over more than 5 years, I think we should continue to accrue interest and expect the full judgment amount.

I'll release liens and the judgment when the full amount of the deal is paid.

Thanks,

Jimmy

-----Original Message-----
From: Edward Rosenthal <ed@erosenthal.org>
To: jamesdcohen <jamesdcohen@aol.com>
Sent: Tue, Mar 6, 2012 6:10 pm
Subject: FW:

From: Stephen Kindseth [mailto:SKindseth@zeislaw.com]
Sent: Tuesday, March 06, 2012 5:45 PM
To: Edward Rosenthal
Subject:

Ed, this is my client's offer:

1) Forbearance agreement by Cohen, with satisfaction of judgment and release of judgment liens upon Cohen's receipt of the following payments:
      a.   Cohen retains seized bank account proceeds (approx. $65,000);
      b.   $10,000 a month monthly payments until judgment satisfied;
      c.   Judgment will be satisfied upon Cohen's receipt of the following:
           i.   $450,000 (less credit for payments made to date) if paid within 1 year of the date of the forbearance agreement;
           ii.   $495,000 (less credit for payments made to date) if paid within 2 years;
           iii.   $545,000 (less credit for payments made to date) if paid within 3 years;
           iv.   $600,000 (less credit for payments made to date) if paid within 4 years; and
           v.   $660,000 (less credit for payments made to date) if paid within 5 years.
      d.   If not satisfied within 5 years of the date of the forbearance agreement, the full amount of judgment (less credit against full judgment amount for payments made) becomes immediately enforceable;
2) 15 day grace period for monthly payments, with 30 day notice and cure period;

1

A37

**Edward Rosenthal**

| | |
|---|---|
| **From:** | jamesdcohen@aol.com |
| **Sent:** | Monday, April 09, 2012 2:12 PM |
| **To:** | ed@erosenthal.org |
| **Subject:** | Cohen v Morris |

Hi,

Hope your Passover was good.  Only 5 more days of matzah.

Congrats.  Looks like our charging order was granted.  We know Morris will play games and not claim any distributions or income from his LLCs and will likely divert his cash flow to his daughters and partners as a result of this order.  Please be reminded that Morris owned 100% of 36 Sargent Drive and Sunrise Properties, and 62% of RAC until a few months ago.  Let's also not forget that RAC paid 36 Sargent Drive $214,000 for rent in 2010 and according to Morris' K-1 from RAC, Morris' self-employment income was $224,000 (and that's after the rent).

Now how does the charging order get us cash???

Just in case Morris raises the white flag and wants to agree on a payment plan, I've worked up a 48 month payment plan that incorporates the judgment and all fees and interest at $24,875 per month beginning June 1, 2012 (using 7.5% interest).  This plan provides for no releases of the judgment or any of the liens until all 48 payments are received by us.  It also requires at least $1 million of secured assets - his choice, our approval.  Based on the above, Morris can afford this plan.

When you have a chance, please call.

Jimmy

1

A 38

## Edward Rosenthal

| | |
|---|---|
| **From:** | jamesdcohen@aol.com |
| **Sent:** | Thursday, October 18, 2012 11:11 AM |
| **To:** | ed@erosenthal.org; mtbologna@ffblaw.net |
| **Subject:** | Cohen v RAC |

Hi,

We were to have part 2 of the motion to dismiss (RAC's Ch 11) hearing yesterday but instead, Joe Rini and Peter Ressler delayed the hearing to make a settlement offer for RAC.  The offer includes 54 monthly payments of about $9,000 (total $500,000) beginning about December 1, 2012 and dismissal of: the Ch 11 petition,  the adversary claim, and the Federal case RAC has against me (and others).  Judge Weil ordered that she review the "contract" before she accepts RAC's withdrawal of their objection to my motion to dismiss the bankruptcy petition.

Since I don't want to be in the position to chase Morris down for payments, I've asked for an ironclad agreement that will allow me to somehow immediately seize all RAC assets in case of default.  When I receive the draft of this agreement, I will send it to you for your (please) review.

