# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

JAMES D. COHEN,

                Plaintiff,

  v.

EDWARD ROSENTHAL, individually and
as the sole member of ROSENTHAL LAW
FIRM, LLC,

            Defendant.

3:15-cv-01043 (CSH)


**DECEMBER 19, 2016**

## RULING ON DEFENDANT'S MOTION TO DISMISS

### HAIGHT, Senior District Judge:

Plaintiff James Cohen brings this action *pro se* against his former attorney, Defendant Edward Rosenthal, in relation to what he essentially alleges was malpractice on the part of Mr. Rosenthal. Plaintiff brings state common law claims for (1) breach of contract (Count One), (2) breach of the implied covenant of good faith and fair dealing (Count Two), (3) misrepresentation (Count Three), and (4) unjust enrichment (Count Four), invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. Defendant has moved to dismiss each of Plaintiff's claims. This Ruling resolves that motion.

## I.    Background[1]

Plaintiff obtained a judgment in Connecticut Superior Court in his favor against Roll-A-

---

[1] The facts recounted here are derived solely form the allegations in Plaintiff's Amended Complaint, Doc. 31. Plaintiff filed this Amended Complaint in order to cure a defect in pleading subject matter jurisdiction. This Court dismissed Plaintiff's original Complaint because Plaintiff failed to properly alleged diversity of citizenship sufficient to sustain this Court's jurisdiction. Doc. 30. The Amended Complaint remedied this defect. Am. Cmplt., Jurisdiction ¶¶ 1-2.

Cover, LLC ("RAC") and Michael Morris ("Morris") in the amount of $575,000 in June 2010. Am. Cmplt. ¶ 3. The Connecticut Superior Court later awarded prejudgment interest and costs of $406,281 and post judgment interest of $77,332 in February 2012 to Plaintiff. *Id.* ¶ 4. On December 1, 2011, Plaintiff retained Defendant, a Connecticut attorney, and the parties signed an "Agreement for Legal Services" authorizing Defendant to collect for Plaintiff the judgment against RAC and Morris. *Id.* ¶¶ 5, 16. Defendant defined his fees in relation to "any amount he personally collected and deposited into his trust account," recognizing that others may also be working to collect on the judgment for Plaintiff. *Id.* ¶ 6. Defendant was able to collect $67,605 from RAC through the seizure of one of RAC's bank accounts in March 2012, disbursing $39,823 to Plaintiff—the net amount after paying a retained State Marshal and Defendant his fees associated with this collection. *Id.* ¶ 7.

RAC filed a Chapter 11 petition for bankruptcy in April 2012, which stayed all collections against RAC; however, Morris remained liable for the judgment and had sufficient assets to satisfy the remaining amounts owed. *Id.* ¶¶ 8-9. Defendant ceased all collection efforts against RAC and Morris a month after the bankruptcy filing in May 2012. *Id.* ¶ 11. Defendant notified Plaintiff that he was "unable and unwilling to represent" Plaintiff in the bankruptcy action with RAC and advised Plaintiff to find other counsel. *Id.* ¶ 10. The uncollected judgment balance from RAC and Morris when Defendant ceased his collection efforts against RAC was $1,020,165. *Id.* ¶ 21. Plaintiff, without the assistance of Defendant, then negotiated a settlement agreement with RAC and signed a preliminary settlement agreement on November 15, 2012, which was filed with the bankruptcy court. *Id.* ¶¶ 12, 14. In March 2014, Defendant petitioned for the resolution of a fee dispute with Plaintiff regarding fees allegedly owed related to the settlement agreement between Plaintiff and RAC. *Id.* ¶ 13. Defendant requested mediation followed by an arbitration to settle the dispute. *Id.*

At the beginning of the mediation hearing, it was decided that it would be an arbitration instead of a mediation.  Am. Cmplt. ¶ 15.  Plaintiff was not provided notice or the rules for the resolution of any dispute.  *Id.*  The hearing was held on December 19, 2014 before three attorneys, who were members of the Legal Fee Resolution Board of the Connecticut Bar Association ("CBA").  *Id.* ¶ 17.  On December 24, 2014, the arbitrators issued a decision awarding $109,683 to Defendant in legal fees related to Defendant's alleged contributions and work on the RAC settlement.  *Id.*  Defendant thereafter applied to confirm the arbitration award, which Judge Scholl of the Connecticut Superior Court confirmed without trial on March 17, 2015.  *Id.* ¶ 18.  Plaintiff appealed that decision and the Connecticut Appellate Court affirmed the judgment.  *Id.* ¶ 19.  As of the date of the Amended Complaint, Plaintiff intended to "further[]" continue the appeal by filing a writ of certiorari to the Connecticut Supreme Court.[2]  *Id.*  Defendant ultimately received a prejudgment award of $92,443.80 through the Connecticut litigation.  *Id.* ¶ 20.