Thank you,

Jimmy

A 39

**Edward Rosenthal**

| | |
|---|---|
| **From:** | jamesdcohen@aol.com |
| **Sent:** | Monday, October 22, 2012 8:54 AM |
| **To:** | ed@erosenthal.org |
| **Subject:** | Info for Waterbury CLD hearing 10/24/12 |
| **Attachments:** | Morris_income.pdf |

Hi,

The only way I would agree to continue this hearing would be if RAC gives us a signed document with all of the terms of RAC's settlement spelled out (per the bankruptcy hearing Oct 17th) including the details of what is going to be offered as security. But assuming that RAC will not produce such a document, we need to proceed.

Attached is a copy of Morris' known information as of a few months ago (sent to you earlier). I also learned (by reviewing the monthly bankruptcy reports RAC files with the Court) that Morris earns about $4,000 a week at RAC and has various personal expenses paid on his behalf by RAC. Morris may also have taken a distribution but it's not clear on the reports. Morris also receives income from Sunrise Properties LLC and 36 Sargent Drive LLC, both of which have been fraudulently transferred to others since the end of 2011. I know this from testimony and from the 2004 exam transcripts.

Hopefully we'll talk this afternoon.

Jimmy


——Original Message——
From: Edward Rosenthal <ed@erosenthal.org>
Cc: James D. Cohen <jamesdcohen@aol.com>
Sent: Fri, Oct 19, 2012 10:49 pm
Subject: Re: Waterbury CLD hearing 10/24/12

Jimmy

You didn't agree to a continuance did you?

Ed

••• please note our new address & phone listed below •••

Edward Rosenthal, Esq.
Rosenthal Law Firm, LLC
18 North Main Street, 3d Fl.
West Hartford, CT 06107
Tel (860) 561-3100
Fax (860) 561-3104
www.erosenthal.org

On Oct 19, 2012, at 10:07 PM, "Joseph L. Rini" <josephlrinilaw@sbcglobal.net> wrote:

> At a hearing in USBC – New Haven on 10/17/12 an arrangement was entered into the record that if
> approved would restructure the amount owed and payments to be made by RAC –debtor in possession.
> The arrangement is in the process of being documented and a report must be given to the USBC-New
> Haven on 10/31 with a possible approval hearing on 11/07.

1

A 40

**Edward Rosenthal**

| | |
|---|---|
| **From:** | James D Cohen <jamesdcohen@aol.com> |
| **Sent:** | Friday, November 16, 2012 8:09 PM |
| **To:** | Edward Rosenthal |
| **Subject:** | Re: Settlement |

Hi,

I'll be around this weekend if you want to call, otherwise, I'll call Monday.

Jimmy

Sent from Jimmy's iPad

On Nov 16, 2012, at 3:57 PM, "Edward Rosenthal" <ed@erosenthal.org> wrote:

> Please call me
>
> ---
>
> **From:** jamesdcohen@aol.com [mailto:jamesdcohen@aol.com]
> **Sent:** Friday, November 16, 2012 8:54 AM
> **To:** ed@erosenthal.org
> **Subject:** Settlement
>
> Hi,
>
> Morris and RAC settled.  RAC will pay me $500,000 over 54 months, dismiss the Ch11 filing, and drop all litigation it has with me.  I will drop my claim to the judgment.  Accordingly, there will not be any more collections.
>
> Thank you for all you've done.
>
> Jimmy

1

A4 1

**Edward Rosenthal**

| | |
|---|---|
| **From:** | jamesdcohen@aol.com |
| **Sent:** | Friday, December 19, 2014 3:22 PM |
| **To:** | ed@erosenthal.org; ecooney@csd-law.com; jhawks-ladds@pullcom.com; cdejohn@ctbar.org; linwellman@snet.net |
| **Cc:** | jleduc@PULLCOM.COM |
| **Subject:** | Re: #14-12 Feed Dispute Rosenthal v. Cohen |
| **Attachments:** | Rosenthal fee hearing.docx |

I waive mediation proce3ss and agree t binding arbitration.

James Cohen

-----Original Message-----
From: Edward Rosenthal <ed@erosenthal.org>
To: 'Eugene A. Cooney' <ecooney@csd-law.com>; 'Hawks-Ladds, Joshua' <jhawks-ladds@pullcom.com>; 'DeJohn, Carol' <cdejohn@ctbar.org>; 'lindsley wellman' <linwellman@snet.net>; jamesdcohen <jamesdcohen@aol.com>
Cc: 'LeDuc, Jason' <jleduc@PULLCOM.COM>
Sent: Thu, Dec 18, 2014 7:25 pm
Subject: RE: #14-12 Feed Dispute Rosenthal v. Cohen

Attached please find my exhibits for the hearing tomorrow.