Plaintiff brought the instant action against Defendant alleging four claims.  First, Plaintiff asserts breach of contract based on Defendant's "breach[ of] the Agreement for Legal Services" because Defendant "negligently discontinued his contractual obligation" to collect both the assets of RAC and Morris and "failed in his diligence" to exercise all opportunities to collect the judgment, including from the assets of Morris.  Am. Complt., Count One ¶¶ 1-6.[3]  Second, Plaintiff asserts

---

[2] Subsequent to the filing of his Amended Complaint, Plaintiff did file a petition for certiorari, which the Connecticut Supreme Court denied on June 21, 2016.  *Rosenthal Law Firm, LLC v. Cohen*, 322 Conn. 904 (2016).

[3] Plaintiff renumbered the paragraphs for each count to begin with one and therefore the Court includes the Count the paragraphs refer to with its citation.  In addition, for ease of reference, the Court will refer to the exhibits attached to Defendant's and Plaintiff's submissions on this motion as "Def. Ex." or "Def. Reply Ex." and "Pl. Ex."

breach of the implied covenant of good faith and fair dealing. *Id.*, Count Two ¶¶ 1-3. Third, Plaintiff asserts misrepresentation based on the fact that Defendant negligently and intentionally "misrepresented his experience to become engaged in collections beyond his capabilities." *Id.*, Count Three ¶¶ 1-3. Finally, Plaintiff alleges unjust enrichment because the award of fees in the arbitration to Defendant was "unearned" and based on "fraudulently claimed legal services." *Id.*, Count Four ¶¶ 1-7. Plaintiff seeks to obtain (1) the balance of the amount of the judgment not collected when Defendant terminated his collection efforts, $1,020,165, plus prejudgment interest and reasonable costs, based on Defendant's alleged breach of contract, (2) monetary and punitive damages as well as prejudgment interest based on Defendant's alleged breach of the implied covenant of good faith and fair dealing, (3) monetary and punitive damages as well as prejudgment interest based on Defendant's alleged misrepresentation, and (4) monetary damages in the amount of $92,443.90 (the amount ultimately awarded to Defendant) and punitive damages as well as reasonable costs and prejudgment interest based on unjust enrichment. *Id.*, Prayer for Relief ¶¶ 1-4.

## II.     Standard of Review

To survive a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), each claim must set forth sufficient factual allegations, accepted as true, that "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, (2007)) (internal quotation marks omitted). The Court is guided by "'[t]wo working principles'" in applying this standard. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). First, all factual allegations in the complaint must be accepted as true and all reasonable inferences must be drawn in Plaintiff's favor. *See id.* The Court need not credit "legal conclusions" or "threadbare recitals of the elements of a cause of action

supported by mere conclusory statements." *Id.* (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks and alteration omitted).  Second, "a complaint that states a plausible claim for relief" will survive a motion to dismiss and "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679) (internal quotation marks omitted).  Even under this standard, however, the Court must liberally construe *pro se* pleadings and hold them to a less rigorous standard of review than pleadings drafted by an attorney.  *See id*; *see also Boykin v. KeyCorp*, 521 F.3d 202, 213-14, 216 (2d Cir. 2008).  Moreover, *pro se* pleadings and briefs must be read "to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)) (internal quotation marks omitted).

"Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Associated Fin. Corp. v. Kleckner*, 480 F. App'x 89, 90 (2d Cir. 2012) (summary order) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).  The Court may properly take judicial notice of "public records, including complaints filed in state court, in deciding a motion to dismiss." *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).

## III.   Discussion

Defendant has moved for dismissal of Counts One, Two, and Four, based any of the following grounds: (1) collateral estoppel, (2) the *Rooker-Feldman* doctrine, or (3) failure to state a claim upon which relief can be granted.  Defendant also seeks to dismiss Count Three on the basis

of (1) the *Rooker-Feldman* doctrine, or (2) failure to state a claim upon which relief can be granted.[4]

In order to address each of Defendant's arguments, the Court must take judicial notice of, and

consider, certain facts within the public record concerning Plaintiff and Defendant's legal fee dispute

arbitration and the related state court actions.[5]

The public record reflects that on March 3, 2014, Defendant filed a petition for resolution

of a fee dispute with the Legal Fee Resolution Board of the CBA against Plaintiff based on the

settlement agreement Plaintiff ultimately negotiated with RAC.  Def. Ex. A at 39-44 (A7-A12).

Plaintiff responded to this petition and included a brief statement of facts, which stated that:

"MR. ROSENTHAL REFUSED TO REPRESENT ME WHEN THE JUDGMENT DEBTOR

FILED FOR BANKRUPTCY. HE IS NOW TRYING TO COLLECT A FEE FOR A

SETTLEMENT I NEGOTIATED PRO SE IN THE BANKRUPTCY COURT."  *Id.* at 46 (A14)

(emphasis in original).  Plaintiff also read a statement at the arbitration hearing which alleged

that Defendant refused to represent Plaintiff in the bankruptcy proceeding, Defendant did

---

[4] As a preliminary matter, the Court notes that the agreement between the parties contained a broad arbitration clause requiring arbitration before the CBA for disputes arising out of and related to the contract and Defendant's representation of Plaintiff. Def. Ex. B at 6. However, because neither party has explicitly requested arbitration nor properly raised and briefed the issue before the Court, the Court will not *sua sponte* consider whether to enforce the arbitration clause at this point in the litigation.  *See Lefkowitz v. Reissman*, No. 12-8703, 2014 WL 925410, at *8 (S.D.N.Y. March 7, 2014) (noting the circumstances where it may be inappropriate for a court to consider the enforceability of an arbitration clause *sua sponte*, including when "neither party has explicitly requested arbitration" or "when the issue has not been properly briefed").