Thank you.

Ed Rosenthal


Edward M. Rosenthal, Esq.
Rosenthal Law Firm, LLC
18 North Main Street- 3d Fl.

West Hartford, CT 06107
Tel: (860) 561-3100
Fax: (860) 561-3104

This electronic communication is confidential and privileged and intended for
the named addressee only.  If you receive this communication in error, you are
notified that you are hereby prohibited from copying, disclosing, forwarding, or
retaining the email or any of its attachments.  Please delete the email or
contact Rosenthal Law Firm, LLC at (860) 561-3100 or ed@erosenthal.org.


-----Original Message-----
From: Eugene A. Cooney [mailto:ecooney@csd-law.com]
Sent: Wednesday, December 17, 2014 9:02 AM
To: Hawks-Ladds, Joshua; DeJohn, Carol; lindsley wellman; ed@erosenthal.org;
jamesdcohen@aol.com; wchamplin@hinckleyallen.com
Cc: LeDuc, Jason
Subject: RE: #14-12 Feed Dispute Rosenthal v. Cohen

1

A42

Thanks for setting this up, Joshua. We'll see you on Friday at your office.

Gene

Eugene A. Cooney
Cooney, Scully and Dowling
Hartford Square North
10 Columbus Boulevard
Hartford, CT 06106
860-527-1141
860-247-5215 fax
ecooney@csd-law.com

From: Hawks-Ladds, Joshua [jhawks-ladds@pullcom.com]
Sent: Wednesday, December 17, 2014 8:11 AM
To: DeJohn, Carol; Eugene A. Cooney; lindsley wellman; ed@erosenthal.org;
jamesdcohen@aol.com; wchamplin@hinckleyallen.com
Cc: LeDuc, Jason
Subject: RE: #14-12 Feed Dispute Rosenthal v. Cohen

We are all set with enabling Mr. Cohen to participate by Skype on Friday. We
will have video from our conference room to his location. Mr. Cohen please
initiate the Skype session at about 1:55.

Joshua A. Hawks-Ladds
Attorney

PULLMAN
&COMLEY LLC
ATTORNEYS

90 State House Square
Hartford, CT   06103-3702
p  860 541 3306    f  860 424 4370
jhawks-ladds@pullcom.com<mailto:jhawks-ladds@pullcom.com>       •
www.pullcom.com<http://www.pullcom.com/>

V-card<http://www.pullcom.com/vcard-47.vcf>  •  Bio<http://www.pullcom.com/attorneys-
47.html>
   •  Directions<http://www.pullcom.com/contact.html>

Please visit our labor and employment blog,  Working
Together<http://workingtogether.pullcomblog.com>

BRIDGEPORT     HARTFORD     STAMFORD     WATERBURY     WHITE PLAINS

P Please consider the environment before printing this message.
THIS MESSAGE AND ANY OF ITS ATTACHMENTS ARE INTENDED ONLY FOR THE USE OF THE
DESIGNATED RECIPIENT, OR THE RECIPIENT'S DESIGNEE, AND MAY CONTAIN INFORMATION
THAT IS CONFIDENTIAL OR PRIVILEGED. IF YOU ARE NOT THE INTENDED RECIPIENT,
PLEASE (1) IMMEDIATELY NOTIFY PULLMAN & COMLEY ABOUT THE RECEIPT BY TELEPHONING
(203) 330-2000; (2) DELETE ALL COPIES OF THE MESSAGE AND ANY ATTACHMENTS; AND
(3) DO NOT DISSEMINATE OR MAKE ANY USE OF ANY OF THEIR CONTENTS.

From: DeJohn, Carol [mailto:cdejohn@ctbar.org]
Sent: Monday, December 15, 2014 11:02 AM
To: eac@csd-law.com; lindsley wellman; Hawks-Ladds, Joshua
Cc: ed@erosenthal.org; jamesdcohen@aol.com; wchamplin@hinckleyallen.com
Subject: #14-12 Feed Dispute Rosenthal v. Cohen

2

A43

Attached please find the petitioners application along with the Respondents
Agreement for Friday's meeting.  If I can be of any further assistance, please
let me know.   Thanks Carol

Regards,
Carol DeJohn
Program Specialist
[cid:image001.jpg@01CF1083.E30A0A80]
PO Box 350
30 Bank St
New Britain, CT 06050-0350
O: 860-612-2000
cdejohn@ctbar.org<mailto:cdejohn@ctbar.org>

Visit - www.ctbar.org<http://www.ctbar.org/> today!