[5] Specifically, the Court has reviewed the exhibits filed by Defendant which contain certain documents from the Connecticut state court actions, including the briefs and record before the Connecticut Appellate Court.  The Court has also reviewed the full public record of both the Connecticut Superior Court, Doc. No. HHD-CV15-605977-S, and the Connecticut Appellate Court, Doc. No. AC-37830 actions.  For ease of reference, the Court cites to the exhibits filed with this Court where applicable.

nothing to assist with the settlement, and Defendant never billed Plaintiff for any alleged work related to the settlement. Def. Ex. D at 79-80 (A15-A15a).  Despite Plaintiff's arguments, after a hearing before the Legal Fee Resolution Board of the CBA, *see* Am. Cmplt. ¶ 17, the arbitrators found that Defendant "has proven his contractual entitlement to attorney's fees on all sums collected by [Plaintiff] from Michael Morris/Roll-A-Cover, LLC."  Def. Ex. A at 47 (A15).

Defendant then filed a motion in Connecticut Superior Court to affirm the award of attorney's fees and Plaintiff filed an application to vacate the arbitration award.  *See Rosenthal Law Firm, LLC v. Cohen*, 165 Conn. App. 467, 469 (Conn. App. 2016).  The Superior Court held a hearing on the application to confirm and the application to vacate.  *See id.*  At the conclusion of the hearing, the Superior Court granted Defendant's application to confirm the award, holding that, among other things, the court could not review whether the arbitrators "made errors of facts or even errors of law" and even assuming that the application to vacate the award was timely, and it "appears it wasn't," the basis of Plaintiff's arguments were that he disagreed with the decision on the facts and the court was without the statutory authority to set the decision aside on such grounds.  *Id.* & n.4.  The Connecticut Appellate Court affirmed the Superior Court's decision to grant Defendant's application to confirm the award because Plaintiff's application to vacate the arbitration award was not timely filed.  *Id.* at 473.  The Connecticut Supreme Court denied review.  *Rosenthal Law Firm, LLC v. Cohen*, 322 Conn. 904 (2016).

A.     ***Rooker-Feldman* Doctrine**

Defendant claims that the *Rooker-Feldman* doctrine divests this Court of jurisdiction with

respect to each of Plaintiff's claims.[6]   The *Rooker-Feldman* doctrine divests federal courts of jurisdiction "over cases that essentially amount to appeals of state court judgments."   *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (per curiam).   "The doctrine is rooted in the principle that 'appellate jurisdiction to reverse or modify a state-court judgment is lodged . . . exclusively in [the Supreme] Court.'" *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005)).   To apply the doctrine, four circumstances must exist: (1) the federal-court plaintiff must have lost litigation before a state court, (2) the federal-court plaintiff must now complain of an injury from the adverse state court judgment, (3) the federal-court plaintiff invites the federal court to review and reject that adverse judgment of the state court, and (4) the state court judgment was rendered before the federal court action.   *Id.*

Defendant has established both the first and fourth elements of this doctrine here.   Plaintiff lost the arbitration and the Connecticut Superior Court subsequently confirmed the arbitration award to Defendant.   The Connecticut Superior Court confirmed the award on March 17, 2015, almost four months prior to the filing of this federal action on July 8, 2015.[7]   The pertinent issue before the Court

---

[6] Plaintiff's response to Defendant's motion to dismiss was only three-pages and is devoid of any citations, including any citations to case law or arguments based on legal precedent. Because Plaintiff is proceeding *pro se*, the Court will liberally construe this response to raise any conceivable arguments.   *See Bertin*, 478 F.3d at 491.

[7] However, the appeal of the final judgment confirming the award by the Connecticut Superior Court was pending with the Connecticut Appellate Court at the time Plaintiff initially filed this action on July 8, 2015. The Court subsequently dismissed, on May 3, 2016, Plaintiff's first complaint for failure to properly assert diversity jurisdiction.  Doc. 30.  When Plaintiff filed an Amended Complaint addressing this deficiency on May 5, 2016, Doc. 31, the Connecticut Appellate Court had already affirmed the confirmation of the arbitration award.  Am. Cmplt. ¶ 19.  However, Plaintiff's writ of certiorari application to the Connecticut Supreme Court was in the process of being drafted.  *Id.*  Although the Second Circuit has not yet addressed whether all state proceedings, including appeals, must have ended before the federal action commences for purposes of applying the *Rooker-Feldman* doctrine, "district courts within the Second Circuit

-8-

is whether the second and third elements with respect to each claim brought by Plaintiff are established.