A44

**Edward Rosenthal**

| | |
|---|---|
| **From:** | jamesdcohen@aol.com |
| **Sent:** | Wednesday, December 24, 2014 1:45 PM |
| **To:** | ed@erosenthal.org; ecooney@csd-law.com |
| **Cc:** | cdejohn@ctbar.org; jhawks-ladds@pullcom.com; linwellman@snet.net |
| **Subject:** | Re: Fee Dispute # 14-12 |

I too thank you for your time but I am going to appeal your decision.  Please let me know how I should proceed.

Thank you.

James Cohen

-----Original Message-----
From: Edward Rosenthal <ed@erosenthal.org>
To: Eugene A. Cooney <ecooney@csd-law.com>
Cc: DeJohn, Carol <cdejohn@ctbar.org>; Hawks-Ladds, Joshua <jhawks-ladds@pullcom.com>; lindsley wellman
<linwellman@snet.net>; jamesdcohen <jamesdcohen@aol.com>
Sent: Wed, Dec 24, 2014 1:37 pm
Subject: Re: Fee Dispute # 14-12

Gentlemen:
Thank you for giving of your time and effort in serving as arbitrators.  I
appreciate your consideration.

Ed

Edward Rosenthal, Esq.
Rosenthal Law Firm, LLC
18 North Main Street
West Hartford, CT 06107
T (860) 561-3100
F (860) 561-3104
www.erosenthal.org

> On Dec 24, 2014, at 12:08 PM, Eugene A. Cooney <ecooney@csd-law.com> wrote:
>
> Carol:
>
> The arbitration hearing was held last Friday, December 19, 2014. At the close
of the hearing, the arbitrators requested input on additional questions, which
was received on Monday, December 22, 2014. Following deliberation on all of the
evidence submitted, the arbitrators reached their decision, which is set forth
in the attached Findings and Award.
>
> Thank you for the opportunity to serve as an arbitrator in this matter.
>
> Gene Cooney
>
> Eugene A. Cooney
> Cooney, Scully and Dowling
> Hartford Square North
> 10 Columbus Boulevard

1

A45

> Hartford, CT 06106
> 860-527-1141
> 860-247-5215 fax
> ecooney@csd-law.com
> <Rosenthal Arbitration - Executed Findings and Award of the Arbitrators -
12-24-14.PDF>

A46

**Edward Rosenthal**

| | |
|---|---|
| **From:** | Eugene A. Cooney <ecooney@csd-law.com> |
| **Sent:** | Wednesday, December 24, 2014 2:47 PM |
| **To:** | jamesdcohen@aol.com; ed@erosenthal.org |
| **Cc:** | cdejohn@ctbar.org; jhawks-ladds@pullcom.com; linwellman@snet.net |
| **Subject:** | RE: Fee Dispute # 14-12 |

Mr. Cohen:

It would not be the role of the arbitrators to advise either of the parties on how to proceed at this point. With this caveat in mind, I can only recommend the following:

First, you can read Connecticut General Statutes sections 52-408 through 52-424, which are the statutes dealing with arbitrations. (Sections, 52-418 through 52-420 in particular are the relevant statutes dealing with vacating, modifying or correcting arbitration awards.)

Second, you can, and should, consult with counsel about your rights and obligations under the circumstances.

Beyond this, it would be inappropriate for the arbitrators to provide advice. I hope you understand.

Gene Cooney

*Eugene A. Cooney*
COONEY, SCULLY AND DOWLING
Hartford Square North
10 Columbus Boulevard
Hartford, CT 06106-1944
(860) 527-1141
(860) 247-5215 fax
ecooney@csd-law.com

CONFIDENTIALITY NOTICE: This e-mail transmission (and any attachments accompanying it) is privileged, confidential and intended only for the individual or entity named. If you or your office is not the intended recipient, the dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, please notify us immediately by reply e-mail, delete this e-mail and destroy all copies of this transmission. Thank you.