These elements are clearly established with regard to Plaintiff's unjust enrichment claim. This claim is barred by the *Rooker-Feldman* doctrine, divesting this Court of jurisdiction and requiring its dismissal. With his claim of unjust enrichment, Plaintiff is complaining of an injury solely arising from the adverse state court decision to confirm his arbitration award. Specifically, Plaintiff alleges that Defendant "made false claims to obtain money for services that he did not perform," "exploited the naiveté of his pro se former client to . . . obtain a judgment not based on the merit[s]," and "obtained an unearned award for his alleged and fraudulently claimed services." Am. Cmplt., Count Four ¶¶ 1-3. Plaintiff also invites this Court to review and reject the state court's confirmation of that award by requesting the exact amount of fees awarded to Defendant as the damages he is entitled to based on this claim. *Id.* Prayer for Relief ¶ 4. Thus, he is inviting this Court to, in effect, overturn the state court judgment. *See Charles v. Levitt*, Nos. 15-9334, 15-9758 2016 WL 3982514, at *4-5 (S.D.N.Y. July 21, 2016) ("[A] prayer for money damages is not

---

have not confined application of the *Rooker-Feldman* doctrine to situations where the federal plaintiffs have exhausted their state-court appeals." *See Deraffele v. City of New Rochelle*, No. 15-282, 2016 WL 1274590, at *7 n.10 (S.D.N.Y. March 30, 2016) (collecting cases); *see also Belcher v. Wells Fargo Bank, N.A.*, No. 09-757, 2009 WL 1581101, at *3 (D. Conn. June 3, 2009) (applying *Rooker-Feldman* to a plaintiff seeking reversal of "final or pending actions in state court" in federal court). The Court concurs with these decisions, as opposed to those of other circuit courts of appeal. *See Deraffele*, 2016 WL 1274590, at *7 n.10 (collecting cases). The *Rooker-Feldman* doctrine "would be undermined if the doctrine is inapplicable simply because a litigant happens to be seeking state appellate review of a state-court judgment, while also seeking federal review of that judgment." *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, PC*, 701 F. Supp. 2d 340, 348 (E.D.N.Y. 2010). This Court agrees that "[r]egardless of the status of any state court appeals, the litigant is still seeking federal review of a state-court judgment." *Id.* (citing *Field Auto City, Inc. v. GMC*, 476 F. Supp. 2d 545, 553 (E.D. Va. 2007)).

sufficient to escape the ambit of *Rooker-Feldman* where granting such relief would still require the federal court to sit in review of a state court judgment.").  Because Plaintiff's unjust enrichment claim amounts to an appeal of the state court's confirmation of the arbitration award, this Court lacks jurisdiction and it must be dismissed.  *See Vossbrinck*, 773 F.3d at 426-27.[8]

However, Plaintiff's other claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and misrepresentation are not barred by the doctrine of *Rooker-Feldman*. Each of these claims complains specifically of an injury to Plaintiff caused directly by Defendant prior to the arbitration and the state court judgment affirming the award.  The breach of contract and breach of the implied covenant of good faith and fair dealing claims complain of misconduct and negligence by Defendant in his representation of Plaintiff prior to the arbitration and the state court judgment affirming that arbitration.  The same is true for the misrepresentation claim, which complains of an injury from Defendant's misrepresentation regarding his experience in collections prior to Plaintiff's engagement of Defendant.  *See* Am. Cmplt., Count Three ¶¶ 1-3.  Thus, Plaintiff is complaining of injuries that did not result directly or indirectly from the state court judgment.  *See*

_____

[8] Construing Plaintiff's Amended Complaint liberally as required, the count of "unjust enrichment" could also be read to assert claims of violations of due process and fraud.  However, any such claims are similarly barred by the *Rooker-Feldman* doctrine because such claims complain of an injury resulting from the state court confirmation of the arbitration award, are entirely predicated on fraud occurring in that proceeding, and a decision would ultimately result in reversal of that judgment.  *See Voltaire v. Westchester Cnty. Dep't of Social Servs.*, No. 11-8876, 2016 WL 4540837, at *10 (S.D.N.Y. Aug. 29, 2016) (collecting cases and holding that the *Rooker-Feldman* doctrine barred "any due process claims related to [the defendant's] conduct during or after the termination proceeding"); *Charles*, 2016 WL 3982514, at *4-5 (holding that the *Rooker-Feldman* doctrine barred a plaintiff's claim when his theory of entitlement to relief was entirely grounded on the claim that the state court judgment was fraudulently procured); *Jaeger v. Cellco P'ship*, 936 F. Supp. 2d 87, 98 (D. Conn. 2013) (holding that the *Rooker-Feldman* doctrine barred a plaintiff's equal protection and due process claims related to a decision and order of the Connecticut Siting Council previously challenged by plaintiff in state courts), *aff'd* 542 F. App'x 78 (2d Cir. 2013) (summary order).

*Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 87-88 (2d Cir. 2005) (describing the requirement that the injury complained of be "caused by a state judgment").  For this reason, the *Rooker-Feldman* doctrine is inapplicable and the Court is not divested of jurisdiction over such claims.

## B.    Collateral Estoppel

Defendant urges that collateral estoppel bars Plaintiff from asserting his breach of contract and breach of the implied covenant of good faith and fair dealing claims.  Doc. 32-1 at 7-12, 17.[9]  Defendant argues that both claims are barred because determining such claims requires relitigating the same issue decided by the arbitration, and ultimately affirmed and enforced by the Connecticut state courts—whether Defendant was entitled to a contingency fee based on Plaintiff's settlement agreement with RAC.  Doc. 32-1 at 7-12, 17.