**From:** jamesdcohen@aol.com [mailto:jamesdcohen@aol.com]
**Sent:** Wednesday, December 24, 2014 1:45 PM
**To:** ed@erosenthal.org; Eugene A. Cooney
**Cc:** cdejohn@ctbar.org; jhawks-ladds@pullcom.com; linwellman@snet.net
**Subject:** Re: Fee Dispute # 14-12

I too thank you for your time but I am going to appeal your decision. Please let me know how I should proceed.

Thank you.

James Cohen

1


A47

-----Original Message-----
From: Edward Rosenthal <ed@erosenthal.org>
To: Eugene A. Cooney <ecooney@csd-law.com>
Cc: DeJohn, Carol <cdejohn@ctbar.org>; Hawks-Ladds, Joshua <jhawks-ladds@pullcom.com>; lindsley wellman
<linwellman@snet.net>; jamesdcohen <jamesdcohen@aol.com>
Sent: Wed, Dec 24, 2014 1:37 pm
Subject: Re: Fee Dispute # 14-12


Gentlemen:
Thank you for giving of your time and effort in serving as arbitrators.   I
appreciate your consideration.

Ed

Edward Rosenthal, Esq.
Rosenthal Law Firm, LLC
18 North Main Street
West Hartford, CT 06107
T (860) 561-3100
F (860) 561-3104
www.erosenthal.org

> On Dec 24, 2014, at 12:08 PM, Eugene A. Cooney <ecooney@csd-law.com> wrote:
>
> Carol:
>
> The arbitration hearing was held last Friday, December 19, 2014. At the close
of the hearing, the arbitrators requested input on additional questions, which
was received on Monday, December 22, 2014. Following deliberation on all of the
evidence submitted, the arbitrators reached their decision, which is set forth
in the attached Findings and Award.
>
> Thank you for the opportunity to serve as an arbitrator in this matter.
>
> Gene Cooney
>
> Eugene A. Cooney
> Cooney, Scully and Dowling
> Hartford Square North
> 10 Columbus Boulevard
> Hartford, CT 06106
> 860-527-1141
> 860-247-5215 fax
> ecooney@csd-law.com
> <Rosenthal Arbitration - Executed Findings and Award of the Arbitrators -
12-24-14.PDF>

**Edward Rosenthal**

| | |
|---|---|
| **From:** | jamesdcohen@aol.com |
| **Sent:** | Thursday, April 19, 2012 3:50 PM |
| **To:** | ed@erosenthal.org |
| **Subject:** | Proposal |

Hi,

Here's my judgment payment offer for Morris prior to my reviewing any financials: $750,000 secured note (or whatever financial instrument is appropriate) at 7.5% interest, paid out at $18,134 per month for 48 months. When accepted, I'll immediately end the Florida suit and will discontinue any additional seizures of property. Until acceptance, I will continue with the Florida suit and will continue going after RAC's and Morris' property. The cash received from property seized up to the acceptance date shall not reduce the $750,000 (incentive for Morris to accept this offer sooner than later).

This may save Morris from having to file for bankruptcy and will allow him to keep his home in Florida. According to the RAC tax returns, this monthly payment is affordable without breaking the bank.

Please propose this to Morris.

Thanks,

Jimmy

**Edward Rosenthal**

From:        jamesdcohen@aol.com
Sent:        Sunday, July 22, 2012 7:50 PM
To:          ed@erosenthal.org
Subject:     Cohen v RAC

Hi again,

If Morris shows up at the exam at 495 Orange Street, New Haven at 10:00 a.m., it's likely he'll be driving his Jaguar with Florida tags. Please seize this car during the exam. And since his camper and maybe another one of his cars will be at his home or his office at that time, please seize these as well.

These vehicles are registered to him personally (you have the Florida report). If he threatens personal bankruptcy, so be it.

Thanks,

Jimmy


-----Original Message-----
From: jamesdcohen <jamesdcohen@aol.com>
To: ed <ed@erosenthal.org>
Sent: Tue, Jul 17, 2012 12:07 pm
Subject: Cohen v RAC

HI Ed,

Hope all is well.