"[F]ederal courts must accord state court judgments the same preclusive effect as other courts within that state" pursuant to the Constitution's Full Faith and Credit Clause.  *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).  In Connecticut, "[c]ollateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action."  *New England Estates, LLC v. Town of Branford*, 294 Conn. 817, 838 (2010) (quoting *Aetna Cas. & Surety Co. v. Jones*, 220 Conn. 285, 296 (1991)) (internal quotation marks omitted).  The doctrine is "based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate."  *Id.* at 838-89 (quoting *Aetna Cas. & Surety Co.*,

_____

[9] Defendant also claims that collateral estoppel bars Plaintiff's unjust enrichment claim and that Plaintiff has failed to state a claim upon which relief can be granted with regard to that claim.  Doc. 31-1 at 22-24.  Because the Court has concluded that it lacks jurisdiction to consider this claim, and any others brought pursuant to similar allegations, the Court does not address Defendant's alternative arguments regarding such a claim.

220 Conn. at 296) (internal quotation marks omitted).

For an issue to be subject to collateral estoppel it must have been: (1) "fully and fairly litigated" in the first action, (2) "actually decided" in the first action, (3) "necessary to the judgment" in the first action, and (4) the issue in the first action must be "identical" to the issue decided in the second action. *See New England Estates*, 294 Conn. at 838-89. "An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined." *Id.* at 839 (internal quotation marks and citations omitted). "An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered." *Id.* (internal quotation marks and citations omitted). The party asserting collateral estoppel "carries the burden of establishing that the issue he seeks to foreclose from consideration in the second case was necessarily resolved in his favor in the prior proceeding." *State v. Knight*, 266 Conn. 658, 664 (2003) (quoting *State v. Crawford*, 257 Conn. 769, 780 (2001)) (internal quotation marks omitted).

It is well established that collateral estoppel can be predicated on arbitration proceedings. *See Busconi v. Dighello*, 39 Conn. App. 753, 767-69 (Conn. App. 1995); *see also Corey v. Avco-Lycoming Div., Avco Corp.*, 163 Conn. 309, 318-19 (1972). It is clear, from the documents of which the court may take judicial notice, that (1) Plaintiff had a full and fair opportunity to present his allegations regarding Defendant's lack of representation and work associated with the RAC bankruptcy proceeding and settlement, (2) Plaintiff actually presented these allegations at the arbitration, and (3) the arbitrators decided the issue against Plaintiff by finding that Defendant was entitled to attorney's fees as part of the underlying dispute. A determination regarding the issue of Defendant's alleged lack of representation and entitlement to attorney's fees pursuant to the parties'

-12-

contract was necessary to the arbitrators' decision to award fees to Defendant. This issue is identical to certain allegations and issues raised by Plaintiff as part of this action related to Plaintiff's breach of contract and breach of the implied covenant of good faith claims. *See* Am. Cmplt. Count One ¶¶ 3, 4. Plaintiff is barred from relitigating the issue of whether Defendant is entitled to fees despite his lack of representation and work associated with the RAC bankruptcy proceeding and settlement.

However, based on the documents of which the Court may take judicial notice, it is unclear at least at this stage whether other issues raised by Plaintiff's claims were "actually litigated." *See Omotosho v. Freeman Inv. & Loan*, 136 F. Supp. 3d 235, 250 (D. Conn. 2016) (holding collateral estoppel inapplicable where issues raised by plaintiff were not raised in a state court foreclosure proceeding). As noted above, an issue is "actually litigated" if it is "properly raised in the pleadings or otherwise, submitted for determination, and in fact determined." *New England Estates, LLC*, 294 Conn. at 839 (internal quotation marks and citations omitted). Plaintiff here makes additional allegations, namely that Defendant was generally negligent in his representation of Plaintiff by failing to diligently collect on the judgment from Morris and failing to exercise all options for which Defendant could have pursued the assets of Morris. *See* Am. Cmplt., Count One ¶¶ 2, 5; *id.* ¶¶ 9, 11. The documents in the record available to the Court do not reflect whether Plaintiff actually raised these specific issues in the arbitration. Thus, although Plaintiff had an opportunity to litigate such claims in the arbitration, these issues of negligence were, in fact, not actually litigated. *See Omotosho*, 136 F. Supp. 3d at 250.[10]

---

[10] To the extent Defendant is asserting that Plaintiff made such arguments to the Connecticut state courts and is thus barred from asserting these arguments to this Court, Defendant's argument fails. The Connecticut state court decisions were either based on the untimely nature of Plaintiff's motion to vacate the arbitration award or did not require the review of, or any decision on, the additional factual issues presented by Plaintiff here. *See New England*

Accordingly, this Court concludes that collateral estoppel does not bar Plaintiff's breach of contract and breach of the implied covenant of good faith and fair dealing claims to the extent they are based on Defendant's negligence in not diligently collecting, or collecting at all, on the judgment from Morris.  Collateral estoppel does, however, bar Plaintiff's breach of contract and breach of the implied covenant of good faith and fair dealing claims to the extent such claims are based on Defendant's lack of representation of Plaintiff in the RAC bankruptcy proceeding.  Based on the public record before this Court, that issue was fully litigated by the parties in the arbitration, and therefore, cannot be relitigated again here.[11]

### C.    Plaintiff's Remaining Claims

Having concluded that Plaintiff's misrepresentation claim is not barred by the *Rooker-Feldman* doctrine and that Plaintiff's breach of contract and breach of the implied covenant of good faith and fair dealing claims, to the extent they are based on Defendant's actions or inactions with regard to collecting on the judgment from Morris, are not barred by either the *Rooker-Feldman* doctrine or collateral estoppel, the Court now turns to Defendant's remaining arguments regarding these claims.