A very good source told me that Morris is staying at his home in CT and that his camper and two cars with Florida tags are in CT as well. These vehicles are registered to Morris personally. The Sheriff in Florida confirmed this when he tried to serve Morris and noticed that the house had been unoccupied for some time (with his boat and motorcycle still in the garage). Can we seize these vehicles, please? Anything more happening with our charging order?

Also, Tim Miltenberger,of Coan, Lewendon, Gulliver & Miltenberger, LLC, representing Tom Dannenhoffer (a very disgruntled former Morris partner), will be examining RAC and RAC's CPA on Monday, July 23rd at their offices in New Haven at 10:00 am. I have been invited to attend and will be there. Please call Attorney Miltenberger 203-901-1298 if you'd like to be there, too.

Thank you...

Jimmy

1



**Edward Rosenthal**

| | |
|---|---|
| **From:** | jamesdcohen@aol.com |
| **Sent:** | Wednesday, August 01, 2012 7:41 AM |
| **To:** | ed@erosenthal.org |
| **Subject:** | Re: Cohen v. RAC at el |

Hi,

Other than the $56,000 salary listed on the RAC petition, we know nothing more as to what Morris gets in the way of wages. We did not discuss this at the 2004 exam. My guess is that Morris received a W-2 for this $56,000 for 2011 and included only this on his tax return. If, in fact, this is W-2 wages, then the guaranteed payments, $188,000 per his K-1, is in addition to the $56,000. If Morris did not get a W-2, then the $56,000 may be part of the $188,000.

Jimmy

-----Original Message-----
From: Edward Rosenthal <ed@erosenthal.org>
To: jamesdcohen <jamesdcohen@aol.com>
Sent: Tue, Jul 31, 2012 2:30 pm
Subject: RE: Cohen v. RAC at el

Did you get any information at the 2004 exam as to what his salary is?

From: jamesdcohen@aol.com [mailto:jamesdcohen@aol.com]
Sent: Tuesday, July 31, 2012 2:02 PM
To: ed@erosenthal.org
Subject: Re: Cohen v. RAC at el

Hi,

I sent a reminder to Attorney Tim Miltenberger to send me a copy of the transcript and, if its digital, he'll send you a copy as well.

Jimmy

-----Original Message-----
From: Edward Rosenthal <ed@erosenthal.org>
To: jamesdcohen <jamesdcohen@aol.com>
Sent: Tue, Jul 31, 2012 12:03 pm
Subject: RE: Cohen v. RAC at el

Thanks for this

Is there a transcript from that 2004 exam that I could have?

Rini filed an objection today to the installment payment motion and will probably show up to contest so the transcript could be helpful.

From: jamesdcohen@aol.com [mailto:jamesdcohen@aol.com]
Sent: Tuesday, July 31, 2012 11:47 AM

1



**Edward Rosenthal**

| | |
|---|---|
| **From:** | jamesdcohen@aol.com |
| **Sent:** | Monday, August 06, 2012 3:49 PM |
| **To:** | ed@erosenthal.org |
| **Subject:** | Re: Instalment payment |

Hi,

$10,000 as an example - should we ask for more, like <u>half</u> of what Morris takes/gets from all his sources? (He doesn't deserve more than I get!!!!!!!!!!!)
I know it's not just for 5 years.  Do you really think Morris, if ordered to pay, will make more than one payment, let alone 60, or 120 payments?
Yeah.  $10,000 a month sounds REALLY good.

Jimmy


------Original Message-----
From: Edward Rosenthal <ed@erosenthal.org>
To: jamesdcohen <jamesdcohen@aol.com>
Sent: Mon, Aug 6, 2012 2:40 pm
Subject: RE: Instalment payment

1)   The $10,000 figure was purely for example only
2)   An installment payment order is not just for 5 years
3)   Right about now doesn't $10,000 a month sound good?

From: jamesdcohen@aol.com [mailto:jamesdcohen@aol.com]
Sent: Monday, August 06, 2012 1:48 PM
To: ed@erosenthal.org
Subject: Instalment payment

Hi,

At $10,000 per month for 60 months, Morris will be left with a balance of over $700,000.  Please see the attached.