### 1.    Breach of Contract

Defendant argues that Plaintiff's breach of contract claim truly sounds in negligence, and

---

*Estates, LLC*, 294 Conn. at 838-39 (requiring a decision on the issue to be necessary in the first action in order for there to be preclusive effect in the second).  Therefore, there is no collateral estoppel on these issues resulting solely from the state court decisions confirming the arbitration award.

[11] Alternatively, even if collateral estoppel did not bar relitigation of this issue, Plaintiff's breach of contract and breach of the implied covenant of fair dealing claims would be dismissed for the reasons discussed throughout the remainder of this Ruling.

as such, is subject to Connecticut's three-year statute of limitations, which bars Plaintiff's claim.
Doc. 32-1 at 14-17.  This Court may properly consider a statute of limitations defense raised by a
motion to dismiss.  *See Joslin v. Grossman*, 107 F. Supp. 2d 150, 154 (D. Conn. 2000).  To
address this argument, however, the Court must first determine whether Plaintiff's claim sounds
in contract or in tort.

 Connecticut has recognized that a client may have an action against an attorney that sounds
in both contract and tort and some complaints may even state a cause of action for both.  *See Meyers
v. Livingston, Adler, Pulda, Meiklejohn & Kelly, PC*, 311 Conn. 282, 290 (2014).  However, a client
cannot bring an action under both theories "merely by couching a claim that one has breached a
standard of care in the language of contract."  *Id*. (quoting *Weiner v. Clinton*, 106 Conn. App. 379,
383 (Conn. App. 2008)) (internal quotation marks omitted).  Whether Plaintiff is asserting a claim
sounding in contract or malpractice "depends on the definition of [those terms] and the allegations
of the complaint."  *Id.* at 291 (quoting *Barnes v. Schlein*, 192 Conn. 732, 735 (1984)) (internal
quotation marks omitted) (alteration in original).

 Legal "[m]alpractice is commonly defined as the failure of one rendering professional
services to exercise that degree of skill and learning commonly applied under all the circumstances
in the community by the average prudent reputable [lawyer]" with some damage, loss or injury then
resulting to the client.  *Id.*  (quoting *Barnes*, 192 Conn. at 735) (internal quotation marks omitted).
Whereas, a breach of contract claim has four elements: (1) formation of the agreement, (2)
performance by one party, (3) breach of the agreement by the other party, and (4) damages.  *Id.*
(citing *Maloney v. Conn. Orthopedics, PC*, 47 F. Supp. 2d 244, 249 (D. Conn. 1999)).  Plaintiff's
breach of contract claim, at least what Plaintiff is not barred from relitigating, is based entirely on

assertions that Defendant "negligently discontinued his contractual obligation to collect the assets of judgment debtor Morris" and "failed in his diligence to exercise all legal opportunities and options" available to obtain those assets.  Am. Cmplt., Count One ¶¶ 2, 5.  Plaintiff is essentially making allegations that Defendant did not do enough to collect assets from Morris pursuant to his retainer agreement with Plaintiff.  Plaintiff's allegations do not include reference to any specific violation of a contractual provision or a specific promise unfulfilled by Defendant.  Such allegations sound in tort and malpractice and not in contract.  *See Meyers*, 311 Conn. at 294 ("[C]laims alleging that the defendant attorney had performed the required tasks but in a deficient manner sounded in tort rather than in contract.").

Because Plaintiff's claim sounds in tort, a three-year statute of limitations applies to this claim.  *See* Conn. Gen. Stat. § 52-577 ("No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."); *see also Meyers*, 311 Conn. at 301.[12]  The Court must determine "whether the time alleged in the complaint indicates that the cause of action has not been brought within the statute of limitations."  *Joslin*, 107 F. Supp. 2d at 154 (citing *Cito v. Bridgewater Twp. Police Dep't*, 892 F.3d 23, 25 (3d Cir. 1989)).  Here, Connecticut's statute is an "occurrence statute" so that the three-year period with which a party must assert its tort claims begins to run the moment the act, injury or omission complained of occurs.  *See Collum v. Chapin*, 40 Conn. App. 449, 451-52 (Conn. App. 1996); *see also* Conn. Gen. Stat. § 52-577. Plaintiff alleges that Defendant "terminated his collection efforts in May 2012," and therefore, any