Jimmy

1

A52

**Edward Rosenthal**

| | |
|---|---|
| **From:** | jamesdcohen@aol.com |
| **Sent:** | Tuesday, August 28, 2012 6:36 PM |
| **To:** | ed@erosenthal.org |
| **Subject:** | RAC dep and 2011 tax return |
| **Attachments:** | 2011.pdf; Document-Roll-A-Cover_deposition_on_Bankrupcy_Mon_Aug_13_2012.pdf |

Hi,

Attached...

RAC 2011 Federal Tax return
Deposition of RAC and his accountant re: 2004 exam.

Any word on taking Morris' motorhome and cars?

Jimmy

1

A53

**Edward Rosenthal**

From:           jamesdcohen@aol.com
Sent:           Friday, September 21, 2012 5:29 PM
To:             ed@erosenthal.org
Subject:        Re: Oct 4th hearing

Hi,

The bankruptcy continued hearing (from Sept 19th) is at 2:00 pm on October 17th. I sent Marshal DeAngelis the subpoena (filed by the court August 30th) to serve on Dennis Martens to appear and produce documents at the October 17th hearing.

The hearing will encompass:
my motion to dismiss
debtor's motion for a protective order (I requested documentation)
debtor's motion to extend the date to file their plan

Ya think we'll get all of that done by starting at 2:00?

Jimmy

-----Original Message-----
From: Edward Rosenthal <ed@erosenthal.org>
To: jamesdcohen <jamesdcohen@aol.com>
Sent: Fri, Sep 21, 2012 4:20 pm
Subject: Re: Oct 4th hearing

Call me on my cell

••• please note our new address & phone listed below •••

Edward Rosenthal, Esq.
Rosenthal Law Firm, LLC
18 North Main Street, 3d Fl.
West Hartford, CT 06107
Tel (860) 561-3100
Fax (860) 561-3104
www.erosenthal.org

On Sep 21, 2012, at 2:01 PM, jamesdcohen@aol.com wrote:

    L'shana Tova

    Do I need to prepare anything for, or bring anything to the Oct 4th hearing? I will try to be there about 15 minutes prior to the 2:00 hearing time.

    Jimmy

1       A54

## Edward Rosenthal

| | |
|---|---|
| **From:** | Eugene A. Cooney <ecooney@csd-law.com> |
| **Sent:** | Monday, December 08, 2014 1:55 PM |
| **To:** | DeJohn, Carol; Hawks-Ladds, Joshua; lindsley wellman |
| **Cc:** | ed@erosenthal.org; jamesdcohen@aol.com |
| **Subject:** | RE: Fee Dispute # 14-12 |

Carol:

In light of Mr. Cohen's request, we have transferred the mediation to Attorney Hawks-Ladds' office, where we will be able to conference with Mr. Cohen via Facebook or Skype. The time remains the same, i.e., 2:00 pm on Friday, December 19, 2014.

Mr. Hawks-Ladds will follow up with the call-in number and additional instructions that may be necessary to set up the conference.

Please let us know if there are any questions.

Gene Cooney

*Eugene A. Cooney*
COONEY, SCULLY AND DOWLING
Hartford Square North
10 Columbus Boulevard
Hartford, CT 06106-1944
(860) 527-1141
(860) 247-5215 fax
ecooney@csd-law.com

CONFIDENTIALITY NOTICE: This e-mail transmission (and any attachments accompanying it) is privileged, confidential and intended only for the individual or entity named. If you or your office is not the intended recipient, the dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, please notify us immediately by reply e-mail, delete this e-mail and destroy all copies of this transmission. Thank you.

---

**From:** DeJohn, Carol [mailto:cdejohn@ctbar.org]
**Sent:** Wednesday, December 03, 2014 1:26 PM
**To:** Eugene A. Cooney; Hawks-Ladds, Joshua; lindsley wellman
**Cc:** ed@erosenthal.org; jamesdcohen@aol.com
**Subject:** Fee Dispute # 14-12

To all panelists,
Attorney Rosenthal will be on trial on December 18th. He asked if Friday, December 19th at 2:00 pm would be acceptable?
Mr. Cohen is unable to make it to Hartford as he lives in NJ and asked if he could participate by teleconference? Please reply and let me know if this is an acceptable time for you. Thanks Carol

Regards,

Carol DeJohn
Program Specialist

 A55



PO Box 350
30 Bank St
New Britain, CT 06050-0350
O: 860-612-2000
cdejohn@ctbar.org

Visit - www.ctbar.org today!

2    A56