---

[12] Statutes of limitations are considered procedural in Connecticut, and thus, "Connecticut's own statutes of limitations will usually govern claims asserted in federal diversity cases in Connecticut."  *Chappetta v. Soto*, 453 F. Supp. 2d 439, 442 (D. Conn. 2006) (quoting *Slekis v. AMTRAK*, 56 F. Supp. 2d 202, 204 (D. Conn. 1999)).

alleged harm coming from Defendant's representation would have occurred prior to or during May 2012. *See* Am. Cmplt. ¶ 21; *see also id.* ¶ 11. Plaintiff had until May 2015, three years from May 2012, to commence an action litigating any claims based on Defendant's representation. Plaintiff filed the instant action outside of that window, almost two months later, on July 8, 2015, and Defendant was not actually served with the summons and complaint until August 26, 2015. *See* Docs.1, 11; *see also Chappetta*, 453 F. Supp. 2d at 442 (requiring a plaintiff to actually serve a defendant prior to the expiration of the statute of limitations period pursuant to well-established Connecticut law); *Rocco v. Garrison*, 268 Conn. 541, 549 (2004) ("[U]nder the law of our state, 'an action is commenced not when the writ is returned but when it is served upon the defendant.'" (quoting *Broderick v. Jackman*, 167 Conn. 96, 99 (1974)) (footnote omitted)). Thus, Plaintiff's breach of contract claim, to the extent it is not barred by collateral estoppel, is time-barred by the three-year statute of limitations.[13]

### 2.    Misrepresentation

Defendant similarly asserts that the statute of limitations bars Plaintiff's misrepresentation claim, which also sounds in tort. Doc. 32-1 at 19-21. The same statute, § 52-577, Connecticut's general tort statute, supplies the statute of limitations for Plaintiff's misrepresentation claim because there is no specific statutory provision applicable for misrepresentation (whether negligent or intentional) in Connecticut. *Adcock v. Remington Arms Co.*, No. 89-345, 1992 WL 363502, at *1-2 (D. Conn. Sept. 15, 1992) (applying § 52-577 to both intentional and negligent misrepresentation

---

[13] The Court notes that there are no allegations made by Plaintiff that would justify tolling the statute of limitations for any reason, such as any fraudulent concealment by Defendant, *see* Conn. Gen. Stat. § 52-595 (allowing the tolling of the statute of limitations if a such cause of action was "fraudulently conceal[ed]" from the plaintiff).

claims); *see also In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64, 90 (D. Conn. 1994) (applying § 52-577 to a negligent misrepresentation claim).[14]  The intentional or negligent misrepresentation Plaintiff complains of appears to have occurred prior to or in conjunction with Plaintiff's retention of Defendant as his lawyer on December 1, 2011.  Am. Cmplt., Count Three ¶¶ 1-3.  Plaintiff had three years from that date to bring an action against Defendant based on such a misrepresentation. *See* Conn. Gen. Stat. § 52-577; *Collum*, 40 Conn. App. at 451-52 (recognizing that § 52-577 is an occurrence statute and the time to bring an action begins to run the moment the act, injury or omission complained of occurs).  Even if Plaintiff is alleging misrepresentations that continued through Defendant's representation of Plaintiff, by Plaintiff's own admission Defendant's representation of Plaintiff ended in May 2012.  As noted *supra*, Plaintiff did not file this complaint until July 8, 2015 and did not serve Defendant until August 26, 2015.  Accordingly, Plaintiff's misrepresentation claim is time-barred.[15]

### 3.    Breach of the Implied Covenant of Good Faith and Fair Dealing

Finally, Defendant argues that Plaintiff has failed to allege at all any actions taken by Defendant in bad faith, which is necessary to properly plead a breach of the implied covenant of good faith and fair dealing claim.  Doc. 32-1 at 17-19.  A breach of the implied covenant of good faith and fair dealing claim requires establishing that: "(1) two parties entered into a contract under

---

[14] In addition, the Connecticut Supreme Court has expressly recognized that Section 52-577 also applies to intentional torts.  *Lambert v. Stovell*, 205 Conn. 1, 4-5 (1987), *superseded by statute on other grounds as recognized by Shortell v. Cavanagh*, 300 Conn. 383, 393-94 (2011).

[15] Again, there are no allegations made by Plaintiff that would justify tolling the statute of limitations for any reason.  Even if Defendant had "fraudulently conceal[ed]"the misrepresentation action from Plaintiff, *see* Conn. Gen. Stat. § 52-595, Plaintiff was well aware of any misrepresentation regarding the extent of Defendant's collection abilities by May 2012 when Defendant ceased representation of Plaintiff.  Plaintiff's action would still be time barred.

-18-

which the plaintiff reasonably expected to benefit; (2) the benefit was denied or obstructed by the other party's actions; and (3) the other party's actions were taken in bad faith." *See Van Dorstsen v. Provident Life & Accident Ins. Co.*, 554 F. Supp. 2d 285, 287 (D. Conn. 2008) (citing *Franco v. Yale Univ.*, 238 F. Supp. 2d 449, 455 (D. Conn. 2002)). "Bad faith is defined as the opposite of good faith, generally implying a design to mislead or to deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation not prompted by an honest mistake." *Id.* (quoting *Buckman v. People Express, Inc.*, 205 Conn. 166, 171 (1987)). Importantly, it "means more than mere negligence." *Kim v. State Farm Fire & Cas. Co.*, No. 15-879, 2015 WL 6675532, at *3 (D. Conn. Oct. 30, 2015) (quoting *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 433 (2004)) (internal quotation marks omitted).

Plaintiff's limited allegations regarding this claim are that "[b]y entering into the Agreement for Legal Services, defendant impliedly promised that he would act in good faith and would deal fairly with [Plaintiff]"; "Defendant breached the covenant of good faith and fair dealing implied in the Agreement for Legal Services"; and as a result Plaintiff "suffered monetary damages." Am. Cmplt., Count Two ¶¶ 1-3. Plaintiff has not specified at all what conduct by Defendant constituted actions taken in bad faith to support this claim. Undertaking the required liberal reading of the *pro se* Amended Complaint and Plaintiff's opposition to this motion to dismiss, Plaintiff could be asserting that Defendant breached this covenant by actions similar to the breach of contract, including ceasing efforts to collect from Morris, and not diligently exercising all options to pursue the assets of Morris.[16]

---

[16] As explained earlier in this Ruling, Plaintiff, based on the record before the Court, is barred from relitigating the issue of whether Defendant is entitled to legal fees despite his lack of representation and work associated with the RAC bankruptcy proceeding and settlement.

However, such actions, or inaction, plainly does not amount to "bad faith"—there are no allegations, or any inferences to be made from allegations, that Defendant had consciously not collected or failed to collected diligently from Morris, "because of [any] dishonest purpose or moral obliquity." *See Van Dorstsen*, 554 F. Supp. 2d at 287 (quoting *Buckman*, 205 Conn. at 171). All the Court can find is conclusory allegations of simple negligence. Although it has been recognized that "lack of diligence and slacking off" could, in some circumstances, amount to bad faith, *see Elm Street Builders Inc. v. Enter. Park Condo. Ass'n*, 63 Conn. App. 657, 667 (Conn. App. 2001), it is clear that bad faith still requires taking such actions "because of dishonest purpose or moral obliquity," *see Van Dorstsen*, 554 F. Supp. 2d at 287. Plaintiff has failed to make any allegations about such a purpose.[17] Therefore, to the extent Plaintiff is pleading such a claim on the basis of these allegations, it is dismissed for failure to state a claim.

Because Plaintiff is proceeding *pro se*, the Court will allow Plaintiff the opportunity to file a second amended complaint that properly alleges each of the elements of his breach of the implied covenant of good faith and fair dealing claim in accordance with this Ruling. *Thompson v. Carter*, 284 F.3d 411, 416 (2d. Cir. 2002) ("[W]hen addressing a pro se complaint, a district 'court should

---

Therefore, the Court will not consider a breach of the implied covenant of good faith and fair dealing based on such allegations. In addition, to the extent any allegations regarding Defendant's allegedly fraudulent actions throughout the arbitration can be read to support a breach of the implied covenant of good faith and fair dealing claim, such a claim is barred by the *Rooker-Feldman* doctrine. Plaintiff is complaining of an injury caused by the state court judgment in confirming the arbitration award and essentially seeking to reverse that judgment through such a claim. *See Charles*, 2016 WL 3982514, at *4-5.

[17] Moreover, Plaintiff's own allegations appear to contradict that Defendant had any such purpose. Plaintiff alleges that Defendant was only going to be paid fees based on "any amount he personally collected and deposited into his trust account." Am. Cmplt. ¶ 6. Defendant stood to gain nothing from not collecting on the judgments diligently according to Plaintiff.

not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)). Specifically, Plaintiff must allege what actions Defendant took in bad faith that breached the implied covenant of good faith and fair dealing with regard to Defendant's failure to collect on the judgment from Morris. Should Plaintiff desire to do so, he must file the second amended complaint by **February 3, 2017**. Plaintiff should take into account that the other three claims made by his prior complaint have been dismissed and should not be re-asserted by such a complaint. Defendant will then have the opportunity to respond in accordance with the Federal Rules of Civil Procedure and the Local Rules of this District.

## IV.    Conclusion

For the foregoing reasons, Defendant's [Doc. 32] Motion to Dismiss is GRANTED. Specifically, Defendant's Motion to Dismiss Counts I, III, and IV of the Amended Complaint [Doc. 31] is GRANTED and these claims are DISMISSED WITH PREJUDICE. Defendant's Motion to Dismiss Count II of the Amended Complaint [Doc. 31] is GRANTED and this claim is DISMISSED WITHOUT PREJUDICE. Plaintiff has until **February 3, 2017** to file a second amended complaint properly alleging this claim and Defendant will have **thirty (30) days** from the filing of such a complaint to respond unless Defendant seeks an extension of time to so respond. In the absence of such a filing, this Count will be DISMISSED WITH PREJUDICE.

**It is SO ORDERED.**

**Dated: New Haven, Connecticut**
**December 19, 2016**

    */s/ Charles S. Haight, Jr.*
**CHARLES S. HAIGHT, JR.**
**SENIOR UNITED STATES DISTRICT JUDGE**